FILED
DALLAS COUNTY
5/4/2017 2:48:59 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:17-cv-01585-N   Document 1-5   Filed 06/15/17   Page 1 of 193   PageID 25

Tonya Pointer

**CAUSE NO.** DC-17-05337
_____

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ARCH INSURANCE COMPANY,** | § | |
| **BRITISH AMERICAN INSURANCE** | § | |
| **COMPANY, STARR SURPLUS LINES** | § | |
| **INSURANCE COMPANY, XL** | § | |
| **INSURANCE AMERICA, INC.,** | § | |
| **MAXUM INDEMNITY COMPANY,** | § | |
| **EVANSTON INSURANCE COMPANY,** | § | **DALLAS COUNTY, TEXAS** |
| **VALLEY FORGE INSURANCE** | § | |
| **COMPANY, OKLAHOMA SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **TRAVELERS PROPERTY CASUALTY** | § | |
| **COMPANY OF AMERICA,** | § | |
| **TRAVELERS LLOYDS INSURANCE** | § | |
| **COMPANY, OLD REPUBLIC** | § | |
| **GENERAL INSURANCE** | § | |
| **CORPORATION, AIG SPECIALTY** | § | |
| **INSURANCE COMPANY, UNITED** | § | |
| **FIRE & CASUALTY COMPANY,** | § | |
| **AMERISURE MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendants.** | § | **_____ JUDICIAL DISTRICT** |

## ORIGINAL PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Liberty Mutual Insurance Company ("LMIC") files this Original Petition against

Arch Insurance Company, British American Insurance Company, Starr Surplus Lines Insurance

Company, XL Insurance America, Inc., Maxum Indemnity Company, Evanston Insurance

Company, Valley Forge Insurance Company, Oklahoma Specialty Insurance Company,

Travelers Property Casualty Company of America, Travelers Lloyds Insurance Company, Old

Republic General Insurance Corporation, AIG Specialty Insurance Company, United Fire &

**EXHIBIT A-1**

Casualty Company, Amerisure Mutual Insurance Company (collectively, "Defendants") pursuant to the Texas Civil Practice and Remedies Code Section 37.003 *et seq.,* and would respectfully show the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.1     In accordance with Rule 190.4 of the Texas Rules of Civil Procedure, discovery in this case is intended to be conducted under Discovery Control Level 3.

## II.
## PARTIES AND SERVICE

2.1     LMIC is an insurance company duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts.

2.2     On information and belief, Defendant Arch Insurance Company ("Arch") is an insurance company duly organized and existing under the laws of Missouri, with its principal place of business in Jersey City, New Jersey. Arch may be served with process through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

2.3     On information and belief, Defendant British American Insurance Company ("British American") is an insurance company duly organized and existing under the laws of Texas, with its principal place of business in Dallas, Texas. British American may be served with process through the Commissioner of Insurance at its address on file, 3535 Travis Street, Suite 300, Dallas, TX 75204.

2.4     On information and belief, Defendant Starr Surplus Lines Insurance Company ("Starr") is an insurance company duly organized and existing under the laws of Illinois, with its principal place of business in Chicago, Illinois. Starr may be served with process through the

EXHIBIT A-1

Commissioner of Insurance at its address on file, 500 West Monroe St., 26th Floor, Chicago, IL 60661.

2.5    On information and belief, Defendant XL Insurance America, Inc. ("XL") is an insurance company duly organized and existing under the laws of Delaware, with its principal place of business in Stamford, Connecticut. XL may be served with process through its agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

2.6    On information and belief, Defendant Maxum Indemnity Company ("Maxum") is an insurance company duly organized and existing under the laws of Delaware, with its principal place of business in Duluth, Georgia. Maxum may be served with process through the Commissioner of Insurance at its address on file, 3655 North Point Parkway Suite 500, Alpharetta, Georgia 30005.

2.7    On information and belief, Defendant Evanston Insurance Company ("Evanston") is an insurance company duly organized and existing under the laws of Illinois, with its principal place of business in Deerfield, Illinois. Evanston may be served with process through the Commissioner of Insurance at its mailing address of 10 Parkway North, Deerfield IL 60015.

2.8    On information and belief, Defendant Valley Forge Insurance Company ("Valley Forge") is an insurance company duly organized and existing under the laws of Pennsylvania, with its principal place of business in Chicago, Illinois. Valley Forge may be served with process through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

2.9    On information and belief, Defendant Oklahoma Specialty Insurance Company ("Oklahoma Specialty") is an insurance company duly organized and existing under the laws of Oklahoma, with its principal place of business in Houston, Texas. Oklahoma Specialty may be

EXHIBIT A-1

served with process through the Commissioner of Insurance at its mailing address of 800 Gessner Road Suite 600, Houston, TX 77024.

 2.10 On information and belief, Defendant Travelers Property Casualty Company of America ("Travelers Property") is an insurance company duly organized and existing under the laws of Connecticut, with its principal place of business in Hartford, Connecticut. Travelers Property may be served with process through its registered agent Corporation Service Company at 211 East 7th Street, Suite 620, Austin, TX 78701.

 2.11 On information and belief, Defendant Travelers Lloyds Insurance Company ("Travelers Lloyds") is an insurance company duly organized and existing under the laws of Texas, with its principal place of business in Richardson, Texas. Travelers Lloyds may be served with process through its registered agent Corporation Service Company at 211 East 7th Street, Suite 620, Austin, TX 78701.

 2.12 On information and belief, Defendant Old Republic General Insurance Corporation ("Old Republic") is an insurance company duly organized and existing under the laws of Illinois, with its principal place of business in Chicago, Illinois. Old Republic may be served with process through its registered agent Corporation Service Company at 211 East 7th Street, Suite 620, Austin, TX 78701.

 2.13 On information and belief, Defendant AIG Specialty Insurance Company ("AIG") is an insurance company duly organized and existing under the laws of Illinois, with its principal place of business in Chicago, Illinois. AIG Specialty Insurance may be served with process through the Commissioner of Insurance at its principal place of business, 500 W. Madison St., Suite 3000, Chicago, IL, 60661.

EXHIBIT A-1

2.14    On information and belief, Defendant United Fire & Casualty Company ("United Fire") is an insurance company duly organized and existing under the laws of Iowa, with its principal place of business in Cedar Rapids, Iowa. United Fire may be served with process through its registered agent for service, Joe Johnson, 455 E Med Center Blvd Ste. 400, Webster, TX 77598-4398.

2.15    On information and belief, Defendant Amerisure Mutual Insurance Company ("Amerisure") is an insurance company duly organized and existing under the laws of Michigan, with its principal place of business in Farmington Hills, Michigan.   Amerisure may be served with process through its registered agent for service Robin Miller, 5221 N. O'Connor Blvd., Suite 400, Irving, TX 75039-3711.

### III.
### JURISDICTION AND VENUE

3.1    This Court has jurisdiction over the parties and claims in this action because the amount in controversy is within the jurisdictional limits of this Court.

3.2    Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code, an actual controversy of a justiciable nature exists between LMIC and the Defendants regarding the rights and responsibilities the parties under insurance policies issued by Defendants which potentially cover the same insured in underlying suits described more fully below.  All persons who have or claim any interest that would be affected by the outcome of this litigation have been joined as parties. There is no other pending legal action seeking to adjudicate the rights of the parties hereto.

3.3    Under Texas Civil Practice and Remedies Code section 15.002(a), venue is proper in Dallas County because all or a substantial part of the events giving rise to LMIC's claims occurred in Dallas County, and the underlying suits are pending in Dallas County.

EXHIBIT A-1

## IV.
## BACKGROUND

4.1   LMIC seeks a declaration regarding the Defendants' duties to defend and indemnify Trinity Infrastructure, Inc. ("Trinity"), in connection with an underlying suit, Cause No. DC-15-03577, in the 134th District Court of Dallas County, Texas (the "Underlying Suit"), previously filed as two separate suits styled, respectively, *Amado Palavacini, et al. v. Trinity Infrastructure, L.L.C., et al.*, Cause No. DC-15-04256, in the 134th District Court of Dallas County, Texas (the "Palavacini Suit"); and *Maria Cazares, et. al. v. Trinity Infrastructure, LLC, et al.*, Cause No. DC-15-03577, in the 134th District Court of Dallas County, Texas (the "Cazares Suit").   The Defendants' duties to defend arise from the allegations against their insureds pursuant to the terms and conditions of policies issued by Defendants.

**A.   The Consolidated Petition.**

4.2   On November 11, 2016, the trial court consolidated the Cazares and Palavicini Suits for all purposes. The Plaintiffs' Eleventh Amended Petition (the "Consolidated Petition") is the current live pleading in the Underlying Suit and was filed on behalf of all plaintiffs originally named in the Cazares and Palavicini Suits. A true copy of the Consolidated Petition is attached as Exhibit "A". The Consolidated Petition alleges, on behalf of over 200 homeowners, that plaintiffs suffered damages arising out of construction of the LBJ Managed Lane Project along a 17-mile stretch of IH-635 near Dallas, Texas (the "Project").  Ex. A, Consolidated Petition at 2, 3-13.  It alleges Trinity was retained as general contractor on the Project and that Trinity hired nineteen of the named defendants as subcontractors to complete the Project. *Id.* at 21-23. It also alleges Ferrovial Agroman US Corp., Ferrovial Holding US Corp., Ferrovial US Construction Corp., Ferrovial Agroman Texas LLC, Weber LLC, and Citra US Services, LLC (collectively the

EXHIBIT A-1

"Ferrovial Defendants") are parents, subsidiaries, or affiliates of Trinity that are responsible and/or liable for its actions. *Id.* at 2-3, 14-15, 20-21, 32-33.

4.3     The Consolidated Petition further alleges the following:

The construction Project was awarded to LBJ Infrastructure Group, LLC ("LBJIG"), a Ferrovial subsidiary, who hired Trinity, another Ferrovial subsidiary, as general contractor on the Project.  Ex. A, Consolidated Petition at 20-21.  The Ferrovial Defendants "formed a partnership . . . called the LBJ Development Group, LLC to design, develop, finance and deliver the project." *Id.* at 21. Trinity "is a subsidiary and a joint venture with another subsidiary, BDW Construction, LLC, to manage and oversee the construction of the Project." *Id.* at 21-22. LBJIG entered into a design-build contract with the Texas Department of Transportation ("TxDOT"). *Id.* at 22.  Trinity and its affiliates retained the remaining defendants as subcontractors (the "Subcontractor Defendants") to complete the project. *Id.* at 23.

The Project is a 17-mile stretch of IH-635 with extensions north and south along IH-35E, and includes an 8-mile stretch that is up to 50 feet below ground level. *Id.* at 20.  The managed lanes of the Project were built as a toll road expected to generate profits for the Defendant companies. *Id.* at 21.

Defendants designed parts of the Project to run below ground and "designed access roads and general use lanes to run close to Plaintiffs' neighborhood and homes", leaving less than 30 feet between the highway and Plaintiffs' homes. *Id.* at 23.

Massive excavations in the Project "caused the adjacent lands to . . . shift, dewater, and otherwise move the foundations of Plaintiffs' homes." *Id.* Defendants "did not use ordinary care in their excavations because they did not utilize proper shoring technology necessary to prevent the damage to neighboring homes." *Id.* Defendants "used heavy machinery to crack, crush, blast, pound and remove in the process of demolition and excavation", causing excessive noise. *Id.* The "explosions, cracking, drilling, pounding . . . and removal shake Plaintiffs' homes" and "caused homes to incur massive splits in the walls, ceilings and floors and for there to be greater movement than ever seen before." *Id.* at 24.  "Defendants have caused tens of millions of dollars in physical damage to the homes surrounding the highway." *Id.* The "concussive force of the excavation" was physically felt by plaintiffs, and noise barriers were inadequate to abate noise and created new hazards to the safety of children and pets. *Id.* at 24-25. Alleyways incurred pooling water and inadequate drainage, creating health hazards for the community. *Id.* at 25. Defendants ignored plaintiffs' complaints. *Id.*

4.4     Otherwise, the Consolidated Petition does not attribute specific wrongful conduct to any particular defendant. The Consolidated Petition does not allege when the alleged damage occurred, but it does allege "[c]onstruction on the Project lasted until the end of 2015, but

EXHIBIT A-1

Plaintiffs' damages continue." Ex. A, Consolidated Petition at 23. The Consolidated Petition asserts causes of action against all Defendants for loss of lateral support, nuisance, violation of private property rights, negligence/gross negligence, intentional infliction of emotional distress, and unjust enrichment. Ex. A, Consolidated Petition at 25-32.

4.5     The Consolidated Petition also alleges "Defendants are legally responsible for the acts and/or omissions of each other's agents, employees, statutory employees, borrowed servants, and representatives under the doctrines of agency . . .vicarious liability, statutory employment, borrowed servant and *respondeat superior*" and that Trinity is liable for the conduct of the other subsidiary defendants under similar doctrines. *Id.* at 32. It further alleges Defendants were engaged in a joint enterprise and a joint venture, and that Trinity and the Ferrovial Defendants were alter egos and engaged in a sham to perpetrate fraud on Plaintiffs. *Id.* at 32-33.

## B.     The Cazares Petition.

4.6     The Fourth Amended Petition and Request for Disclosures in the Cazares Suit (the "Cazares Petition") is the current live pleading in that suit.  A true copy of the Cazares Petition is attached as Exhibit "B".  It appears the Cazares Petition has been superseded by the Consolidated Petition, which was filed on behalf of the Cazares plaintiffs as well as the Palavicini plaintiffs.   The Cazares Petition alleges facts similar to those alleged in the Consolidated Petition, including damages arising from the same Project. It alleges the Cazares plaintiffs "endured loss of use and enjoyment of their properties, nuisance, trespass, loss of market value, loss of lateral support, and destruction to their homes and businesses from Defendants' construction activities." Ex. B, Cazares Petition at 15. It asserts causes of action for loss of lateral support, negligence, negligent undertaking, breach of contract, nuisance, water

EXHIBIT A-1

code violations, violation of private property rights, emotional distress, unjust enrichment, fraudulent concealment, and gross negligence. *Id.* at 15-21.

4.7     The Cazares Petition alleges theories of vicarious liability, joint enterprise liability, and joint venture liability. *Id.* at 19-20. The Cazares Petition does not attribute specific wrongful conduct to any particular defendant. It also does not allege when any damage occurred.

## C.     The Trinity Third-Party Petition and the Rodriguez Trial.

4.8.     On or about December 30, 2016, the owners of one home, Felipe and Aurora Rodriguez, two plaintiffs originally named in the Palavicini Suit, filed a separate petition (the "Rodriguez Petition"), which supplements the petitions in the Underlying Suit (the "Rodriguez Suit"). The Rodriguez Petition alleges facts and causes of action substantively identical to the Consolidated Petition filed on behalf of all plaintiffs in the suits.  A true copy of the Rodriguez Petition is attached as Exhibit "C." The Rodriguez Petition alleges, in part, the following facts:

> "Defendants designed long stretches . . . of the Project to run below ground and underground", "designed the access roads and general use lanes to run close to Plaintiffs' neighborhood and homes", "designed the LBJ Express Lane . . . to run right next to Plaintiffs' homes", "excavated millions of cubic feet of . . . earth and rock", causing "the adjacent lands to likewise shift, dewater, and otherwise move the foundations of Plaintiffs' homes". Ex. C, Rodriguez Petition at 6-7.

> "Defendants did not use ordinary care in their excavations because they did not proper utilize [sic] shoring technology necessary to prevent the damage to neighboring homes." *Id.* "Defendants used heavy machinery to crack, crush, blast, pound, and remove in the process of demolition and excavations that caused ungodly, awful noise," and the "explosions, cracking, drilling, pounding, pounding, and removal shake Plaintiffs' homes causing them "to incur massive splits in the walls, ceilings and floors, and for there to be greater movement than ever seen before." *Id.* Defendants thus "have caused tens of millions of dollars in physical damage to the homes surrounding the highway." *Id.*

The construction noise and vibrations caused "resulting sound waves that penetrate the body and ears". Ex. C, Rodriguez Petition at 8. Construction walls placed to abate noise failed to do so and created new hazards, including permitting children and pets "to wander on to the highway."

**EXHIBIT A-1**

*Id.* Other parts of the alley ways have become so depressed that water pools when it rains due to the lack of adequate drainage", creating physical and health hazards to the community. *Id.*

4.9     On December 8, 2016, for purposes of the Rodriguez Trial, underlying plaintiffs non-suited all Subcontractor Defendants named in the Cazares and Palavicini Petitions, except for Texas Shafts, Inc., Hayward Baker, Inc. (formerly known as Craig Olden, Inc.) and Mario Sinacola & Sons Excavating, Inc. On December 22, 2016, Trinity filed a Third-Party Petition which named all the Subcontractor Defendants.   The Third-Party Petition asserted claims of contribution, indemnity, and breach of contract against all Subcontractor Defendants, and seeks recovery against each of them for any damages assessed against Trinity in favor of underlying plaintiffs. A true copy of the Trinity Third-Party Petition is attached as Exhibit "D." The trial court subsequently severed and abated Trinity's third-party claims until further order of the court.

4.10.   The Rodriguez Suit was tried and, on February 7, 2017, a jury returned a verdict in favor of the Rodriguez Plaintiffs in the amount of $248,723.46. The Rodriguez Suit is in the post-trial stage pending appeal.

**D.      The Subcontractor Defendants agreed to defend and indemnify Trinity and to add it as an additional insured under their policies.**

4.11.   LMIC insures Trinity under a Commercial General Liability (CGL) Policy No. TB2-691-454746-010 (the "LMIC Policy").   LMIC agreed to provide and is providing a defense to Trinity, as its named insured, in the Underlying Suit. In connection with construction of the Project, Trinity entered into subcontract agreements (the "Subcontracts") with certain parties related to work on the Project, as follows (collectively, the "Subcontractor Defendants"):

- Archer Western Construction, LLC (insured by Arch);

- Austin Bridge & Road (insured by British American);

EXHIBIT A-1

- Civil Works, Inc. (insured by Starr);

- EW Wells Group, LLC (insured by Evanston and Maxum);

- Hayward Baker, Inc., formerly Craig Olden, Inc. (insured by XL);

- Indus Construction, LP (insured by United Fire and Valley Forge);

- Lindamood Demolition, Inc. (insured by Oklahoma Specialty);

- Mario Sinacola & Sons Excavating, Inc. (insured by Travelers Property);

- Renaissance Contractors Partnership (insured by Valley Forge);

- Renaissance Contractors, Inc. (insured by Amerisure);

- Stomper Demolition Co., Inc. (insured by Maxum);

- Texas Shafts, Inc. (insured by Travelers Lloyds); and

- Weir Brothers, Inc. (insured by Old Republic and AIG).

4.12.   In each Subcontract, each Subcontractor Defendant agreed to defend and indemnify Trinity for claims asserted against it in connection with the Project. True copies of relevant portions of each Subcontract, requiring the Subcontractor Defendants to defend and indemnify Trinity and to provide defense and indemnity to Trinity under their insurers' policies, are attached hereto as Exhibits "E.1" through "E.12". With respect to indemnity and defense, the Subcontracts provide as follows or the equivalent (the Subcontracts refer to the Subcontractor Defendants as "Contractor"):

(A)   CONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B)   CONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR

**EXHIBIT A-1**

DAMAGE SUSTAINED IS CAUSED BY THE PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES.

(C)    CONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
1) PARTIAL NEGLIGENCE;
2) CONCURRENT NEGLIGENCE

(D)    THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE CONTRACTOR, ITS SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

Exs. E.1 through E.12, at Article 4.2.

4.13. Further, Article 5.1(C) of each Subcontract required each Subcontractor Defendant to procure general liability insurance coverage for Trinity as an additional insured under policies maintained by the Subcontractor Defendants, as follows:

Each Contractor and Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Contractor and Subcontractor policy must provide a minimum of 30 days written Notice by the insurer to Trinity prior to the cancellation, non-renewal, or material change of any insurance referred to herein. Contractor's insurance must provide coverage whether Contractor's liability arises out of the operations of Contractor or any Subcontractor in connection with the Work.

Exs. E.1 through E.12, at Article 5.1(C). Finally, Article 5.E of each Subcontract provides that any "[f]ailure of Contractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Contractor's or any Subcontractor's insurance as required is a material breach of this Agreement."

**E.    Trinity is an additional insured under each of the Subcontractor Defendants' policies in connection with the allegations of the Underlying Suit.**

4.14.   Pursuant to the Subcontracts, Trinity required and obtained certificates of insurance from each Subcontractor Defendant showing they had procured additional insured coverage for Trinity under the following policies:

- Archer Western Contractors, LLC provided a certificate of General Liability Policy No. 4IPKG8901907 issued by Arch;
- Austin Bridge & Road, LP provided a certificate for General Liability Policy No. 0104211 issued by British American;
- Civil Works, Inc. provided a certificate for General Liability Policy No. SLPG-GL01996-00 issued by Starr;
- Craig Olden, Inc. provided a certificate for General Liability Policy No. US00029022LI13A issued by XL;
- EW Wells Group, LLC provided a certificate for General Liability Policy No. GLP801085303 issued by Maxum;
- Indus Construction LP provided a certificate for General Liability Policy No. 4019260112 issued by Valley Forge;
- Lindamood Demolition, Inc. provided a certificate for General Liability Policy No. OFMP01000016-00 issued by Oklahoma Specialty;
- Mario Sinacola & Sons Excavating, Inc. provided a certificate for General Liability Policy No. CO131J7789 issued by Travelers Property;
- Renaissance Contractors, Inc. provided a certificate for General Liability Policy No. CPP2083565 issued by Amerisure;
- Stomper Demolition Company, Inc. provided a certificate for General Liability Policy No. GLP601827801 issued by Maxum;
- Texas Shafts, Inc. provided a certificate for General Liability Policy Nos. DTC03894N397TLC10, VTC2JCO7165B92A, and DTC03894N397 issued by Travelers Lloyds; and General Liability Policy No. DTC03894N397 issued by Travelers Indemnity; and
- Weir Bros., Inc. provided a certificate for General Liability Policy No. A6CG49181306 issued by Old Republic.

True copies of each certificate are attached hereto as Exhibits "F.1" through "F.12".

4.15.   On information and belief, each policy issued to the Subcontractor Defendants (collectively the "Subcontractor Policies") provided coverage under standard forms with similar language. On information and belief, each Subcontractor Policy provided additional insured

**EXHIBIT A-1**

coverage to Trinity under an endorsement on form CG 20 37, or equivalent, which provides, in pertinent part, as follows:

> Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

In the referenced "Schedule," each CG 20 37 endorsement provided, in pertinent part, as follows:

> Where required by written contract executed prior to commencement of operations.

4.16. On information and belief, the Subcontractor Policies also provided additional insured coverage to Trinity on form CG 20 10, or equivalent, which provides, in pertinent part, as follows:

> Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:

> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;

> in the performance of your ongoing operations for the additional insured(s) scheduled above.

In the referenced "Schedule", each CG 20 10 endorsement provides, in pertinent part, as follows:

> Any person(s) or organization(s) to whom the insured agrees to provide Additional Insured status in a written contract signed by both parties and executed prior to the commencement of operations.

Collectively, these CG 20 37 and CG 20 10 endorsements are referred to as the "AI Endorsements."

4.17. On information and belief, the Subcontractor Policies contain other additional insured endorsements that apply to protect Trinity. Thus, the Subcontracts required the Subcontractors to obtain policies providing additional insured coverage to Trinity and the

EXHIBIT A-1

relevant policies provide such coverage for any party entitled to coverage under such an agreement, Trinity is an additional insured under the Subcontractor Policies for all coverages available under those Policies for Trinity's liability arising from both ongoing and completed operations in connection with the Project.

4.18.   The insuring clauses of each Subcontractor Policy requires the insurer "to pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies" and also provides the insurer has "the right and duty to defend the insured against any 'suit' seeking those damages."   Among other things, the Subcontractor Policies further provide that the insurance applies to bodily injury and property damage "if . . . [t]he 'bodily injury' or property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' [and] [t]he 'bodily injury' or 'property damage' occurs during the policy period".

4.19.   The allegations in the Underlying Suit trigger coverage under the Subcontractor Policies in that they allege facts potentially supporting claims for "property damage" and "bodily injury" caused by an "occurrence," as those terms are defined in the Subcontractor Policies.

**F.     Defendants have failed to provide additional insured coverage to Trinity and have failed to pay its defense costs in the Underlying Suit.**

4.20.   Trinity received notice of the claims against it in connection with the Project. Trinity sent notices to each Defendant, tendering the relevant live pleading to each insurer and demanding a defense and indemnity.   Trinity subsequently repeated its demand for defense and indemnity to each Defendant, tendering live pleadings as they were amended in the Underlying Suit and demanding a defense and indemnity.

4.21.   Defendants have agreed to provide defense costs and other coverage to Trinity as

EXHIBIT A-1

an additional insured pursuant to the Subcontractor Policies. Despite proper notice and tender, Defendants have failed and refused to pay the costs of defense they owe to Trinity under the Subcontractor Policies in connection with the Underlying Suit. LMIC has defended and continues to defend Trinity against the claims asserted in the Underlying Suit, subject to a reservation of its rights.

## V.
## CAUSES OF ACTION

**A.    Declaratory Judgment.**

5.1    LMIC incorporates by reference the allegations set forth above.  This action is necessary to determine the Defendants' duties to defend Trinity as an additional insured under the Subcontractor Policies.  This matter presents an actual controversy of a justiciable nature between the parties hereto with respect to the matters set forth in this action.  Pursuant to Chapter 37 of the Texas Civil Practices & Remedies Code, LMIC requests that, upon necessary proof and hearing, the Court enter judgment declaring as follows:

a.    Defendants are required to defend and indemnify Trinity in connection with the claims asserted in the Underlying Suit and to pay all or a portion of the defense costs incurred or paid by LMIC on behalf of Trinity in the Underlying Suit;

b.    Coverage for Trinity under the Subcontractor Policies is primary and the coverage, if any, of the LMIC Policy is excess with respect to any duty to defend and/or indemnify Trinity in the Underlying Suit;

c.    Defendants have breached their obligations under the Subcontractor Policies by, among other things, failing to defend Trinity and/or pay its defense costs in the Underlying Suit under the Subcontractor Policies and;

d.    LMIC is therefore entitled to reimbursement from Defendants for all or a portion of the defense costs incurred on Trinity's behalf in the Underlying Suit;

e.    LMIC also is entitled to penalties under the Prompt Payment provisions of the Texas Insurance Code, Chapter 542; and

f.    LMIC also is entitled to recover the costs and attorneys' fees incurred in bringing

EXHIBIT A-1

this action for breach of contract pursuant to Texas Civil Practice and Remedies Code section 38.001 *et seq.*, to which LMIC is entitled as Trinity's subrogee.

5.2.     Trinity was at all material times an insured under the Subcontractor Policies. The facts and claims asserted against Trinity in the Underlying Suit are potentially within the scope of coverage of the Subcontractor Policies in that the pleadings in the Underlying Suit allege covered "bodily injury" and "property damage" caused by an "occurrence" within the policy periods of the Subcontractor Policies and no other policy provision precludes coverage for Trinity under the Subcontractor Policies. The pleadings in the Underlying Suit name the Subcontractors and allege their work was defective and caused underlying plaintiffs' damages. Thus, Defendants have a duty to defend Trinity against the claims asserted in the Underlying Suit.

5.3.     Despite proper notice and tender, Defendants have refused to pay any portion of the cost of Trinity's defense, which LMIC has been forced to pay and continues to pay. This gives rise to valid claims for contractual subrogation, equitable subrogation, and contribution in LMIC's favor against Defendants. Any rights of recovery Trinity has against Defendants under the Subcontractor Policies are transferred to LMIC for all payments it has made in defending Trinity in the Underlying Suit. All defense fees and costs LMIC has paid in defending Trinity in the Underlying Suit have been reasonable and necessary to such defense. Accordingly, LMIC is entitled to recover from Defendants all attorneys' fees, expenses and other costs LMIC has incurred in defending Trinity against the claims asserted in the Underlying Suit.

5.4.     Defendants' failure to assume the defense of Trinity, or to pay any of its defense fees and costs, in the Underlying Suit, constitutes one or more breaches of their contractual obligations under the Subcontractor Policies. Accordingly, pursuant to Texas Civil Practice and Remedies Code section 38.001(8), LMIC, as subrogee of Trinity, is also entitled to recover its

EXHIBIT A-1

reasonable and necessary attorney's fees incurred in this action to hold Defendants to their contractual obligations.

5.5.    LMIC is also entitled to indemnity and/or contribution from Defendants for any indemnification of Trinity in connection with the Underlying Suit.

5.6.    All conditions precedent to LMIC's rights of recovery, set out above, have been fully performed and/or have been waived.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, plaintiff LMIC prays that Defendants be cited to appear and answer herein, and that on final hearing LMIC have the following judgment:

1.    A declaration that Trinity is an additional insured under the Subcontractor Policies in connection with the Underlying Suit;

2.    A declaration that Defendants have the duty to defend and indemnify Trinity in connection with the Underlying Suit;

3.    A declaration that all defense costs and fees LMIC has incurred in defending Trinity in the Underlying Suit have been reasonable and necessary;

4.    An award of all defense costs and fees LMIC has incurred in defending Trinity in the Underlying Suit;

5.    An award of attorney's fees and costs LMIC has incurred in asserting this declaratory and subrogation action and associated prompt payment penalties; and

6.    An award of such other and further relief to which LMIC may be entitled.

EXHIBIT A-1

Respectfully submitted,

HANNA & PLAUT, L.L.P.

211 East Seventh Street, Suite 600
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

By:  */s/ David L. Plaut*
       David L. Plaut
       State Bar No. 16066030
       dplaut@hannaplaut.com
       Jeffrey C. Glass
       State Bar No. 08004000
       jglass@hannaplaut.com
       Sarah Scott
       State Bar No. 24073580
       sscott@hannaplaut.com

**ATTORNEYS FOR PLAINTIFF LIBERTY
MUTUAL INSURANCE COMPANY**

EXHIBIT A-1

# EXHIBIT A

# Plaintiffs' Eleventh Amended Petition ("Consolidated Petition")

CAUSE NO. DC-15-03577

| | | |
|---|---|---|
| MARIA CAZARES, ET AL. | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| TRINITY INFRASTRUCTURE, LLC, ET AL | § | 134th JUDICIAL DISTRICT |

---

## PLAINTIFFS' ELEVENTH AMENDED PETITION[1]

---

TO THE HONORABLE JUDGE TILLERY:

Amado Palavacini, *et al.* (hereinafter referred to as "Plaintiffs")[2] complain of Trinity

Infrastructure LLC, Ferrovial Agroman US Corp., Ferrovial Holding US Corp., Ferrovial US

Construction Corp., Ferrovial Agroman Texas LLC, Weber LLC, Bluebonnet Contractors,

LLC, Cintra US Services LLC, Texas Shafts, Inc., Austin Bridge and Road, Inc., Indus

Construction, LP, Renaissance Contractors, Inc., Renaissance Contractors Partnership,

Mario Sinacola & Sons Excavating, Inc., EW Wells Group, LLC, Stomper Demolition

Company, Inc., Civil Works, Inc., Hayward Baker, Inc., Weir Brothers, Austin Bridge and

Road, LP, Lindamood Demolition, Inc., Weir Brothers Contracting, LLC, Wright

Construction Company, AncorTex, Inc., and Oscar Orduno Inc. (hereinafter referred to

---

[1] Felipe and Aurora Rodriguez's claims are set forth in their Trial Petition, previously filed with the Court.

[2] The term "Plaintiffs" means all Plaintiffs named in Cause No. DC-15-03577; *Maria Cazares, et al. v. Trinity Infrastructure LLC, et al.*; pending in the 134th Judicial District Court of Dallas County, Texas and Cause No. DC-15-04256; *Amado Palavacini, et al. v. Trinity Infrastructure LLC, et al.*; pending in the 134th Judicial Court of Dallas County, Texas.



EXHIBIT
A

EXHIBIT A-1

collectively as "Defendants") and would respectfully show unto the Honorable Court the following:

## I.
## SUMMARY OF THE ACTION

This is an action brought by over two hundred homeowners who live next to the LBJ Express Project in Dallas and Farmers Branch, Texas against the companies that are projected to receive over $84 Billion in revenue from tolls paid by Dallas County residents. Plaintiffs have had to endure what nobody should have to endure: the progressive and systematic destruction of their homes while Defendants excavated, pounded, crushed, blasted, drilled and demolished whilst constructing the new LBJ Express Project that runs between I-35 and Highway 75. *Plaintiffs' homes are literally coming apart at the seams; and so are their lives as a result of Defendants' wrongful conduct.*

Heaping torture and humiliation upon physical loss, Defendants insisted on working through the night. Plaintiffs cannot sleep. The deafening noise is simply too much for anyone to have to take—literally affecting the physical senses. The resulting psychic injury, the stress, the loss of productivity, the anxieties, and the palpable sense of fear are more than any group of people should be asked to endure. Theirs is a cost that must be internalized by Defendants *before* Defendants realize the astronomical riches that they have secured for themselves at Plaintiffs' collective cost.

Defendant Trinity Infrastructure LLC, the general construction contractor, is not coincidentally a subsidiary of Ferrovial, a Spanish company that was awarded the contract

EXHIBIT A-1

to collect the tolls on the new LBJ Express Lane: for an expected $52 million in profit *every year*! Despite these prospective riches, Defendants ignore the physical damage and pain and suffering they are causing.

Plaintiffs are guilty of nothing more than realizing the American dream. They worked, scrimped, saved, and scraped to buy their homes. To raise their families in a good neighborhood. Which is what they strove to do. They are being *punished* for dreaming a little bigger. That is why this Court must restore order and justice to Plaintiffs' lives. They *earned* it.

## II.
## DISCOVERY LEVEL THREE

1.    This case should proceed under Level Three discovery under Rule 190 of the Texas Rules of Civil Procedure. Plaintiffs request that the court enter a discovery control plan within thirty (30) days of the last served Defendant's Answer due date to this Petition.

## III.
## THE PARTIES

2.    Plaintiff **Amado Palavicini** is an individual who is a resident of Dallas County, Texas.

3.    Plaintiff **Esther Khan** is an individual residing in Dallas County, Texas.

4.    Plaintiff **Samuel Escobar** is an individual residing in Dallas County, Texas.

5.    Plaintiff **Laurie Daniels** is an individual residing in Dallas County, Texas.

6.    Plaintiff **Nadia Khan-Roberts** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

7.     Plaintiff **Rafael Antonio Melgar** is an individual who is a resident of Dallas County, Texas.

8.     Plaintiff **Mauro Montes** is an individual who is a resident of Dallas County, Texas.

9.     Plaintiff **Sabino Avalos** is an individual who is a resident of Dallas County, Texas.

10.    Plaintiff **Hector Ramirez** is an individual who is a resident of Dallas County, Texas.

11.    Plaintiff **Jamie Orellana** is an individual who is a resident of Dallas County, Texas.

12.    Plaintiffs **William and Elizabeth Attel** are individuals who are residents of Dallas County, Texas.

13.    Plaintiff **Panfilo Hernandez** is an individual who is a resident of Dallas County, Texas.

14.    Plaintiff **Gloria Stock** is an individual who is a resident of Dallas County, Texas.

15.    Plaintiff **Humberto Aguayo** is an individual who is a resident of Dallas County, Texas.

16.    Plaintiffs **Juan and Blanca Munoz** are individuals who are residents of Dallas County, Texas.

17.    Plaintiff **Matilda Diaz** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

18.     Plaintiff **Maria Negrete** is an individual residing in Dallas County, Texas.

19.     Plaintiff **Lewis Hull** is an individual residing in Dallas County, Texas.

20.     Plaintiff **Maria Herbas** is an individual residing in Dallas County, Texas.

21.     Plaintiffs **Amalia and Margarito Escamilla** are individuals residing in Dallas County, Texas.

22.     Plaintiffs **Jose and Elizabeth Escobar** are individuals residing in Dallas County, Texas.

23.     Plaintiffs **Joann and Ignacio Juarez** are individuals residing in Dallas County, Texas.

24.     Plaintiff **Jorge De la Torre** is an individual residing in Dallas County, Texas.

25.     Plaintiff **Maria Basulto** is an individual residing in Dallas County, Texas.

26.     Plaintiff **Maria Sotelo** is an individual residing in Dallas County, Texas.

27.     Plaintiffs **Felipe and Aurora Rodriguez** are individuals residing in Dallas County, Texas.

28.     Plaintiffs **Maria Montelongo and Rogelio Herrera Hernandez** are individuals residing in Dallas County, Texas.

29.     Plaintiffs **Adan and Irma Rodriguez** are individuals residing in Dallas County, Texas.

30.     Plaintiff **Juan C. Araujo Torres** is an individual residing in Dallas County, Texas.

31.     Plaintiff **Faustino Gonzalez** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

32.     Plaintiff **Abraham Guerrero** is an individual residing in Dallas County, Texas.

33.     Plaintiff **Rodolfo Tolosa** is an individual residing in Dallas County, Texas.

34.     Plaintiff **Pompeyo Pantoja Herrera** is an individual residing in Dallas County, Texas.

35.     Plaintiff **Pitch Blickensderfer** is an individual residing in Dallas County, Texas.

36.     Plaintiff **Ramon Padilla** is an individual residing in Dallas County, Texas.

37.     Plaintiff **Rolando Puga** is an individual residing in Dallas County, Texas.

38.     Plaintiff **Michael Blackwell** is an individual residing in Dallas County, Texas.

39.     Plaintiff **Dragan Despotovic** is an individual residing in Dallas County, Texas.

40.     Plaintiff **Hwang Heo** is an individual residing in Dallas County, Texas.

41.     Plaintiffs **Luis and Ramona De la Torre** are individuals residing in Dallas County, Texas.

42.     Plaintiff **Kevin Kennedy** is an individual residing in Dallas County, Texas.

43.     Plaintiff **Letitia Jackson Baty** is an individual residing in Dallas County, Texas.

44.     Plaintiff **Georgia Clinton Crow** is an individual residing in Dallas County, Texas.

45.     Plaintiff **Grace Emerson** is an individual residing in Dallas County, Texas.

46.     Plaintiffs **Jeffrey and Cynthia Moore** are individuals residing in Dallas County, Texas.

47.     Plaintiff **Marcelino Avila** is an individual residing in Dallas County, Texas.

**EXHIBIT A-1**

48.     Plaintiff **Maria Sapien** is an individual residing in Dallas County, Texas.

49.     Plaintiff **Sara R. Jones** is an individual residing in Dallas County, Texas.

50.     Plaintiff **Alfonso Cabanas** is an individual residing in Dallas County, Texas.

51.     Plaintiff **Pedro Portillo** is an individual residing in Dallas County, Texas.

52.     Plaintiff **Rafael Lopez** is an individual residing in Dallas County, Texas.

53.     Plaintiff **Juan Rodriguez** is an individual residing in Dallas County, Texas.

54.     Plaintiff **Chip Embrey** is an individual residing in Dallas County, Texas.

55.     Plaintiff **Mike Nolan** is an individual residing in Dallas County, Texas.

56.     Plaintiff **Miryam L. Chavez Alva de Otinino** is an individual residing in Dallas County, Texas.

57.     Plaintiff **Yesenia Martinez** is an individual residing in Dallas County, Texas.

58.     Plaintiff **Jose Duran** is an individual residing in Dallas County, Texas.

59.     Plaintiff **Teresita de Jesus Perez** is an individual residing in Dallas County, Texas.

60.     Plaintiff **Manuela Gil** is an individual residing in Dallas County, Texas.

61.     Plaintiffs **Marcos and Diana Salazar** are individuals residing in Dallas County, Texas.

62.     Plaintiff **Alex Voss** is an individual residing in Dallas County, Texas.

63.     Plaintiff **Jorge Villalba** is an individual residing in Dallas County, Texas.

64.     Plaintiff **Leticia Palavicini** is an individual residing in Dallas County, Texas.

65.     Plaintiff **Pedro Narvaez** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

66.     Plaintiff **Saban Skeledzic** is an individual residing in Dallas County, Texas.

67.     Plaintiffs **Iris Palomeque** is an individual residing in Dallas County, Texas.

68.     Plaintiff **Shell McCreary-Davis** is an individual residing in Dallas County, Texas.

69.     Plaintiff **Francisca Lovo** is an individual residing in Dallas County, Texas.

70.     Plaintiff **Emilio Vallejo Rangel** is an individual residing in Dallas County, Texas.

71.     Plaintiffs **Carlos and Blanca Urrea** are individuals residing in Dallas County, Texas.

72.     Plaintiff **Esther Cruz** is an individual residing in Dallas County, Texas.

73.     Plaintiff **Aurora Garcia** is an individual residing in Dallas County, Texas.

74.     Plaintiff **Mickey McKay** is an individual residing in Dallas County, Texas.

75.     Plaintiff **Maria Aguilar** is an individual residing in Dallas County, Texas.

76.     Plaintiff **Santos Elodio Fuentes** is an individual residing in Dallas County, Texas.

77.     Plaintiff **Oscar Gonzalez** is an individual residing in Dallas County, Texas.

78.     Plaintiffs **Michael and Liliana Stanley** are individuals residing in Dallas County, Texas.

79.     Plaintiffs **Joseph and Nuri Valdez** are individuals residing in Dallas County, Texas.

EXHIBIT A-1

80.    Plaintiffs **Martin Tarango and Martha Rodriguez** are individuals residing in Dallas County, Texas.

81.    Plaintiff **Homero Fernandez** is an individual residing in Dallas County, Texas.

82.    Plaintiff **Gene Flowers** is an individual residing in Dallas County, Texas.

83.    Plaintiff **Johnny Travis** is an individual residing in Dallas County, Texas.

84.    Plaintiff **Paul Porter** is an individual residing in Dallas County, Texas.

85.    Plaintiff **Armando Martinez** is an individual residing in Dallas County, Texas.

86.    Plaintiff **Javier Lopez** is an individual residing in Dallas County, Texas.

87.    Plaintiff **Jose Puga** is an individual residing in Dallas County, Texas.

88.    Plaintiff **Jose Portillo** is an individual residing in Dallas County, Texas.

89.    Plaintiff **Jimmy Ray Bumper** is an individual residing in Dallas County, Texas.

90.    Plaintiff **Michael Dobbin** is an individual residing in Dallas County, Texas.

91.    Plaintiff **Maria Martinez** is an individual residing in Dallas County, Texas.

92.    Plaintiffs **Robin and Sharon Reeves** are individuals residing in Dallas County, Texas.

93.    Plaintiffs **Ignacio and Debra Mendez** are individuals residing in Dallas County, Texas.

94.    Plaintiff **Noemi Reyes** is an individual residing in Dallas County, Texas.

95.    Plaintiff **Jose Diaz** is an individual residing in Dallas County, Texas.

96.    Plaintiff **Rita Garcia** is an individual residing in Dallas County, Texas.

97.    Plaintiff **Wayman Hemphill** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

98. Plaintiff **George Fuentes** is an individual residing in Dallas County, Texas.

99. Plaintiff **Mario Perez** is an individual residing in Dallas County, Texas.

100. Plaintiff **Arturo Morales** is an individual residing in Dallas County, Texas.

101. Plaintiff **Oscar Ramirez** is an individual residing in Dallas County, Texas.

102. Plaintiff **Roberto Arreola** is an individual residing in Dallas County, Texas.

103. Plaintiff **Jack Hebert** is an individual residing in Dallas County, Texas.

104. Plaintiff **Diana Guthrie** is an individual residing in Dallas County, Texas.

105. Plaintiff **Bryant Panek** is an individual residing in Dallas County, Texas.

106. Plaintiff **Jay Vineyard** is an individual residing in Dallas County, Texas.

107. Plaintiff **Jose Meza** is an individual residing in Dallas County, Texas.

108. Plaintiffs **Lenora Alonzo** and **Rudy Longoria** are individuals residing in Dallas County, Texas.

109. Plaintiff **Otto Barrera** is an individual residing in Dallas County, Texas.

110. Plaintiff **Ken Caspar** is an individual residing in Dallas County, Texas.

111. Plaintiff **Rajiv Gaind** is an individual residing in Dallas County, Texas.

112. Plaintiffs **Longino Hernandez** and **Mercedes Hernandez** are individuals residing in Dallas County, Texas.

113. Plaintiff **Ahmad Khan** is an individual residing in Dallas County, Texas.

114. Plaintiff **Marco Pineda** is an individual residing in Dallas County, Texas.

115. Plaintiffs **Abraham Valdes** and **Juan Perez** are individuals residing in Dallas County, Texas.

**EXHIBIT A-1**

116.    Plaintiff Juan **Carlos Mendez** is an individual residing in Dallas County, Texas.

117.    Plaintiff **Barbara Batson** is an individual residing in Dallas County, Texas.

118.    Plaintiff **Jim Goode** is an individual residing in Dallas County, Texas.

119.    Plaintiff **Vania Martelini Kennedy** is an individual residing in Dallas County, Texas.

120.    Plaintiffs **David Patty** and **LaDonya Moore Patty** are individuals residing in Dallas County, Texas.

121.    Plaintiff **Sarah Beattie** is an individual residing in Dallas County, Texas.

122.    Plaintiffs **Bob and Amy Meeker** are individuals residing in Dallas County, Texas.

123.    Plaintiffs **George and Ali Ferrin** are individuals residing in Dallas County, Texas.

124.    Plaintiff **Raymond Rangel, III** is an individual residing in Dallas County, Texas.

125.    Plaintiff **Adrian Fernando** is an individual residing in Dallas County, Texas.

126.    Plaintiffs **Mayra Aguirre and Israel Garcia** are individuals residing in Dallas County, Texas.

127.    Plaintiff **Sean Averitt** is an individual residing in Dallas County, Texas.

128.    Plaintiff **Alberto Badillo** is an individual residing in Dallas County, Texas.

129.    Plaintiff **Amber Basurto** is an individual residing in Dallas County, Texas.

130.    Plaintiff **Maricel Basurto** is an individual residing in Dallas County, Texas.

EXHIBIT A-1

131.   Plaintiff **Henry Canizales** is an individual residing in Dallas County, Texas.

132.   Plaintiff **Miguel Esparza** is an individual residing in Dallas County, Texas.

133.   Plaintiffs **Harry and Patricia Heckard** are individuals residing in Dallas County, Texas.

134.   Plaintiff **Debra Henry** is an individual residing in Dallas County, Texas.

135.   Plaintiff **Albina Huasco** is an individual residing in Dallas County, Texas.

136.   Plaintiff **Federico Huasco** is an individual residing in Dallas County, Texas.

137.   Plaintiff **Kyla Kylasapillai** is an individual residing in Dallas County, Texas.

138.   Plaintiffs **Pete and Terry Latham** is an individual residing in Dallas County, Texas.

139.   Plaintiffs **Gregory and Norma Leslie** are individuals residing in Dallas County, Texas.

140.   Plaintiff **Danny Miles** is an individual residing in Dallas County, Texas.

141.   Plaintiff **Salvador Muro** is an individual residing in Dallas County, Texas.

142.   Plaintiff **Sue Nabors** is an individual residing in Dallas County, Texas.

143.   Plaintiff **William Perlman** is an individual residing in Dallas County, Texas.

144.   Plaintiff **Apolinar Ramirez** is an individual residing in Dallas County, Texas.

145.   Plaintiff **Jesus Sanchez** is an individual residing in Dallas County, Texas.

146.   Plaintiff **Kim Schwab** is an individual residing in Dallas County, Texas.

147.   Plaintiffs **James and Ashley Thomas** are individuals residing in Dallas County, Texas.

EXHIBIT A-1

148.   Plaintiff **Paulette Travis** is an individual residing in Dallas County, Texas.

149.   Plaintiff **Joseph Paul Hicks** is an individual residing in Dallas County, Texas.

150.   Plaintiff **Patricia Driscoll** is an individual residing in Dallas County, Texas.

151.   Plaintiff **Lourdes Jasso** is an individual residing in Dallas County, Texas.

152.   Plaintiff **Ray Lisak** is an individual residing in Dallas County, Texas.

153.   Plaintiff **Monica Pauken** is an individual residing in Dallas County, Texas.

154.   Plaintiff **Ronald Umanzor** is an individual residing in Dallas County, Texas.

155.   Plaintiff **Ricardo Olague** is an individual residing in Dallas County, Texas.

156.   Plaintiff **Christine (Boltwood) Wordlaw** is an individual residing in Dallas County, Texas.

157.   Plaintiff **Pamela Vasquez** is an individual residing in Dallas County, Texas.

158.   Plaintiff **Patricia Hasenauer** is an individual residing in Dallas County, Texas.

159.   Plaintiff **Denver Briers** is an individual residing in Dallas County, Texas.

160.   Plaintiff **Jorge Delgado** is an individual residing in Dallas County, Texas.

161.   Plaintiff **Maria Galindo** is an individual residing in Dallas County, Texas.

162.   Plaintiff **Natalie and Curt Stiles** are individuals residing in Dallas County, Texas.

163.   Plaintiff **Ivette Cruz Weis** is an individual residing in Dallas County, Texas.

164.   Plaintiffs **Andre and Shirley Mires** are individuals residing in Dallas County, Texas.

EXHIBIT A-1

165.    Defendant **Trinity Infrastructure LLC** is a Texas limited liability company with its principal place of business located at 9303 New Trails Drive, Suite 200, The Woodlands, Texas, 77381. It is a subsidiary of Ferrovial Agroman Texas LLC, a wholly-owned subsidiary of Ferrovial Agroman, a Spanish company who will be managing the LBJ Express Lane. Trinity Infrastructure LLC has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

166.    Defendant **Ferrovial Agroman US Corp.** is a foreign owned for-profit Delaware corporation. It is and has been doing business in Texas via its joint venture Trinity. It may be served with process and a copy of this Petition by serving its registered agent in the State of Texas: Mario Menendez, 9303 New Trails Drive, Suite 200, The Woodlands, Texas, 77381.

167.    Defendant **Ferrovial Agroman Texas LLC.** is a for profit Texas Limited Liability Company. It is and has been doing business in Texas and in Dallas County with its principal place of business at 9303 New Trails Drive, Suite 200, The Woodlands, Texas, 77381. It may be served with process and a copy of this Petition by serving its registered agent in the State of Texas: Mario Menendez, 9303 New Trails Drive, Suite 200, The Woodlands, Texas, 77381.

168.    Defendant **Webber LLC** is a for profit Texas limited liability company with its principal place of business in Texas. It may be served with process and a copy of this Petition by serving its registered agent in the State of Texas: Mario Menendez, 9303 New Trails Drive, Suite 200, The Woodlands, Texas, 77381.

**EXHIBIT A-1**

169.    Defendant **Ferrovial Holding US Corp.** is a foreign owned for-profit Delaware corporation. It is and has been doing business in Texas via its subsidiaries and joint venture in Trinity. It may be served with process and a copy of this Petition by serving its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St. Wilmington, DE 19801.

170.    Defendant **Ferrovial U.S. Construction Corp.** is a foreign owned for-profit Delaware corporation. It is and has been doing business in Texas via its subsidiaries and joint venture in Trinity. It may be served with process and a copy of this Petition by serving its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St. Wilmington, DE 19801.

171.    Defendant **Bluebonnet Contractors LLC** is a limited liability company with its principal place of business at 6851 NE Loop 820, Fort Worth, Texas, 76180. Defendant Bluebonnet may be served a copy of this petition by serving one of its principal agents at its principal place of business.

172.    Defendant **Cintra US Services LLC** is a limited liability company with its principal place of business located at 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759. Defendant Cintra US Services LLC may be served a copy of this petition by serving its registered agent in Texas: Guillermo Sanguesa, 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

173.    Defendant **AncorTex, Inc.** is a Texas corporation that is and has been doing business in Texas and in Dallas County with its principal place of business at 2695 Villa Creek

EXHIBIT A-1

Dr., Suite B-108, Dallas, Texas 75234. Defendant AncorTex, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

174.    Defendant **Oscar Orduno, Inc.** is a Texas corporation is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Oscar Orduno, Inc. maintains its principal place of business in Texas. Defendant Oscar Orduno, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

175.    Defendant **Texas Shafts, Inc.**, is a domestic for profit corporation formed under the laws of the State of Texas. Texas Shafts, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Texas Shafts, Inc. maintains its principal place of business in Texas. Texas Shafts, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

176.    Defendant **Austin Bridge & Road, Inc.** is a Delaware corporation registered to do and is doing business in Texas and with its principal place of business located at 630 Commerce Dr., Suite 150, Irving, Texas 75063. Austin Bridge & Road, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

177.    Defendant **Renaissance Contractors Partnership** is a partnership with its principal place of business at 3575 Lone Star Circle, Suite 418, Justin Texas 76247.

EXHIBIT A-1

Renaissance Contractors Partnership has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

178.    Defendant **Renaissance Contractors, Inc.** is a Texas corporation with its principal place of business at 3575 Lone Star Circle, Suite 418, Justin Texas 76247. Renaissance Contractors Partnership has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

179.    Defendant **Indus Construction, LP** is a Texas limited partnership with its principal place of business at 6060 Brookglen Dr., Suite A, Houston, Texas 77017. Indus Construction, LP has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

180.    Defendant **Mario Sinacola & Sons Excavating, Inc.** is a Texas company with its principal place of business at 10950 Research Rd., Frisco, Texas 75033. Mario Sinacola & Sons Excavating, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

181.    Defendant **Stomper Demolition Company, Inc.** is a Texas company with its principal place of business at 3525 Liston Lane, Euless, Texas 76040. Service of process on this Defendant was completed on July 31, 2015 by serving it at 9487 Boat Club Rd., Unit 251, Fort Worth, Texas 76179 in accordance to this Court's *Order Authorizing Substituted Service* issued on July 21, 2015.

EXHIBIT A-1

182.    Defendant **Civil Works, Inc.** is a Texas company with its principal place of business at 12200 Ford Road, #484, Dallas, Texas 75234. Service may be properly effectuated by serving a copy of the Petition with a principal agent at the principal place of business.

183.    Defendant **Hayward Baker, Inc.** is a Texas company with its principal place of business at 661 E. Shahan Prairie Road, Little Elm, Texas 75068. Hayward Baker, Inc. appeared on behalf of Craig Olden, Inc. and notified Plaintiffs that Craig Olden, Inc. was incorrectly named but correctly served. Hayward Baker, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

184.    Defendant **Weir Brothers** is a Texas company with its principal place of business at 10721 Luna Rd., Dallas, Texas 75220. Weir Brothers has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

185.    Defendant **Austin Bridge and Road, L.P.** is a Texas company with its principal place of business at 3535 Travis Street, Suite 300, Dallas, Texas 75204. Austin Bridge and Road, L.P. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

186.    Defendant **Lindamood Demolition, Inc.** is a domestic for profit corporation formed under the laws of the State of Texas. Lindamood Demolition, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Lindamood Demolition, Inc. maintains its principal place of business in Texas. Lindamood

**EXHIBIT A-1**

Demolition, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

187.  Defendant, **CIVILworks Engineering, LP**, is a domestic Limited Partnership (LP) formed under the laws of the State of Texas. CIVILworks Engineering, LP is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. CIVILworks Engineering, LP maintains its principal place of business in Texas. Service of process on this Defendant can be completed by serving its registered agent, Craig Towson, 2110 Fort Worth Highway, Weatherford, Texas 76086.

188.  Defendant, **Weir Brothers Contracting, LLC**, is a domestic Limited Liability Company (LLC) formed under the laws of the State of Texas. Weir Brothers Contracting, LLC is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Weir Brothers Contracting, LLC has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

189.  **Wright Construction Company** was named by Austin Bridge and Road, L.P. as its subcontractor. Defendant Wright Construction Company is a domestic for profit corporation formed under the laws of the State of Texas. Wright Construction Company is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Wright Construction Company has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

IV.

---

**EXHIBIT A-1**

## JURISDICTION AND VENUE

190.    Jurisdiction is proper in the Dallas County pursuant to TEX. GOV. Code 24.007.

191.    Jurisdiction is proper over any and all out of state defendants pursuant to the Texas Long-Arm statute, Tex. Civ. Prac. Rem. Code § 17.001 et seq.

192.    Venue is proper in the Dallas County under TEX. CIV. PRAC. REM. Code § 15.002 because substantially all events giving rise to the causes of action occurred in Dallas County.

193.    Venue is also proper in Dallas County under TEX. CIV. PRAC. REM. Code § 15.011 because the matter concerns real property located in Dallas County.

## V.
## BACKGROUND FACTS

### The LBJ Express Lane Project

194.    This case arises out of the LBJ Managed Lane Project ("LBJ Express Project" or "Project") that was awarded to LBJ Infrastructure Group, LLC, a subsidiary of Ferrovial Agroman, a Spanish international construction conglomerate with several local affiliates.

195.    The Project is a 17-mile stretch of roadway along IH-635 (commonly known as LBJ Freeway) between US-75 and IH-35E with extensions north and south along IH-35E. IH-635 is a primary east/west artery in Dallas, Texas. The Project also includes an 8-mile stretch of highway up to 50 feet below the existing ground level commonly known as the IH-635 Managed Lanes or *TEXpress Lanes*.

EXHIBIT A-1

196.     Although Defendants claim that LBJ Infrastructure Group, LLC won the Project after a so-called rigorous, competitive bidding process, the truth is that only one other group (LBJ Mobility Group) actually bid on the Project and it was awarded to Defendants with a "wink and a nod."

197.     With Trinity itself being a subsidiary of Ferrovial Agroman Texas LLC (itself a subsidiary of Ferrovial), Ferrovial basically owns both the owner and general contractor on the Project. LBJIG entered into a construction contract with Trinity for the Project without going through a competitive bidding process.

198.     The managed lanes of the LBJ Project, also known as the TEXpress lanes, were built as a toll road—not a free highway like I-635—and is expected to generate northwards of **$50 million in *profit every year*** for these private companies that own them, ***not the taxpayers***. The TEXpress Lanes on 635 were built in the middle of the general highway and a portion are located in the LBJ Canyon (which was not a canyon before the Project) beneath the surface level general highway lanes.

199.     Thus, the Ferrovial entities formed a partnership using a series of local subsidiaries and special purpose entities, called the LBJ Development Group, LLC to design, develop, finance, and deliver the project.

200.     It apparently does not matter who gets hurt or injured—as long as the road gets built and the money gets made.

EXHIBIT A-1

201.    Defendant Trinity Infrastructure is a subsidiary and a joint venture with another subsidiary, BDW Construction LLC, to manage and oversee the construction of the Project.

202.    Unlike traditional highway construction projects with TxDOT approved for construction plans and specifications available for the contractor at bid time, LBJIG executed a design-build contract with TxDOT for the Project. This method resulted in the scope of work being undefined at bid time and the final contract value not being known until the completion of the Project.

203.    In addition, the design-build approach to the Project required significant ongoing design modifications and continuous scope changes to work being performed daily in the field. This "design-on-the-fly" method, coupled with the significant pressure from LBJIG and Trinity to complete the Project ahead of schedule, created daily challenges for all parties.

204.    The aggressive schedule implemented by LBJIG and Trinity required subcontractors to place thousands of pieces of equipment and employees to work in many different areas of the Project at the same time. To make it even more challenging, the subcontractors also had to contend with and navigate around 180,000 vehicles per day driving up and down LBJ Freeway, one of the nation's busiest highways.

205.    The contractor agreements between Trinity Infrastructure nowhere specifically require that the Express Lane may be located below the surface.

EXHIBIT A-1

206.   The contractor agreements nowhere require that any of the construction include the use of blasting—in fact, they expressly prohibit the use of explosives.

207.   Trinity and its affiliates retained the remaining Defendants as subcontractors.

208.   Construction on the Project lasted until the end of 2015, but Plaintiffs' damages continue.

**The Destruction of Plaintiffs' Homes, Neighborhood and Peace of Mind**

209.   The Defendants designed long stretches—if not the entirety—of the Project to run below ground and underground. They also designed the access roads and general use lanes to run close to Plaintiffs' neighborhood and homes.

210.   They also designed the LBJ Express Lane—including its new access roads to run right next to Plaintiffs' homes. Whereas there used to be nearly one hundred feet between Plaintiffs' homes and the highway, there is now less than thirty feet.

211.   In order to create the subsurface roads and tunnels, Defendants excavated millions of cubic feet of concrete, clay, and subsurface rock and stone. The removal of this earth and rock caused the adjacent lands to likewise shift, dewater, and otherwise move the foundations of Plaintiffs' homes.

212.   Defendants did not use ordinary care in their excavations because they did not proper utilize shoring technology necessary to prevent the damage to neighboring homes.

213.   Defendants used heavy machinery to crack, crush, blast, pound, and remove in the process of demolition and excavations that caused ungodly, awful noise.

EXHIBIT A-1

214. The explosions, cracking, drilling, pounding, pounding, and removal shake Plaintiffs' homes *literally* to their foundations. This has caused homes to incur massive splits in the walls, ceilings and floors, and for there to be greater movement than ever seen before.

215. Plaintiffs who need repairs cannot afford them. Plaintiffs who need their homes replaced cannot afford that. Nor can any of the Plaintiffs afford to move out for the weeks or even months that it would take to put their homes back together if they could afford the repairs in the first place.

216. Defendants have caused tens of millions of dollars in physical damage to the homes surrounding the highway.

217. What is worse is that all of that blasting, cracking, pounding, drilling, often occurred *overnight!* The concussive force of the excavation causes jarring in the ears and Plaintiffs can physically feel the reverberations. It got to the point where the noise became a form of constant torture.

218. The noise, vibrations and shaking were all foreseeable. In fact, the CDA and other agreements discussed the need for mitigating construction noise.

219. The design plans originally submitted included the use of noise walls. However, the walls that were installed fall *way* short of stopping or abating the incredible din—and resulting sound waves that penetrate the body and ears, and that each homeowner is subject to from the construction and from the traffic that is, for many, merely *feet* away from their homes.

---

EXHIBIT A-1

220.     Furthermore, the "walls" that were put in place not only fail to abate the noise, they actually create new hazards. The space below the wall is wide enough to allow children and small pets to wander on to the highway.

221.     Other parts of the alley ways have become so depressed that water—feet deep—pools when it rains due to the lack of adequate drainage. This creates both physical and health hazards to the community which counts hundreds of small children among its residents.

222.     Plaintiffs moved to this neighborhood after working hard, saving up, all the while looking forward to getting a piece of the American dream for themselves: owning their own home. That has been destroyed.

223.     Thus, Plaintiffs have been essentially robbed of their homes. They have been robbed of their community. They have been robbed of their peace of mind.

224.     Plaintiffs banded together as a neighborhood to try and work something out with Defendants. Defendants conducted their own inspections of Plaintiffs' homes, heard the complaints, *and completely ignored them!*

## VI.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### LOSS OF LATERAL SUPPORT

225.     Defendants have caused the removal or loss of lateral support to Plaintiffs' properties.

EXHIBIT A-1

226.    Each Defendant has engaged in conduct to assist in the excavation of and construction for the LBJ Express Project.

227.    The Plaintiffs' property was and is dependent for support upon the land on which the LBJ Express Project was built and, as a consequence of Defendants' conduct and operations, the Plaintiffs' properties lost that support and sustained the harm described in this Petition.

228.    The conduct made the basis of this complaint was the legal cause of harm to the Plaintiffs' interests in real property.

## SECOND CAUSE OF ACTION
### NUISANCE

229.    Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

230.    Defendants' activities are inherently dangerous and were undertaken intentionally or with reckless indifference to the foreseeable and natural consequences thereof.

231.    Defendants' construction activities created a temporary nuisance that substantially interfered with the use and enjoyment of Plaintiffs' homes by causing an unreasonable discomfort and annoyance to Plaintiffs—as they would for any person of reasonable sensibilities.

232.    Defendants' construction of the highway frontage roads and the noise walls created a permanent nuisance that substantially interferes with the use and enjoyment of

EXHIBIT A-1

Plaintiffs' homes by causing an unreasonable discomfort and annoyance to Plaintiffs—as they would for any person of reasonable sensibilities.

233.    Defendants' activities have caused Plaintiffs' homes to suffer physical damage.

234.    Defendants have negligently caused the removal of lateral support to Plaintiffs' properties which likewise has caused physical damage.

235.    Defendants' activities have caused certain Plaintiffs' homes to require complete reconstruction.

236.    Defendants' activities have caused dangerous conditions to arise for Plaintiffs in their neighborhood.

237.    Defendants' activities have caused physical invasion of dust, light and noise to Plaintiffs' property.

238.    Defendants' activities have caused a diminution in value of Plaintiffs' homes and properties.

239.    Defendants' activities have caused emotional and psychic harm, inconvenience, and fear.

240.    Defendants' activities foreseeably and naturally caused Plaintiffs' injuries.

### THIRD CAUSE OF ACTION
### VIOLATION OF PRIVATE PROPERTY RIGHTS

241.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

EXHIBIT A-1

242.   The Texas Private Real Property Rights Preservation Act guarantees to citizens of Texas that their private property rights will be protected. The Act, §2007.002(5), provides that a "taking" occurs when a governmental action covered by the Act is a producing cause of a 25% or more reduction in the value of private real property affected by the governmental action.

243.   The LBJ Express Lane project is a venture between Trinity and the Texas Department of Transportation.

244.   TxDOT failed to conduct a Takings Impact Assessment as required under the Act when it authorized and contracted for the construction of the LBJ express project.

245.   Under the Act, without the takings assessment, TxDOT's authorizations are void ab initio and, thus, Defendants are liable for all damages.

246.   Plaintiffs have suffered a more than 25% devaluation to their homes due to the activities of the Defendants.

247.   Plaintiffs have suffered physical damage to their homes due to Defendants' activities.

248.   Plaintiffs have lost the private, quiet enjoyment of their homes do to the quaking, light and noise.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE / GROSS NEGLIGENCE

249.   Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

**EXHIBIT A-1**

250.    Defendants owed a legal duty to Plaintiffs to use reasonable care and caution in the selection of the design, manner, location, timing, and means of excavation and construction of the highway, and especially to protect against the movement and shifting of the ground.

251.    Defendants owed a legal duty to Plaintiffs to reasonable care and to relocate plaintiffs or condemn their property.

252.    Defendants owed a legal duty to Plaintiffs not to do loud construction, especially overnight.

253.    Defendants owed a legal duty to Plaintiffs to construct noise wall barriers, and the highway adjacent to them, in a manner that would reasonably reduce the overall increase in noise.

254.    Defendants knowingly or recklessly breached each and every one of these duties.

255.    Defendants conduct caused direct foreseeable physical harm to Plaintiffs' property and economic losses to the value of Plaintiffs' homes, but for which such injuries would not have occurred.

256.    Further, Defendants voluntarily undertook heavy excavation and construction activities that they knew or should have known would result in damage to Plaintiffs' homes.

EXHIBIT A-1

257. Defendants failed to exercise reasonable care in performing such activities and Defendants' negligent performance of those activities caused harm to Plaintiffs and their homes.

258. As such, Defendants are liable under the theory of negligent undertaking / voluntary undertaking. These acts and/or omissions were singularly and/or severally a proximate cause of the occurrences in question and the resulting injuries and/or damages to the Plaintiffs.

259. Moreover, Defendants' conduct constitutes gross negligence. The acts and/or omissions of the Defendants, when viewed objectively from the standpoint of the Defendants at the time of the occurrences, involved an extreme risk, considering the probability, magnitude and potential arm to others; and of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

260. Defendants' conduct constitutes a particularly disturbing event such that the mental anguish sustained by Plaintiffs was highly foreseeable to Defendants.

261. Defendants are liable for economic damages and exemplary damages.

**FIFTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

262. Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

**EXHIBIT A-1**

263. Defendants' actions were intentional and/or were recklessly indifferent to the foreseeable risks and consequences of their actions.

264. Defendants' actions were extreme and outrageous, and in violation of local ordinances and in violation of the agreements with TxDOT.

265. Defendants' conduct constitutes a particularly disturbing event such that the mental anguish sustained by Plaintiffs was highly foreseeable to Defendants.

266. Defendants' actions caused physical vibrations and reverberations in Plaintiffs, including light and sound that affected Plaintiffs' ability to sleep, function, and enjoy their homes in peace and quiet.

267. Defendants' actions have caused Plaintiffs to suffer severe emotional distress and psychic injury.

### SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT

268. Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

269. No contract exists between Defendants and Plaintiffs covering this issue.

270. Defendants' actions have resulted in Defendants expropriating the value of Plaintiffs' property without proper compensation.

271. Defendants have been unjustly enriched to the extent that they have the benefit of receiving the benefit of the activities they have conducted without paying the full price for it, and allowing Plaintiffs to have to bear those costs.

EXHIBIT A-1

272.    It would be unjust to allow Defendants to retain the benefits of their contracts and construction activities, and thus, all such profits—now and in the future—should be disgorged for Plaintiffs' benefit.

273.    Plaintiffs seek recovery for pre-judgment interest at the highest legal rate allowed by law.

## SEVENTH CAUSE OF ACTION
## VICARIOUS LIABILITY

274.    Defendants are legally responsible for the acts and/or omissions of each other's agents, employees, statutory employees, borrowed servants, and representatives under the doctrines of agency (apparent agency, ostensible agency and agency by estoppel), vicarious liability, statutory employment, borrowed servant and *respondeat superior*.

275.    Additionally, Trinity is liable for the conduct of the other subsidiary Defendants under the doctrines of agency, indemnification, vicarious liability, and *respondeat superior*.

## JOINT / SINGLE BUSINESS ENTERPRISE LIABILITY

276.    At all times relevant to this cause of action, Defendants were engaged in a joint enterprise as the parties had: (1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gave an equal right of control.

## JOINT VENTURE LIABILITY

---

**EXHIBIT A-1**

277.    At all times relevant to this cause of action, Defendants were in a joint venture as they had an agreement which included: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an express agreement to share losses; and (4) a mutual right to control or management of the venture.

## ALTER EGO/ PIERCING CORPORATE VEIL

278.    At all times relevant, the Trinity and Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC, Weber LLC, and Cintra US Services LLC (the "Ferrovial Defendants") were the alter egos of each other. Trinity and the Ferrovial Defendants engaged in a sham to perpetrate a fraud on Plaintiffs. Further, the Trinity and Ferrovial Defendants were organized and operated as a mere tool or business conduit of each other in order to evade their legal obligations and create a sham entity. Alternatively, Trinity is undercapitalized on purpose in order to evade legal liability to Plaintiffs.

## VII.
## TOLLING OF STATUTE OF LIMITATIONS

279.    The Trinity and Ferrovial Defendants had actual knowledge of the wrongs they were perpetrating and had a fixed purpose to conceal those wrongs from the Plaintiffs. Additionally, the effects on Plaintiffs' homes were latent and undetected by Plaintiffs despite their diligence.

280.    The Trinity and Ferrovial Defendants voluntarily disclosed partial information to Plaintiffs regarding the excavation and construction activities for the LBJ

EXHIBIT A-1

Express Lane project and the damage those activities would cause to Plaintiffs' properties, but failed to disclose the whole truth.

281. The Trinity and Ferrovial Defendants made a partial disclosure and conveyed a false impression to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties.

282. The Trinity and Ferrovial Defendants convinced Plaintiffs they would pay for the damage to their homes, visited, investigated and inspected Plaintiffs' homes; but, never made the promised payments. Plaintiffs justifiably relied on these representations and did not file suit earlier.

283. The Trinity and Ferrovial Defendants went to great lengths to fraudulently conceal the existence and extent of Plaintiffs' causes of action and the true facts from Plaintiffs in an improper and vile attempt to run out the so-called statute of limitations by advising Plaintiffs that Trinity Infrastructure would fix their homes if they would submit estimates of repair costs and not file a lawsuit from 2013 until mid-2016.

284. As the Trinity and Ferrovial Defendants fraudulently concealed the existence and extent of Plaintiffs' causes of action or the facts essential to Plaintiffs' cause of action, Defendants are estopped from relying upon the defense of limitations until the right of Plaintiffs' action was discovered.

## VIII.
## CONDITIONS PRECEDENT

EXHIBIT A-1

285. All conditions precedent for filing suit have been met.

## IX.
## PRAYER FOR RELIEF

286. Plaintiffs re-allege and incorporate the forgoing allegations as if fully set forth herein.

287. Plaintiffs pray for the following relief:

a. Damages and restitution;

b. Exemplary damages to be determined at trial;

c. Restitution of homes to their pre-injury state;

d. Disgorgement of profits;

e. Injunctive relief;

f. Attorneys' fees and costs;

g. Declaration of rights.

288. Plaintiffs further seek all other legal and equitable relief to which they may be justly entitled and that the Court deems reasonable and just to award Plaintiffs under the facts shown at trial.

## X.
## TRIAL BY JURY

289. Plaintiffs seek trial by jury on all issues triable to a jury.

## XI.
## RULE 47 STATEMENT

**EXHIBIT A-1**

290.    Plaintiffs seek in excess of $1,000,000 in damages, punitive damages, attorneys' fees, and other relief.

## XII.
## REQUEST FOR DISCLOSURES

291.    Plaintiffs hereby request initial disclosures under Rule 194.2 of the Texas Rules of Civil Procedure.

EXHIBIT A-1

Dated: February 15, 2017

Respectfully submitted,

STECKLER GRESHAM COCHRAN PLLC

*/s/ Dean Gresham*
Dean Gresham
Texas Bar No. 24027215
Bruce Steckler
Texas Bar No. 00785039
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
(214) 432-2899
(214) 853-4367
dean@stecklerlaw.com
bruce@stecklerlaw.com

-And-

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti, Esq.**
**SBAITI & COMPANY PLLC**
Texas Bar No. 24058096
5307 Mockingbird Ln.
Fifth Floor
Dallas, TX 75206
Telephone - (214) 432-2899
Facsimile - (214) 853-4367
mas@sbaitilaw.com

***ATTORNEYS FOR THE PALAVICINI***
***PLAINTIFFS***

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in accordance with Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE on all counsel of record on February 15, 2017.

*/s/ Dean Gresham*
DEAN GRESHAM

---

PLAINTIFFS' ELEVENTH AMENDED PETITION

**EXHIBIT A-1**

# EXHIBIT B

## Fourth Amended Petition ("Cazares Petition")

FILED
DALLAS COUNTY
1/14/2016 11:09:15 AM
FELICIA PITRE
DISTRICT CLERK

Cause No. DC-15-03577

| | | |
|---|---|---|
| Maria Cazares, Natalio Cazares, Elvia Carmona, Ramiro Toledo, Ana Toledo-Mejia, Angelica Leon, Marta Perez, Christina Henderson, Michael Christopher Anguiana, William David, Ronelle Henderson, Varughese John, Mallika Radhakrishnan, Radhakrishnan Panicker, Eileen Lynch, Norma Garza, Zachary Gibson, on behalf of the Estate of J.M. Walker, deceased, Armando Serma, Maricela Serma, Miguel Gomez, Raquel Gomez, William Ware, Rebecca Ware, Coterie Homeowners Assn, Robert Wiski, Jean McClelland, Signature Leasing & Management, Inc., Silvia Lizette Berni, Silvia Castanon, Tom Lazo, Mary Lazo, Alycer Johnson, Chris Diamond, Brandy Diamond, Mary Jean Valentine, Anthony Anoos, Angeles Anoos, Darlene Edwards, Frank Edwards, Maria Escorza, Enrique Escorza, Milton Faber, Charlotte Moore, Theodore Hermann, Alejo Sigala, Maria Sigala, Rose Jackson, David Mathews, Freda Patillo, Ignacio Arbelaez, Jr., Kimberly Hill, John Skouloudis, Helen Skouloudis, Leza Mesiah, Helen R. Posey, Evangeline R. Marino, Teena Johnson, Henok Zerom, Rosi John, Susan Sikora, David Sikora, Laraine Schaffer, Roberta Fisher, Arthur Fisher, Andrew Eckman, Jared Madry, Melissa Martin, Christin Johnson, Kenneth Johnson, Aron Arsen, Melissa Arsen, Tina Nabors, Anna Dickerson, Scott Perry, Shannon Perry, Carolyne Prince-Tepera, Diana S. Delgado, Kenneth Montgomery, Suzanne Montgomery, David Loper, Karen Loper, Michael Flavin, Barbara Flavin, Paul T. Even, Michon Fulgham, Dino Stevenson, Frank Walker, Joan Walker, and Virginia Fabela, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | In the District Court<br><br><br><br><br><br>134th Judicial District Court |
| Plaintiffs | § | Dallas County, Texas |
| v. | | |

EXHIBIT
B

EXHIBIT A-1

Trinity Infrastructure LLC, Archer Western          §
Contractors, Craig Olden, Inc., Texas Shafts,       §
Inc., Austin Bridge & Road, Inc, Indus              §
Construction, LP, Mario Sinacola & Sons             §
Excavating, Inc., E W Wells Group LLC,              §
Stomper Demolition Co., Lindamood                   §
Demolition, Inc., Bobby Lindamood                   §
Demolition LLC, CIVILworks Engineering,             §
LP, Weir Brothers Contracting, LLC, Civil           §
Works, Inc., Archer Western Construction,           §
LLC, Hayward Baker, Inc., Renaissance               §
Contractors Partnership, Renaissance                §
Contractors, Inc., Lloyd D. Nabors                  §
Demolition, LLC, Balfour Beatty                     §
Infrastructure, Austin Bridge and Road, L.P.,       §
and Wright Construction Company,                    §
                                                    §
             Defendants                             §

## FOURTH AMENDED PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE COURT:

For their Fourth Amended Petition and Request for Disclosure, Plaintiffs respectfully

state:

### I. LEVEL III CASE

1.    Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs intend to conduct

      discovery under Level Three.

### II. PARTIES

2.    Plaintiffs, Maria Cazares and Natalio Cazares, are individuals residing in Dallas County,

      Texas and own affected real property at 12215 High Meadow Drive, Dallas, Texas 75234.

3.    Plaintiffs, Elvia Carmona and Ramiro Toledo, are individuals residing in Dallas County,

      Texas and own affected real property at 12039 High Meadow Drive, Dallas, Texas 75234.

EXHIBIT A-1

4.   Plaintiff, Ana Toledo-Mejia, is an individual residing in Dallas County, Texas and owns affected real property at 11905 High Meadow Drive, Dallas, Texas 75234.

5.   Plaintiff, Angelica Leon, is an individual residing in Dallas County, Texas and owns affected real property at 3812 Ridgeoak Way, Farmers Branch, Texas 75244.

6.   Plaintiff, Marta Perez, is an individual residing in Dallas County, Texas and owns affected real property at 12027 High Meadow, Dallas, Texas 75234.

7.   Plaintiff, Christina Henderson, is an individual residing in Dallas County, Texas and owns affected real property at 3562 Ridgeoak Way, Farmers Branch, Texas 75234.

8.   Plaintiff, Michael Christopher Anguiana, is an individual residing in Dallas County, Texas and owns affected real property at 3711 Ridgeoak Way, Dallas, Texas 75244.

9.   Plaintiffs, William David and Ronelle Henderson, are individuals residing in Dallas County, Texas and own affected real property at 3730 Ridgeoak Way, Dallas, Texas 75244.

10.   Plaintiffs, Varughese John, Mallika Radhakrishnan, and Radhakrishnan Panicker are individuals residing in Texas and own affected commercial real property at 2920 Forest Lane, Dallas, Texas 75234.

11.   Plaintiff, Eileen Lynch, is an individual residing in Dallas County, Texas and owns affected real property at 3512 Morningstar Lane, Dallas, Texas 75234.

12.   Plaintiff, Norma Garza, is an individual residing in Dallas County, Texas and owns affected real property at 3104 Myra Lane, Farmers Branch, Texas 75234.

13.   Plaintiff, Zachary Gibson, on behalf of the Estate of J.M. Walker, deceased, is an individual residing in Dallas County, Texas and brings the claim on behalf of the Estate

EXHIBIT A-1

for the affected real properties at 3721 Ridgeoak Way, Farmers Branch Texas 75244 and 3517 Morningstar Lane, Farmers Branch, Texas 75234.

14. Plaintiffs, Armando Serma and Maricela Serma are individuals residing in Dallas County, Texas and own affected real estate at 3111 Myra Lane, Farmers Branch, Texas 75234.

15. Plaintiffs, Miguel Gomez and Raquel Gomez are individuals residing in Dallas County, Texas and own affected real estate at 3105 Myra Lane, Farmers Branch, Texas 75234.

16. Plaintiffs, William and Rebecca Ware are individuals residing in Dallas County, Texas and own affected real estate at 12626 Gaslite Circle, Farmers Branch, TX 75234.

17. Plaintiff, Coterie Homeowners Assn, 6123 Twin Oaks Cir., Dallas, Texas 75240-5343, is an homeowners association owning affected property bordering Interstate 635 at Hughes Lane in Dallas County, between Preston Road and Hillcrest Road.

18. Plaintiff, Robert Wiski, is an individual residing in Dallas County, Texas and owns affected real estate at 3530 Morningstar Lane, Farmers Branch, Texas 75234.

19. Plaintiff, Jean McClelland, is an individual residing in Dallas County, Texas and owns affected real estate at 4305 Thunder Road, Dallas, Texas 75380.

20. Plaintiff, Signature Leasing & Management, Inc. owns affected real estate at 12275 High Meadow, Dallas, Texas.

21. Plaintiffs, Silvia Lizette Berni and Silvia Castanon, are individuals residing in Dallas County, Texas and own affected real estate at 3568 Cloverdale Ln, Farmers Branch, TX 75234.

22. Plaintiffs, Tom and Mary Lazo, are individuals residing in Dallas County, Texas and own affected real estate at 4818 Mill Run Rd., Dallas, Texas 75244.

EXHIBIT A-1

23.   Plaintiff, Alycer Johnson, is an individual residing in Dallas County, Texas and owns affected real estate at 12910 Mitchwin Road, Farmers Branch, Texas 75234.

24.   Plaintiffs, Chris and Brandy Diamond, are individuals residing in Dallas County, Texas and own affected real estate at 3707 Ridgeoak Way, Dallas, Texas.

25.   Plaintiff, Mary Jean Valentine, is an individual residing in Dallas County, Texas and owns affected real estate at 6739 Northcreek Lane, Dallas, Texas 75240.

26.   Plaintiffs, Anthony and Angeles Anoos, are individuals residing in Dallas County, Texas and own affected real estate at 12023 High Meadow Dr., Dallas, Texas 75234.

27.   Plaintiffs, Darlene and Frank Edwards, are individuals residing in Dallas County, Texas and own affected real estate at 12271 High Meadow Dr., Dallas, Texas 75234.

28.   Plaintiffs, Maria and Enrique Escorza, are individuals residing in Dallas County, Texas and own affected real estate at 12243 High Meadow Dr., Dallas, Texas 75234.

29.   Plaintiff, Milton Faber, is an individual residing in Dallas County, Texas and owns affected real estate at 3420 Morningstar Lane, Farmers Branch, Texas 75234.

30.   Plaintiffs, Charlotte Moore and Theodore Hermann, are individuals residing in Dallas County, Texas and own affected real estate at 6735 Northcreek Lane, Dallas, Texas 75240.

31.   Plaintiffs, Alejo and Maria Sigala, are individuals residing in Dallas County, Texas and own affected real estate at 12317 Cedar bend Drive, Dallas, Texas 75244.

32.   Plaintiffs, Rose Jackson and David Mathews, are individuals residing in Dallas County, Texas and own affected real estate at 12303 High Meadow Dr., Dallas, Texas 75234.

33.   Plaintiff, Freda Patillo is an individual residing in Dallas County, Texas and owns

EXHIBIT A-1

affected real estate at 6749 Northcreek Lane, Dallas, Texas.

34.   Plaintiff, Ignacio Arbelaez Jr., is an individual residing in Dallas County, Texas and owns

affected real estate at 6723 Northcreek Ln, Dallas, Texas 75240.

35.   Plaintiff, Kimberly Hill, is an individual residing in Dallas County, Texas and owns

affected real estate at 4425 Thunder Road, Dallas, Texas 75244.

36.   Plaintiffs, John and Helen Skouloudis, are individuals residing in Dallas County, Texas

and own affected real estate at 4939 and 4941 Thunder Road, Dallas, Texas 75244.

37.   Plaintiff, Leza Mesiah, is an individual residing in Dallas County, Texas and owns

affected real estate at 12325 Cedar Bend Drive, Dallas, Texas 75244.

38.   Plaintiff, Helen R. Posey, is an individual residing in Dallas County, Texas and owns

affected real estate at 12025 High Valley Drive, Dallas, Texas 75234.

39.   Plaintiff, Evangeline R. Marino is an individual residing in Dallas County, Texas and

owns affected real estate at 6133 Twin Oaks Circle, Dallas, Texas 75240.

40.   Plaintiff, Teena Johnson, is an individual residing in Dallas County, Texas and owns

affected real estate at 4817 Thunder Road, Dallas, Texas.

41.   Plaintiff, Henok Zerom, is an individual residing in Dallas County, Texas and owns

affected real estate at 4991 Thunder Road, Dallas, Texas 75244.

42.   Plaintiff, Rosi John, is an individual residing in Dallas County, Texas and owns affected

real estate at 6207 LBJ Frwy, Dallas, Texas 75240.

43.   Plaintiffs, Susan and David Sikora, are individuals residing in Dallas County, Texas and

own affected real estate at 6222 Twin Oaks Circle, Dallas, Texas 75240.

44.   Plaintiff, Laraine Schaffer, is an individual residing in Dallas County, Texas and owns

EXHIBIT A-1

affected real estate at 12009 High Meadow Dr., Dallas, TX 75234.

45. Plaintiffs Roberta and Arthur Fisher, are individuals residing in Dallas County, Texas and own affected real estate at 6103 Twin Oaks Circle, Dallas, Texas 75240.

46. Plaintiff, Andrew Eckman, is an individual residing in Dallas County, Texas and owns affected real estate at 4456 Thunder Road, Dallas, Texas 75244.

47. Plaintiff, Jared Madry, is an individual residing in Dallas County, Texas and owns affected real estate at 4727 Thunder Road, Dallas, Texas 75244.

48. Plaintiff, Melissa Martin, is an individual residing in Dallas County, Texas and owns affected real estate at 4837 Thunder Road, Dallas, Texas 75244.

49. Plaintiffs, Christin and Kenneth Johnson, are individuals residing in Dallas County, Texas and own affected real estate at 4829 Thunder Road, Dallas, Texas 75244.

50. Plaintiffs, Aron and Melissa Arsen, are individuals residing in Dallas County, Texas and own affected real estate at 12321 Cedar Bend Dr., Dallas, Texas 75244.

51. Plaintiffs, Tina Nabors and Anna Dickerson, are individuals residing in Dallas County, Texas and own affected real estate at 12050 High Meadow Ct., Dallas, Texas 75234.

52. Plaintiffs, Scott and Shannon Perry, are individuals residing in Dallas County, Texas and own affected real estate at 3947 Ridgeoak Way, Dallas, Texas 75244.

53. Plaintiff, Carolyne Prince-Tepera, is an individual residing in Dallas County, Texas and owns affected real estate at 4426 Forest Bend, Dallas, Texas 75244.

54. Plaintiff, Diana S. Delgado, is an individual residing in Dallas County, Texas and owns affected real estate at 3311 High Brook Drive, Dallas, Texas 75234.

55. Plaintiffs, Kenneth and Suzanne Montgomery, are individuals residing in Dallas County,

EXHIBIT A-1

Texas and own affected real estate at 4023 High Summit Drive, Dallas, Texas 75244.

56. Plaintiffs, David and Karen Loper, are individuals residing in Dallas County, Texas and own affected real estate at 12115 High Meadow Drive, Dallas, Texas 75234.

57. Plaintiffs, Michael and Barbara Flavin, are individuals residing in Dallas County, Texas and own affected real estate at 12417 Cedar Bend Drive, Dallas, Texas 75234.

58. Plaintiff, Paul T. Even, is an individual residing in Dallas County, Texas and owns affected real estate at 3726 Ridgeoak Way, Dallas, Texas 75244.

59. Plaintiff, Michon Fulgham, is an individual residing in Dallas County, Texas and owns affected real estate at 5029 Thunder Road, Dallas, Texas 75244.

60. Plaintiff, Dino Stevenson, is an individual residing in Dallas County, Texas and owns affected real estate at 6545 LBJ Freeway, Dallas, Texas 75240.

61. Plaintiffs, Frank and Joan Walker, are individuals residing in Dallas County, Texas and own affected real estate at 3000 Primrose Lane, Farmers Branch, Texas 75234.

62. Plaintiff, Virginia Fabela, is an individual residing in Dallas County, Texas and owns affected real estate at 12228 High Meadow Drive, Dallas, Texas 75234.

63. Defendant, Trinity Infrastructure LLC is a domestic Limited Liability Company (LLC) formed under the laws of the State of Texas. Trinity Infrastructure LLC is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Trinity Infrastructure LLC maintains its principal place of business in Texas. Service of process on this Defendant can be completed by serving its registered agent, Mario Menendez, 9303 New Trails Drive, Suite 200, The Woodlands, TX 77381.

64. Defendant, Archer Western Contractors, LLC, is a foreign limited liability company

EXHIBIT A-1

(LLC), formed under the laws of the State of Delaware. Archer Western Contractors, LLC is and was at all relevant times doing business in the State of Texas and Dallas County, Texas. Service of process on this Defendant was completed by serving its registered agent, Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

65.    Defendant, Archer Western Construction, LLC is a foreign limited liability company (LLC), formed under the laws of the State of Illinois. Archer Western Construction, LLC is and was at all relevant times doing business in the State of Texas and Dallas County, Texas. Service of process on this Defendant was completed by serving its registered agent, Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

66.    Defendant, Craig Olden, Inc., is a domestic for profit corporation formed under the laws of the State of Texas. Craig Olden, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Craig Olden, Inc. maintains its principal place of business in Texas. Service of process on this Defendant was completed by serving its registered agent, C T Corporation System 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

67.    Defendant, Texas Shafts, Inc., is a domestic for profit corporation formed under the laws of the State of Texas. Texas Shafts, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Texas Shafts, Inc. maintains its principal place of business in Texas. Service of process on this Defendant was completed by serving its registered agent, To Savage, 11720 Hicks Avondale School

EXHIBIT A-1

Road, Haslet, TX 76052.

68.    Defendant Austin Bridge & Road, Inc. is a Delaware corporation registered to do and is

doing business in Texas and with its principal place of business located at 630 Commerce

Dr., Suite 150, Irving, Texas 75063.  Defendant Austin Bridge & Road was served with

process and a copy of this Petition to its registered agent in the State of Texas:

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211

E. 7th Street, Suite 620, Austin, Texas 78701.

69.    Defendant Indus Construction, LP is a Texas limited partnership with its principal place

of business at 6060 Brooklet Dr., Suite A, Houston, Texas 77017.  Service of process on

this Defendant was completed by serving its registered agent, Ghulam M. Memon, 6060

Brookglen Dr, Ste A, Houston, TX 77017.

70.    Defendant, Mario Sinacola & Sons Excavating, Inc., is a foreign for-profit corporation

formed under the laws of the State of Michigan.  Mario Sinacola & Sons Excavating, Inc.

is and was at all relevant times doing business in the State of Texas and Dallas County,

Texas.  Service of process was completed on this Defendant by serving its registered

agent, James M Sinacola, 10950A Research Road, P.O. Box 2329, Frisco, TX 75034.

71.    Defendant, E W Wells Group LLC, is a domestic Limited Liability Company (LLC)

formed under the laws of the State of Texas.  E W Wells Group LLC is and was at all

relevant times a resident of and doing business in the State of Texas and Dallas County,

Texas.  E W Wells Group LLC  maintains its principal place of business in Texas.

Service of process on this Defendant was completed by serving its registered agent, Mark

Williams, 3100 Main Street, Suite 45, Dallas, TX 75226.

EXHIBIT A-1

72.  Defendant, Stomper Demolition Co., is a domestic for profit corporation formed under the laws of the State of Texas. Stomper Demolition Co. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Stomper Demolition Co. maintains its principal place of business in Texas. Service of process on this Defendant can be completed by serving its registered agent, Patrick G. Todd at 9487 Boat Club Road, Unit 251, Ft. Worth, TX 76179.

73.  Defendant, Lindamood Demolition, Inc., is a domestic for profit corporation formed under the laws of the State of Texas. Lindamood Demolition, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Lindamood Demolition, Inc. maintains its principal place of business in Texas. Service of process on this Defendant was completed by serving its registered agent, Kayla Lindamood, 2020 S. Nursery, Irving, TX 75060.

74.  Defendant, Bobby Lindamood Demolition LLC, is a domestic Limited Liability Company (LLC) formed under the laws of the State of Texas. Bobby Lindamood Demolition LLC is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Bobby Lindamood Demolition LLC maintains its principal place of business in Texas. Service of process on this Defendant was completed by serving its registered agent, Kayla Lindamood, 2020 S. Nursery, Irving, TX 75060.

75.  Defendant, CIVILworks Engineering, LP, is a domestic Limited Partnership (LP) formed under the laws of the State of Texas. CIVILworks Engineering, LP is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. CIVILworks Engineering, LP maintains its principal place of business in Texas.

EXHIBIT A-1

Service of process on this Defendant can be completed by serving its registered agent, Craig Towson, 2110 Fort Worth Highway, Weatherford, TX 76086.

76.   Defendant, Weir Brothers Contracting, LLC, is a domestic Limited Liability Company (LLC) formed under the laws of the State of Texas.   Weir Brothers Contracting, LLC is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas.   Weir Brothers Contracting, LLC maintains its principal place of business in Texas.   Service of process on this Defendant was completed by serving its registered agent, Mitchell Madden, 13800 Montfort Dr., Suite 160, Dallas, TX 7524.

77.   Defendant Civil Works, Inc. is a Texas company with its principal place of business at 12200 Ford Road, #484, Dallas, Texas 75234.   Service may be properly effectuated by serving a copy of the Petition with a principal agent at the principal place of business.

78.   Defendant Hayward Baker, Inc. is a Delaware corporation registered to do and is doing business in Texas.   Defendant Hayward Baker, Inc. was served with process and entered its appearance.

79.   Defendant Renaissance Contractors Partnership is a partnership with its principal place of business at 3575 Lone Star Circle, Suite 418, Justin, Texas 76247.   It may be served a copy of this petition by serving a principal agent at its principal place of business.

80.   Defendant Renaissance Contractors, Inc. is a Texas corporation with its principal place of business at 3575 Lone Star Circle, Suite 418, Justin, Texas 76247.   It may be served a copy of this petition by serving a principal agent at its principal place of business.

81.   Lloyd D. Nabors Demolition, LLC, was named a responsible third party by Weir Brothers Contracting, LLC and is hereby named a party-defendant.   Defendant Lloyd D. Nabors

EXHIBIT A-1

Demolition, LLC is a domestic Limited Liability Company (LLC) formed under the laws of the State of Texas. Lloyd D. Nabors Demolition, LLC is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Lloyd D. Nabors Demolition, LLC maintains its principal place of business in Texas. Service of process on this Defendant can be completed by serving its registered agent, Lloyd D. Nabors, 1718 Dowdy Ferry Road, Hutchins, TX 75141.

82.  Balfour Beatty Infrastructure was named a responsible third party by Weir Brothers Contracting, LLC and is hereby named a party-defendant. Defendant Balfour Beatty Infrastructure is a Foreign Limited Liability Company (LLC) formed under Delaware law but registered to do and is doing business in Texas and with its principal place of business in Dallas, Texas. Defendant Balfour Beatty Infrastructure may be served with process by serving a principal agent at its principal place of business or by serving its registered agent in the State of Texas: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

83.  Defendant Austin Bridge and Road, L.P. is a Foreign Limited Partnership formed under Delaware law but registered to do and is doing business in Texas and with its principal place of business in Dallas, Texas. Defendant Austin Bridge and Road, L.P. may be served with process by serving its registered agent in the State of Texas: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

84.  Wright Construction Company was named by Austin Bridge and Road, L.P. as its subcontractor. Defendant Wright Construction Company is a domestic for profit

EXHIBIT A-1

corporation formed under the laws of the State of Texas. Wright Construction Company

is and was at all relevant times a resident of and doing business in the State of Texas and

Dallas County, Texas. Wright Construction Company maintains its principal place of

business in Texas. Service of process on this Defendant can be completed by serving its

registered agent, Lemoine Wright 601 W. Wall St., Grapevine, TX 76051.

## VENUE AND JURISDICTION

85.   Venue in Dallas County is mandatory pursuant to §15.011 of the Texas Civil Practice &

Remedies Code because this action seeks to recover damages to real property in Dallas

County.

86.   Venue is also proper in Dallas County under §15.002(a)(1) of the Texas Civil Practice &

Remedies Code because Dallas County is the county in which all or a substantial part of

the events or omissions giving rise to the claim occurred.

87.   This Court has jurisdiction over this lawsuit because the damages sought are within the

jurisdictional limits of the court.

88.   Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs state that as a group

they seek monetary damages over $1,000,000.

89.   Some Plaintiffs' damages are less than $75,000 and those damages do not satisfy the

$75,000 amount in controversy requirement of Federal Courts under 28 U.S.C. §

1332(d)(11)(B)(i).

## SHORT STATEMENT OF THE CASE AND CAUSES OF ACTION

90.   The LBJ Express is a massive, multi-faceted construction project involving Interstate 635

in Dallas County, featuring a multi-level highway system, including several miles of

EXHIBIT A-1

newly constructed, depressed, sub-surface or below grade lanes bordering Plaintiffs'

neighborhood of homes and businesses. The Plaintiffs have endured loss of use and

enjoyment of their properties, nuisance, trespass, loss of market value, loss of lateral

support, and destruction to their homes and businesses from Defendants' construction

activities. Defendants' deep excavation has affected the drainage and soil that supports

Plaintiffs' structures. Defendants' construction and excavation activities induced ground

vibrations that dangerously vibrated the Plaintiffs' real property structures and contents.

Defendants' construction activities such as pile driving, boring, blasting, heavy traffic

loads, deep excavation, and/or dewatering produced differential soil settlement and strong

levels of vibration which caused damage to the Plaintiffs' structures and improvements –

in addition to the loss of lateral support from deep excavation through the area and

bordering many of the Plaintiffs' homes.

### CAUSES OF ACTION

91.    **LOSS OF LATERAL SUPPORT** is a cause of action recognized in Texas based on a

longstanding tradition of English common law. *See Williams v. Thompson*, 152 Tex. 270,

256 S.W.2d 399, 405 (Tex. 1953); *B.A. Mortgage Company v. McCullough*, 590 S.W.2d

955, 957 (Tex. Civ. App. – Fort Worth 1979, no writ). More than a century ago, the

Austin Court of Civil Appeals provided an excellent summary of the cause of action, in

*Simon v. Nance*, 100 S.W. 1038, 1040 (Tex. Civ. App. – Austin 1907, no writ). *See*

*Carpentier v. Ellis,* 489 S.W.2d 388, 389 (Tex. Civ. App. – Beaumont 1972, writ ref'd

n.r.e.); *Salazar v. Sanders,* No. 08-11-00335-CV (Tex. App. – El Paso 2013). *Simon* ,

which has withstood the test of time, states:

EXHIBIT A-1

> By the weight of authority it is a well settled rule of the common law that an owner of land has an absolute right to the lateral support of adjoining land. In other words, he has the right to have his land remain as it was in a state of nature, and neither the adjoining landowner, nor any one else, can rightfully remove from the boundaries of the land the supports which hold it in its natural position. Therefore, if the adjoining proprietor constructs a ditch or other excavation in such a manner as causes the soil of the complainant to cave in, slough off, or wash away, such adjoining proprietor is liable for damages, and, in a proper case, may be restrained by injunction. The right of lateral support of the soil is absolute, and does not depend upon the question of due care or negligence. However, this absolute right is limited to the soil itself, and does not apply to buildings or other structures which have been placed upon the land. When it is sought to recover damages to improvements which have been placed upon the land, then, as a general rule, the question of negligence becomes an important factor.

*Id.*

92. Plaintiffs' cause of action for loss of lateral support is brought under theories of strict liability for the soils' loss of lateral support as result of Defendants' defective deep excavation. In that regard, the Defendants are strictly liable for the losses and damages caused by their activities – even if they exercised the utmost care to prevent the harm. The Defendants' strict liability for loss of lateral support is a proximate and producing cause of Plaintiffs' damages, for which Defendants are jointly and severally liable. Defendants are further liable for loss of lateral support under negligence theories for their negligent and unworkmanlike construction practices.

93. **NEGLIGENCE.** Defendants owe a duty to protect Plaintiffs from unreasonable risks of construction activities. To reduce the risk of vibration damage, Defendants should have maintained vibration levels below damage thresholds established by sound engineering and/or building principles, building departments and/or technical or industry standards.

**EXHIBIT A-1**

Defendants failed to provide reasonable and adequate underpinning of adjacent

foundations to prevent damage from excavations or dewatering.  Defendants failed to

reasonably and adequately design and assess the neighboring site characterization

bordering Plaintiffs' properties and improvements, Defendants failed in the design of

their excavation support systems and excavation installation and implementation.

94.     Given the risks of construction vibrations and adjoining deep excavation, the forseeability

of harm, and the likelihood of injury to real property, along with Defendants' superior

knowledge of the risk of their activities neighboring the Plaintiffs' property, created a

duty for Defendants to act in a reasonable and prudent manner.  As a direct and proximate

cause of the Defendants' breach of their duty to act in a reasonable and prudent manner

especially in light of their superior knowledge of the construction risks to the surrounding

properties, Plaintiffs have been damaged in an amount within the jurisdictional limits of

this court.

95.     **NEGLIGENT UNDERTAKING.**  Defendants undertook duties to properly construct

The LBJ Express in an urban environment and they negligently performed that duty,

despite their duty to exercise reasonable care in the performance of their obligations.

96.     **BREACH OF CONTRACT.**  Defendants were contractually bound to perform their

construction activities in a safe and workmanlike manner and to avoid the claims raised

herein.  Defendants failed to perform their contractual obligations with the care, skill, and

diligence required thereby breaching its contract.  Certain provisions of the contracts

Defendants entered into were for the benefit of third-parties, such as Plaintiffs.  Yet, as

stated herein, Defendants failed to perform their contracts with the care, skill, and

**EXHIBIT A-1**

diligence required thereby breaching its contract which caused damages to the Plaintiffs. Accordingly, Plaintiffs are entitled to recover attorney's fees as third-party beneficiaries.

97.   **NUISANCE.** Defendants created a nuisance substantially interfering with the use and enjoyment of Plaintiffs' land and caused unreasonable discomfort or annoyance in the use and enjoyment of the land. Defendants caused the diversion of excessive amounts of dust from inadequate dust control mechanisms, vibration, and the shining of stadium lighting into Plaintiffs' homes during many nights. Plaintiffs have property rights and privileges with respect to the use and enjoyment of their land. Defendants' conduct interfered with the Plaintiffs' enjoyment of their real property and its improvements. The nuisance caused damages in an amount within the jurisdictional limits of this court.

98.   **TRESPASS.** Defendants' construction activities caused non-consensual trespasses to occur. Plaintiffs owned or had the lawful right to possess their real property. The Defendants caused unwelcome physical, intentional, and voluntary entry upon Plaintiffs' real property. Such trespass caused injuries.

99.   **WATER CODE VIOLATIONS.** Defendants are liable under §11.086(b) of the Texas Water Code, which states, in relevant part:

   a.   No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

   b.   A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

100.   The Defendants' diversion of water allows Plaintiffs to collect damages resulting therefrom for violation of §11.086 when (1) a diversion or impoundment of surface

EXHIBIT A-1

water, (2) causes (3) damage to the property of the plaintiff landowner. *Deitrich v. Goodman,* 123 S.W.3d 413, 417 (Tex. App. – Houston [14th Dist.] 2003, no pet.).

101. **VIOLATION OF PRIVATE PROPERTY RIGHTS.** The Texas Private Real Property Rights Preservation Act guarantees to citizens of Texas that their private property rights will be protected. The Act, §2007.002(5), provides that a "taking" occurs when a governmental action covered by the Act is a producing cause of a 25% or more reduction in the value of private real property affected by the governmental action. The LBJ Express Lane project is a private/public venture between the Ferrovial and Trinity Defendants and the Texas Department of Transportation. ("TxDOT"). TxDOT failed to conduct a Takings Impact Assessment as required under the Act when it authorized and contracted for the construction of the LBJ Express project. Under the Act, without the takings assessment, TxDOT's authorizations are void ab initio and, thus, Defendants are liable for all damages. Plaintiffs have suffered a more than 25% devaluation to their homes due to the activities of the Defendants. Plaintiffs have suffered physical damage to their homes due to Defendants' activities.

102. **EMOTIONAL DISTRESS.** Defendants' actions were intentional and/or were recklessly indifferent to the foreseeable risks and consequences of their actions. Defendants' actions were extreme and outrageous, and in violation of local ordinances and in violation of the agreements with TxDOT. Defendants' actions have caused Plaintiffs to suffer severe emotional distress and psychic injury which has manifest itself into personal injury.

103. **UNJUST ENRICHMENT.** Defendants' actions have resulted in Defendants

EXHIBIT A-1

expropriating the value of Plaintiffs' property without proper compensation. Defendants have been unjustly enriched to the extent that they have the benefit of receiving the benefit of the activities they conducted without paying the full price for it, and allowing Plaintiffs to bear those costs. It is unjust to allow Defendants to retain the benefits of their contracts and construction activities. Accordingly, all such profits – now and in the future – should be disgorged for Plaintiffs' benefit.

104.   **VICARIOUS LIABILITY.** Defendants are legally responsible for the acts and/or omissions of each other's agents, employees, statutory employees, borrowed servants, and representatives under the doctrines of agency (apparent agency, ostensible agency and agency by estoppel), vicarious liability, statutory employment, borrowed servant and respondeat superior.

105.   **JOINT ENTERPRISE LIABILITY.** At all times relevant to this cause of action, Defendants were engaged in a joint enterprise as the parties had: (1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gave an equal right of control.

106.   **JOINT VENTURE LIABILITY.** At all times relevant to this cause of action, Defendants were in a joint venture as they had an agreement which included: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an express agreement to share losses; and (4) a mutual right to control or management of the venture.

107.   **GROSS NEGLIGENCE.** Defendants were aware of the risk of harm from their activities. Although aware of the risk of harm, they acted with conscious indifference to

EXHIBIT A-1

that risk.  As a direct and proximate cause of their actions, they are liable to Plaintiffs for punitive damages and Plaintiffs seek such damages against Defendants.

108.  **FRAUDULENT CONCEALMENT.**  Defendants had actual knowledge of the wrongs they were perpetrating and had a fixed purpose to conceal those wrongs from the Plaintiffs.  Defendants voluntarily disclosed partial information to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties, but failed to disclose the whole truth.  Defendants made representations to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties, but failed to disclose new information that made those earlier representations misleading or untrue.  Defendants made a partial disclosure and conveyed a false impression to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties.  As Defendants fraudulently concealed the existence and extent of Plaintiffs' causes of action or the facts essential to Plaintiffs' cause of action, Defendants are estopped from relying upon the defense of limitations until the right of Plaintiffs' action was discovered.

## JURY DEMAND

109.  Plaintiffs request a jury trial on all matters in dispute and the appropriate fee was tendered prior to trial.

## CONDITIONS PRECEDENT

110.  All conditions precedent to Plaintiffs' claim for relief have been performed, have

EXHIBIT A-1

occurred, or have been waived.

## REQUEST FOR DISCLOSURE

111.   Pursuant to Rule 194, Texas Rules of Civil Procedure, Defendants herein are requested to

disclose , within fifty (50) days of service of this request, at THE COWAN LAW FIRM, One

Meadows Building; 5005 Greenville Avenue, Suite 200; Dallas, Texas 75206,

214-826-1900, the information or material described in Rule 194.2.

## PRAYER

112.   For these reasons, Plaintiffs ask that Defendants be cited to appear and answer and, on

final trial, that Plaintiffs be awarded a judgment against Defendants for the following:

   a.   Plaintiffs' actual damages, including but not limited to permanent and/or

temporary injuries, cost of repair, restoration, or fair market value of their

personal and/or real property and/or improvements, difference in the value of their

property before and after injury, loss of market value, diminution in value of their

real estate, cost of restoration, loss of improvements, loss to vegetation, nuisance

damages, trespass damages, loss of use and enjoyment of their property, damages

for emotional distress, disgorgement of profits, and stigma damages.

   b.   Plaintiffs' past damages, including but not limited to permanent and/or temporary

injuries, cost of repair, restoration, or fair market value of their personal and/or

real property and/or improvements, difference in the value of their property before

and after injury, loss of market value, diminution in value of their real estate, cost

of restoration, loss of improvements, loss to vegetation, nuisance damages,

trespass damages, loss of use and enjoyment of their property, damages for

EXHIBIT A-1

emotional distress, disgorgement of profits, and stigma damages.

c.  Future damages in reasonable probability, Plaintiffs will incur in the future, including but not limited to permanent and/or temporary injuries, cost of repair, restoration, or fair market value of their personal and/or real property and/or improvements, difference in the value of their property before and after injury, loss of market value, diminution in value of their real estate, cost of restoration, loss of improvements, loss to vegetation, nuisance damages, trespass damages, loss of use and enjoyment of their property, damages for emotional distress, disgorgement of profits, and stigma damages.

d.  Attorneys' fees as third-party contract beneficiaries, including but not limited to, for the trial and any appeals;

e.  Exemplary damages;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  Court costs, including but not limited to, for the trial and any appeals; and

h.  Recovery of such other relief, at law or in equity, general or special, to which Plaintiffs may show themselves justly entitled.

EXHIBIT A-1

Respectfully submitted,

THE COWAN LAW FIRM

*s/ R. Chris Cowan*

R. Christopher Cowan
Texas Bar No. 00787294
One Meadows Building
5005 Greenville Avenue, Suite 200
Dallas, Texas 75206
214/826-1900
214/826-8900 Fax
chris@cowanlaw.net

Adesola Adeyemi
Texas Bar No.
ADEYEMI LAW FIRM, PLLC
777 S. Central Expressway, Suite 7-L
Richardson, Texas 75080
214/854-0851
214/594-9800 Fax
adeyemilawfirm@gmail.com

and

Patrick W. Pendley (LA Bar #14021)
PENDLEY, BAUDIN & COFFIN, L.L.P.
Post Office Drawer 71
Plaquemine, Louisiana 70765
225/687-6396
225/687-6398 Fax
pwpendley@pbclawfirm.com

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that a true and correct copy of the foregoing document was electronically served and that the electronic transmission was reported complete this Thursday, January 14, 2016.

*s/ R. Chris Cowan*

R. Christopher Cowan

EXHIBIT A-1

# EXHIBIT C

# Plaintiffs Felipe and Aurora Rodriquez's Trial Petition ("Rodriguez Petition")

CAUSE NO. DC-15-03577

| | | |
|---|---|---|
| MARIA CAZARES, ET AL. | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| TRINITY INFRASTRUCTURE, LLC, ET AL | § | 134th JUDICIAL DISTRICT |

---

### PLAINTIFFS FELIPE AND AURORA RODRIGUEZ'S TRIAL PETITION

---

TO THE HONORABLE JUDGE TILLERY:

Felipe and Aurora Rodriguez (hereinafter referred to as "Plaintiffs") complain of Trinity Infrastructure LLC, Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC, Texas Shafts, Inc., Mario Sinacola & Sons Excavating, Inc., and Hayward Baker, Inc. (hereinafter referred to collectively as "Defendants") and would respectfully show unto the Honorable Court the following:

## I.
## SUMMARY OF THE ACTION

This is an action brought by over two hundred homeowners, including Plaintiffs, who live next to the LBJ Express Project in Dallas and Farmers Branch, Texas against the companies that are projected to receive over $84 Billion in revenue from tolls paid by Dallas County residents. Plaintiffs Felipe and Aurora Rodriguez have had to endure what nobody should have to endure: the progressive and systematic destruction of their homes while Defendants excavated, pounded, crushed, blasted, drilled and demolished whilst constructing the new LBJ Express Project that runs between I-35 and Highway 75. *Plaintiffs' homes are literally coming apart at the seams; and so are their lives as a result of Defendants' wrongful conduct.*



EXHIBIT
C

---

EXHIBIT A-1

The resulting psychic injury, the stress, the loss of productivity, the anxieties, and the palpable sense of fear are more than any group of people should be asked to endure. Theirs is a cost that must be internalized by Defendants *before* Defendants realize the astronomical riches that they have secured for themselves at Plaintiffs' collective cost.

Defendant Trinity Infrastructure LLC, the general construction contractor, is not coincidentally a subsidiary of Ferrovial, a Spanish company that was awarded the contract to collect the tolls on the new LBJ Express Lane: for an expected $52 million in profit *every year*! Despite these prospective riches, Defendants ignore the physical damage and pain and suffering they are causing.

Plaintiffs are guilty of nothing more than realizing the American dream. They worked, scrimped, saved, and scraped to buy their homes. To raise their families in a good neighborhood. Which is what they strove to do. They are being *punished* for dreaming a little bigger. That is why this Court must restore order and justice to Plaintiffs' lives. They *earned* it.

## II.
## DISCOVERY LEVEL III

1.      This case should proceed under Level III discovery under Rule 190 of the Texas Rules of Civil Procedure. Plaintiffs request that the court enter a discovery control plan within thirty (30) days of the last served Defendant's Answer due date to this Petition.

## III.
## THE PARTIES

2.      Plaintiffs Felipe and Aurora Rodriguez are individuals and residents of Dallas County, Texas.

3.      Defendant **Trinity Infrastructure LLC** is a Texas limited liability company with its principal place of business located at 9303 New Trails Drive, Suite 200, The Woodlands,

EXHIBIT A-1

Texas, 77381. It is a subsidiary of Ferrovial Agroman Texas LLC, a wholly-owned subsidiary of Ferrovial Agroman, a Spanish company who will be managing the LBJ Express Lane and DBW Construction LLC. Trinity Infrastructure LLC has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

      4.     Defendants Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC are added only as to the alter-ego and joint venture theories of liability. Trinity Infrastructure LLC was operated as the alter-ego of or in a joint venture with one or more of Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC.

      5.     Defendant **Texas Shafts, Inc.**, is a domestic for profit corporation formed under the laws of the State of Texas. Texas Shafts, Inc. is and was at all relevant times a resident of and doing business in the State of Texas and Dallas County, Texas. Texas Shafts, Inc. maintains its principal place of business in Texas. Texas Shafts, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

      6.     Defendant **Mario Sinacola & Sons Excavating, Inc.** is a Texas company with its principal place of business at 10950 Research Rd., Frisco, Texas 75033. Mario Sinacola & Sons Excavating, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

      7.     Defendant **Hayward Baker, Inc.** is a Texas company with its principal place of business at 661 E. Shahan Prairie Road, Little Elm, Texas 75068. Hayward Baker, Inc. appeared on behalf of Craig Olden, Inc. and notified Plaintiffs that Craig Olden, Inc. was incorrectly

named but correctly served. Hayward Baker, Inc. has been served, has answered, and is before the Court for all purposes. Service of this pleading is made pursuant to TEX. R. CIV. P. 21a.

## IV.
## JURISDICTION AND VENUE

8.    Jurisdiction is proper in the Dallas County pursuant to TEX. GOV. Code 24.007.

9.    Jurisdiction is proper over any and all out of state defendants pursuant to the Texas Long-Arm statute, Tex. Civ. Prac. Rem. Code § 17.001 et seq.

10.    Venue is proper in the Dallas County under TEX. CIV. PRAC. REM. Code § 15.002 because substantially all events giving rise to the causes of action occurred in Dallas County.

11.    Venue is also proper in Dallas County under TEX. CIV. PRAC. REM. Code § 15.011 because the matter concerns real property located in Dallas County.

## V.
## BACKGROUND FACTS

**The LBJ Express Lane Project**

12.    This case arises out of the LBJ Managed Lane Project ("LBJ Express Project" or "Project") that was awarded to LBJ Infrastructure Group, LLC, a subsidiary of Ferrovial Agroman, a Spanish international construction conglomerate with several local affiliates.

13.    The Project is a 17-mile stretch of roadway along IH-635 (commonly known as LBJ Freeway) between US-75 and IH-35E with extensions north and south along IH-35E. IH-635 is a primary east/west artery in Dallas, Texas. The Project also includes an 8-mile stretch of highway up to 50 feet below the existing ground level commonly known as the IH-635 Managed Lanes or *TEXpress Lanes*.

14.    Although Defendants claim that LBJ Infrastructure Group, LLC won the Project after a so-called rigorous, competitive bidding process, the truth is that only one other group

EXHIBIT A-1

(LBJ Mobility Group) actually bid on the Project and it was awarded to Defendants with a "wink and a nod."

15.     With Trinity Infrastructure LLC ("Trinity") itself being a subsidiary of Ferrovial Agroman Texas LLC (itself a subsidiary of Ferrovial), Ferrovial basically owns both the owner and general contractor on the Project. LBJIG entered into a construction contract with Trinity for the Project without going through a competitive bidding process.

16.     The managed lanes of the LBJ Project, also known as the TEXpress lanes, were built as a toll road—not a free highway like I-635—and is expected to generate northwards of **$50 million in *profit every year* for these private companies that own them, *not the taxpayers***. The TEXpress Lanes on 635 were built in the middle of the general highway and a portion are located in the LBJ Canyon (which was not a canyon before the Project) beneath the surface level general highway lanes.

17.     Thus, the Ferrovial entities formed a partnership using a series of local subsidiaries and special purpose entities, called the LBJ Development Group, LLC to design, develop, finance, and deliver the project.

18.     It apparently does not matter who gets hurt or injured—as long as the road gets built and the money gets made.

19.     Defendant Trinity Infrastructure is a subsidiary and a joint venture with another subsidiary, BDW Construction LLC, to manage and oversee the construction of the Project.

20.     Unlike traditional highway construction projects with TxDOT approved for construction plans and specifications available for the contractor at bid time, LBJIG executed a design-build contract with TxDOT for the Project. This method resulted in the scope of work

EXHIBIT A-1

being undefined at bid time and the final contract value not being known until the completion of the Project.

21.     In addition, the design-build approach to the Project required significant ongoing design modifications and continuous scope changes to work being performed daily in the field. This "design-on-the-fly" method, coupled with the significant pressure from LBJIG and Trinity to complete the Project ahead of schedule, created daily challenges for all parties.

22.     The aggressive schedule implemented by LBJIG and Trinity required subcontractors to place thousands of pieces of equipment and employees to work in many different areas of the Project at the same time. To make it even more challenging, the subcontractors also had to contend with and navigate around 180,000 vehicles per day driving up and down LBJ Freeway, one of the nation's busiest highways.

23.     The contractor agreements between Trinity Infrastructure nowhere specifically require that the Express Lane may be located below the surface.

24.     The contractor agreements nowhere require that any of the construction include the use of blasting—in fact, they expressly prohibit the use of explosives.

25.     Trinity and its affiliates retained the remaining Defendants as subcontractors.

26.     Construction on the Project lasted until the end of 2015, but Plaintiffs' damages continue.

### The Destruction of Plaintiffs' Homes, Neighborhood and Peace of Mind

27.     The Defendants designed long stretches—if not the entirety—of the Project to run below ground and underground. They also designed the access roads and general use lanes to run close to Plaintiffs' neighborhood and homes.

EXHIBIT A-1

28.     They also designed the LBJ Express Lane—including its new access roads to run right next to Plaintiffs' homes. Whereas there used to be nearly one hundred feet between Plaintiffs' homes and the highway, there is now less than thirty feet.

29.     In order to create the subsurface roads and tunnels, Defendants excavated millions of cubic feet of concrete, clay, and subsurface rock and stone. The removal of this earth and rock caused the adjacent lands to likewise shift, dewater, and otherwise move the foundations of Plaintiffs' homes.

30.     Defendants did not use ordinary care in their excavations because they did not proper utilize shoring technology necessary to prevent the damage to neighboring homes.

31.     Defendants used heavy machinery to crack, crush, blast, pound, and remove in the process of demolition and excavations that caused ungodly, awful noise.

32.     The explosions, cracking, drilling, pounding, pounding, and removal shake Plaintiffs' homes *literally* to their foundations. This has caused homes to incur massive splits in the walls, ceilings and floors, and for there to be greater movement than ever seen before.

33.     Plaintiffs who need repairs cannot afford them. Plaintiffs who need their homes replaced cannot afford that. Nor can any of the Plaintiffs afford to move out for the weeks or even months that it would take to put their homes back together if they could afford the repairs in the first place.

34.     Defendants have caused tens of millions of dollars in physical damage to the homes surrounding the highway.

35.     What is worse is that all of that blasting, cracking, pounding, drilling, often occurred *overnight!* The concussive force of the excavation causes jarring in the ears and

EXHIBIT A-1

Plaintiffs can physically feel the reverberations. It got to the point where the noise became a form of constant torture.

36.     The noise, vibrations and shaking were all foreseeable. In fact, the CDA and other agreements discussed the need for mitigating construction noise.

37.     The design plans originally submitted included the use of noise walls. However, the walls that were installed fall *way* short of stopping or abating the incredible din—and resulting sound waves that penetrate the body and ears, and that each homeowner is subject to from the construction and from the traffic that is, for many, merely *feet* away from their homes.

38.     Furthermore, the "walls" that were put in place not only fail to abate the noise, they actually create new hazards. The space below the wall is wide enough to allow children and small pets to wander on to the highway.

39.     Other parts of the alley ways have become so depressed that water—feet deep—pools when it rains due to the lack of adequate drainage. This creates both physical and health hazards to the community which counts hundreds of small children among its residents.

40.     Plaintiffs moved to this neighborhood after working hard, saving up, all the while looking forward to getting a piece of the American dream for themselves: owning their own home. That has been destroyed.

41.     Thus, Plaintiffs have been essentially robbed of their homes. They have been robbed of their community. They have been robbed of their peace of mind.

42.     Plaintiffs banded together as a neighborhood to try and work something out with Defendants. Defendants conducted their own inspections of Plaintiffs' homes, heard the complaints, *and completely ignored them!*

### VI.
### CAUSES OF ACTION

EXHIBIT A-1

### FIRST CAUSE OF ACTION
### LOSS OF LATERAL SUPPORT (All Defendants)

43.     Defendants have caused the removal or loss of lateral support to Plaintiffs' properties.

44.     Each Defendant has engaged in conduct to assist in the excavation of and construction for the LBJ Express Project.

45.     Defendant Mario Sinacola and Sons Excavating, Inc. ("MSSE") excavated the earth for the construction of the sub-surface managed lanes and caused the loss of lateral support to Plaintiffs' home.

46.     Defendant Hayward Baker, Inc. ("HB") failed to properly shore the excavation which resulted in the further loss of lateral support.

47.     Defendant Texas Shafts, Inc. ("Texas Shafts") failed to properly drill the shafts used for the shoring which resulted in further loss of later support.

48.     Neither MSSE, HB, Texas Shafts, nor Trinity properly monitored the movement of the earth during the excavation and shoring which was a proximate cause of the loss of lateral support.

49.     The Plaintiffs' property was and is dependent for support upon the land on which the LBJ Express Project was built and, as a consequence of Defendants' conduct and operations, the Plaintiffs' properties lost that support and sustained the harm described in this Petition.

50.     The conduct made the basis of this complaint was the legal cause of harm to the Plaintiffs' interests in real property.

### SECOND CAUSE OF ACTION
### NEGLIGENCE (All Defendants)
### GROSS NEGLIGENCE (Trinity)

---

EXHIBIT A-1

51. Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

52. Defendants owed a legal duty to Plaintiffs to use reasonable care and caution in the selection of the design, manner, location, timing, and means of excavation and construction of the highway, and especially to protect against the movement and shifting of the ground.

53. Defendants owed a legal duty to Plaintiffs to reasonable care and to relocate plaintiffs or condemn their property.

54. Defendants owed a legal duty to Plaintiffs not to do loud construction, especially overnight.

55. Defendants owed a legal duty to Plaintiffs to construct noise wall barriers, and the highway adjacent to them, in a manner that would reasonably reduce the overall increase in noise.

56. Defendants knowingly or recklessly breached each and every one of these duties.

57. Defendant Mario Sinacola and Sons Excavating, Inc. ("MSSE") excavated the earth for the construction of the sub-surface managed lanes and negligently caused the loss of lateral support to Plaintiffs' home.

58. Defendant Hayward Baker, Inc. ("HB") failed to properly shore the excavation which resulted in the further loss of lateral support.

59. Defendant Texas Shafts, Inc. ("Texas Shafts") failed to properly drill the shafts used for the shoring which resulted in further loss of later support.

60. Neither MSSE, HB, Texas Shafts, nor Trinity properly monitored the movement of the earth during the excavation and shoring which was a proximate cause of the loss of lateral support.

EXHIBIT A-1

61.     Defendants conduct caused direct foreseeable physical harm to Plaintiffs' property and economic losses to the value of Plaintiffs' homes, but for which such injuries would not have occurred.

62.     Further, Defendants voluntarily undertook heavy excavation and construction activities that they knew or should have known would result in damage to Plaintiffs' homes.

63.     Defendants failed to exercise reasonable care in performing such activities and Defendants' negligent performance of those activities caused harm to Plaintiffs and their homes.

64.     As such, Defendants are liable under the theory of negligent undertaking / voluntary undertaking. These acts and/or omissions were singularly and/or severally a proximate cause of the occurrences in question and the resulting injuries and/or damages to the Plaintiffs.

65.     Moreover, Defendant Trinity's conduct constitutes gross negligence. The acts and/or omissions of the Defendant Trinity, when viewed objectively from the standpoint of the Defendant Trinity at the time of the occurrences, involved an extreme risk, considering the probability, magnitude and potential arm to others; and of which Defendant Trinity had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

66.     Defendants' conduct constitutes a particularly disturbing event such that the mental anguish sustained by Plaintiffs caused by the loss of enjoyment of their home was highly foreseeable to Defendants.

### THIRD CAUSE OF ACTION
### NUISANCE (Trinity)

67.     Plaintiffs reallege and incorporate the forgoing allegations as if fully set forth herein.

EXHIBIT A-1

68.     Defendant Trinity's activities are inherently dangerous and were undertaken intentionally or with reckless indifference to the foreseeable and natural consequences thereof.

69.     Defendant Trinity's construction activities created a temporary nuisance that substantially interfered with the use and enjoyment of Plaintiffs' homes by causing an unreasonable discomfort and annoyance to Plaintiffs—as they would for any person of reasonable sensibilities.

70.     Defendant Trinity's construction of the highway frontage roads and the noise walls created a permanent nuisance that substantially interferes with the use and enjoyment of Plaintiffs' homes by causing an unreasonable discomfort and annoyance to Plaintiffs—as they would for any person of reasonable sensibilities.

71.     Defendant Trinity's activities have caused Plaintiffs' homes to suffer physical damage.

72.     Defendant Trinity has negligently caused the removal of lateral support to Plaintiffs' properties which likewise has caused physical damage.

73.     Defendant Trinity's activities have caused certain Plaintiffs' homes to require complete reconstruction.

74.     Defendant Trinity's activities have caused dangerous conditions to arise for Plaintiffs in their neighborhood.

75.     Defendant Trinity's activities have caused physical invasion of dust, light and noise to Plaintiffs' property.

76.     Defendant Trinity's activities have caused a diminution in value of Plaintiffs' homes and properties.

EXHIBIT A-1

77.     Defendant Trinity's activities have caused emotional and psychic harm, inconvenience, and fear.

78.     Defendant Trinity's activities foreseeably and naturally caused Plaintiffs' injuries.

### FOURTH CAUSE OF ACTION
### VICARIOUS LIABILITY (Trinity)

79.     Defendant Trinity is legally responsible for the acts and/or omissions of each other's agents, employees, statutory employees, borrowed servants, and representatives under the doctrines of agency (apparent agency, ostensible agency and agency by estoppel), vicarious liability, statutory employment, borrowed servant and *respondeat superior*.

80.     Additionally, Trinity is liable for the conduct of the other subsidiary Defendants under the doctrines of agency, indemnification, vicarious liability, and *respondeat superior*.

### FIFTH CAUSE OF ACTION
### JOINT VENTURE LIABILITY (Trinity / Ferrovial Entities)

81.     At all times relevant to this cause of action, Defendants were in a joint venture as they had an agreement which included: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an express agreement to share losses; and (4) a mutual right to control or management of the venture.

### SIXTH CAUSE OF ACTION
### ALTER EGO/ PIERCING CORPORATE VEIL (Trinity / Ferrovial Entities)

82.     At all times relevant, the Trinity and Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC. were the alter egos of each other. Trinity and Ferrovial Agroman US Corp. Ferrovial Holding US Corp., Ferrovial US Construction Corp. and Ferrovial Agroman Texas LLC. engaged in a sham to perpetrate a fraud on Plaintiffs. Further, the Trinity and Ferrovial Defendants were organized

**EXHIBIT A-1**

and operated as a mere tool or business conduit of each other in order to evade their legal obligations and create a sham entity. Alternatively, Trinity is undercapitalized on purpose in order to evade legal liability to Plaintiffs.

**VII.**
**TOLLING OF STATUTE OF LIMITATIONS**

83.     The Trinity and Ferrovial Defendants had actual knowledge of the wrongs they were perpetrating and had a fixed purpose to conceal those wrongs from the Plaintiffs. Additionally, the effects on Plaintiffs' homes were latent and undetected by Plaintiffs despite their diligence.

84.     The Trinity and Ferrovial Defendants voluntarily disclosed partial information to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties, but failed to disclose the whole truth.

85.     The Trinity and Ferrovial Defendants made a partial disclosure and conveyed a false impression to Plaintiffs regarding the excavation and construction activities for the LBJ Express Lane project and the damage those activities would cause to Plaintiffs' properties.

86.     The Trinity and Ferrovial Defendants convinced Plaintiffs they would pay for the damage to their homes, visited, investigated and inspected Plaintiffs' homes; but, never made the promised payments.  Plaintiffs justifiably relied on these representations and did not file suit earlier.

87.     The Trinity and Ferrovial Defendants went to great lengths to fraudulently conceal the existence and extent of Plaintiffs' causes of action and the true facts from Plaintiffs in an improper and vile attempt to run out the so-called statute of limitations by advising

**EXHIBIT A-1**

Plaintiffs that Trinity Infrastructure would fix their homes if they would submit estimates of repair costs and not file a lawsuit from 2013 until mid-2016.

88.     As the Trinity and Ferrovial Defendants fraudulently concealed the existence and extent of Plaintiffs' causes of action or the facts essential to Plaintiffs' cause of action, Defendants are estopped from relying upon the defense of limitations until the right of Plaintiffs' action was discovered.

## VIII.
## CONDITIONS PRECEDENT

89.     All conditions precedent for filing suit have been met.

## IX.
## TRIAL BY JURY

90.     Plaintiffs seek trial by jury on all issues triable to a jury.

## X.
## RULE 47 STATEMENT

91.     Plaintiffs agree not to seek more than $500,000 from MSSE and sums within the Court's jurisdictional limits from all other Defendants.

## XI.
## PRAYER FOR RELIEF

92.     Plaintiffs pray for the following relief:

     a.     Damages to be determined at trial;

     b.     Exemplary damages against Trinity and the Ferrovial entities to be determined at trial;

     c.     Injunctive relief;

     d.     Attorneys' fees and costs; and

     e.     Declaration of rights.

**EXHIBIT A-1**

Plaintiffs further seek all other legal and equitable relief to which they may be justly entitled and that the Court deems reasonable and just to award Plaintiffs under the facts shown at trial.

Dated: December 30, 2016

Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ Dean Gresham*
Dean Gresham
Texas Bar No. 24027215
Bruce Steckler
Texas Bar No. 00785039
12720 Hillcrest Rd.
Suite 1045
Dallas, Texas 75230
(214) 432-2899
(214) 853-4367
dean@stecklerlaw.com
bruce@stecklerlaw.com

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti, Esq.**
**SBAITI & COMPANY PLLC**
Texas Bar No. 24058096
5307 Mockingbird Ln.
Fifth Floor
Dallas, TX 75206
Telephone - (214) 432-2899
Facsimile - (214) 853-4367
mas@sbaitilaw.com

***ATTORNEYS FOR THE PALAVICINI PLAINTIFFS***
*/s/ Chris Cowan*
Chris Cowan
**THE COWAN LAW FIRM**
4711 Gaston Avenue
Dallas, Texas 75246-1013
Telephone – (214) 826-1900
Facsimile – (214) 826-8900
chris@cowanlaw.net

**EXHIBIT A-1**

/s/ Patrick W. Pendley
Patrick W. Pendley
**PENDLEY BAUDIN & COFFIN PLLC**
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Telephone – (888) 725-2477
Facsimile – (225) 687-6398
pwpendley@pbclawfirm.com

*ATTORNEYS FOR THE CAZARES PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in accordance with Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE on all counsel of record on December 30, 2016.

/s/ Dean Gresham
DEAN GRESHAM

EXHIBIT A-1

# EXHIBIT D

# Trinity Infrastructure, LLC's Third-Party Petition

FILED
DALLAS COUNTY
12/22/2016 4:14:18 PM
FELICIA PITRE
DISTRICT CLERK

Christi Underwood

CAUSE NO. DC-15-03577

| | | |
|---|---|---|
| MARIA CAZARES, et al., | § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| TRINITY INFRASTRUCTURE, LLC, et at., | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *and* | § | 134th JUDICIAL DISTRICT |
| | § | |
| TRINITY INFRASTRUCTURE, LLC, | § | |
| | § | |
| *Third-Party Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| ANCORTEX, INC., et al., | § | |
| | § | |
| *Third-Party Defendants.* | § | DALLAS COUNTY, TEXAS |

---

**DEFENDANT TRINITY INFRASTRUCTURE, LLC'S
THIRD-PARTY PETITION**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Trinity Infrastructure, LLC, a Defendant in the above-captioned

cause ("Defendant", "Third-Party Plaintiff" and/or "Trinity"), and files this, its *Third-Party*

*Petition* (the "Petition"), complaining of AncorTex, Inc.; Austin Bridge & Road, Inc.; Austin

Bridge and Road, LP; Stomper Demolition Company, Inc.; Civil Works, Inc.; CivilWorks

Engineering, LP; Weir Brothers Contracting, LLC; Lindamood Demolition, Inc.; Oscar

Orduno, Inc.; Wright Construction Company; Renaissance Contractors, Inc.; Renaissance

---

EXHIBIT
**D**

EXHIBIT A-1

Contractors Partnership and, for cause of action, would respectfully show this Court as follows.

## I.
### DISCOVERY CONTROL PLAN

1.      Discovery in the above-captioned matter is being conducted under a court-directed, Level III Discovery Control Plan, pursuant to Rule 190.4 of the Texas Rules of Civil Procedure. To the extent necessary in third-party practice, Third-Party Plaintiff affirmatively pleads that neither this suit, in general, nor the claims set forth herein are governed by the expedited-action process under Rule 169 of the Texas Rules of Civil Procedure.

## II.
### PARTIES

2.      Third-Party Plaintiff, Trinity, has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

3.      Third-Party Defendant, AncorTex, Inc. ("AncorTex") has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

4.      Third-Party Defendant, Austin Bridge & Road, Inc. ("Austin, Inc."), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

5.      Third-Party Defendant, Austin Bridge and Road, LP ("Austin, LP"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

6.      Third-Party Defendant, Stomper Demolition Company, Inc. ("Stomper"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

EXHIBIT A-1

7.      Third-Party Defendant, Civil Works, Inc. ("Civil Works"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

8.      Third-Party Defendant CivilWorks Engineering, LP ("CivilWorks, LP"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

9.      Third-Party Defendant, Weir Brothers Contracting, LLC ("Weir Bros."), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

10.     Third-Party Defendant, Indus Construction, LP ("Indus"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

11.     Third-Party Defendant, Lindamood Demolition, Inc. ("Lindamood"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

12.     Third-Party Defendant, Oscar Orduno, Inc. ("Orduno"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

13.     Third-Party Defendant, Wright Construction Company ("Wright"), has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

14.     Third-Party Defendant, Renaissance Contractors, Inc. ("Renaissance") has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

---

EXHIBIT A-1

15.     Third-Party Defendant, Renaissance Contractors Partnership ("Renaissance Partnership") (collectively, the "Third-Party Defendants") has already appeared in the above-captioned action and may be served with papers in this matter by serving its counsel of record.

### III.
### FACTS

16.     The above-captioned cause was commenced on or about 30 March 2015, with the filing of *Plaintiffs' Original Petition*. A related, similar action – captioned *Palavicini, et al. v. Trinity Infrastructure, LLC, et al.* and bearing Cause No. DC-15-04256 – was commenced shortly thereafter, on or about 14 April 2015. On or about 6 May 2015, the 14th District Court entered an order transferring the *Palavicini* action to this Court, pursuant to Rule 1.06 of the Dallas County Local Rules. Sometime later – and after consolidating these actions for the limited purpose of discovery – this Court entered its *Order of Consolidation*, formally and completely consolidating these actions for all purposes.

17.     In late 2016, this Court ordered that a trial would go forward as to the claims relating to only one home – specifically, that of Felipe and Aurora Rodriguez, two of the Plaintiffs in this action (collectively, the "Rodriguez Plaintiffs") – beginning on 30 January 2017. On or about 8 December 2016, the Rodriguez Plaintiffs voluntarily elected to non-suit several of the named Defendants in this action, thereby excluding them from the Rodriguez Plaintiffs' January trial, and leaving only Third-Party Plaintiff and three other named Defendants to face trial. Each of the Third-Party Defendants was one of these Defendants so non-suited.

18.     The Plaintiffs in this (consolidated) action – homeowners (generally) adjoining I-635 in Dallas County, Texas – have alleged numerous causes of action against – among others – Third-Party Plaintiff Trinity. In general, Plaintiffs' complaints amount to claims for

EXHIBIT A-1

property damage and personal injury, arising out of damages allegedly caused by the construction of the LBJ Express Managed Lanes Project (the "Project"). The Project was – and is – owned by the State of Texas, vis-a-vis the Texas Department of Transportation. Third-Party Plaintiff was the design-build contractor for the Project and, in turn, subcontracted with Third-Party Defendants for the actual construction work.

19.     As part of their contractual relationships with Third-Party Plaintiff, each of the Third-Party Defendants agreed to indemnify, defend, and hold Third-Party Plaintiff harmless for any claims or damages arising out of or relating to their work on the Project. In addition, each Third-Party Defendant agreed to name Third-Party Plaintiff as an additional insured under Third-Party Defendants' insurance policies applicable to the Project.

20.     Third-Party Plaintiff has consistently maintained – among others – the position that it and its subcontractors are not liable for the damages alleged to have been suffered by the Plaintiffs. However – and without abandoning that position in any way – Third-Party Plaintiff brings this Petition against Third-Party Defendants in order to insure that all of the originally-named Defendants are present and participating in the Rodriguez Plaintiffs' (or any other) trial.

## IV.
## CAUSES OF ACTION

### A.     Contribution.

21.     In the unlikely event that Third-Party Plaintiff is found liable for all or any part of the Rodriguez Plaintiffs' alleged damages, Third-Party Plaintiff would assert its right to seek contribution from Third-Party Defendants, as named co-Defendants in this action, from whom the Plaintiffs seek no recovery. Texas law affords Third-Party Plaintiff the ability to assert its right to contribution from Third-Party Defendants as a part of the Plaintiffs'

EXHIBIT A-1

underlying lawsuit. As such, Third-Party Plaintiff has filed its Petition herein, and asks that the trier of fact ultimately determine the percentage of responsibility for the Rodriguez Plaintiffs' damages – if any – that each Third-Party Defendant must bear.

**B.      Indemnity.**

22.      As noted above, Third-Party Defendants were subcontracted to Third-Party Plaintiff to perform construction work at the Project. Each of the Third-Party Defendants' contracts in connection with the Project included an indemnity agreement. Under the terms of these agreements, Third-Party Defendants committed to indemnify, defend and hold Third-Party Plaintiff harmless or any claims or damages arising out of or relating to their work on the Project. To the extent that Third-Party Plaintiff is found to be liable for all or part of the Rodriguez Plaintiffs' alleged damages, Third-Party Plaintiff asserts a claim against Third-Party Defendants for indemnity against any such damages.

**C.      Breach of Contract.**

23.      In a similar vein to the indemnity claim, above, Plaintiff also asserts a claim for breach of contract against Third-Party Defendants, with relating to their contractual indemnity obligations to Third-Party Plaintiff. In addition to their obligation to indemnify Third-Party Plaintiff against any losses that might be assessed against it, Third-Party Defendants also have an obligation to defend Third-Party Plaintiff against these Plaintiffs' claims, regardless of the ultimate determination of liability.

24.      A valid, enforceable agreement exists between Third-Party Plaintiff and each of the Third-Party Defendants, in the form(s) of their Project-related subcontracts. Third-Party Plaintiff performed – or tendered performance – of its obligations under these contracts. By – among other things – failing to defend Third-Party Plaintiff in this action, Third-Party Defendants have failed to perform their obligations. As a directly and proximate result of

**EXHIBIT A-1**

Third-Party Defendants' breaches of these agreements, Third-Party Plaintiff has suffered – and continues to suffer – damages, which it hereby seeks to recover.

## V.
## ATTORNEYS' FEES

25.     Third-Party Plaintiff is entitled to recover – and hereby seeks – its reasonable and necessary attorneys' fees, incurred in the prosecution of this third-party action, pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code.

## VI.
## STATEMENT OF DAMAGES

26.     In accordance with Rule 47 of the Texas Rules of Civil Procedure, Third-Party Plaintiff discloses that it seeks, by this Petition, to recover monetary relief in excess of $1,000,000.

## VII.
## CONDITIONS PRECEDENT

27.     All conditions precedent to Third-Party Plaintiff's claim for relief have been performed, occurred, or have been waived.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Third-Party Plaintiff respectfully prays that Third-Party Defendants, once served with this Petition, answer and that, after trial on the merits or other formal resolution of the claims herein, that Third-Party Plaintiff have and recover judgment against Third-Party Defendants for the amount of any damages awarded against Third-Party Plaintiff in favor of the Rodriguez Plaintiffs, the costs of its defense of the underlying action, its reasonable and necessary attorneys' fees incurred in the prosecution of this action, its costs of court, and pre- and post-judgment interest at the maximum amount

**EXHIBIT A-1**

allowed by law; and for such other and further relief, whether at law or in equity, to which Third-Party Plaintiff may show itself justly entitled.

RESPECTFULLY SUBMITTED,



By: _____

Ian P. Faria
State Bar No. 24009106
*ifaria@bradley.com*
**Jon Paul Hoelscher**
State Bar No. 24050771
*jhoelscher@bradley.com*
**Andrew R. Stubblefield**
State Bar No. 24068471
*astubblefield@bradley.com*

**Bradley Arant Boult Cummings, LLP**
325 North St. Paul Street
Suite 3100
Dallas, Texas 75201
469 513-4271 Telephone
469 513-4001 Facsimile

**COUNSEL FOR DEFENDANT /
THIRD-PARTY PLAINTIFF
TRINITY INFRASTRUCTURE, LLC**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on the following counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this, the 22nd day of December, 2016.

EXHIBIT A-1

Mr. Dean Gresham
GRESHAM, PC
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
*Counsel for Plaintiffs*

Mr. Mazin A. Sbaiti, Esq.
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
*Counsel for Plaintiffs*

Mr. R. Christopher Cowan
One Meadows Building
5005 Greenville Avenue, Suite 200
Dallas, Texas 75206
*Counsel for Plaintiffs*

Mr. Adesola Adeyemi
ADEYEMI LAW FIRM, PLLC
777 S. Central Expressway, Suite 7-L
Dallas, Texas 75080
*Counsel for Plaintiffs*

Mr. Patrick W. Pendley
PENDLEY, BAUDIN & COFFIN, L.L.P.
Post Office Drawer 71
Plaquemine, Louisiana 70765
*Counsel for Plaintiffs*

Mr. Keith Robb
FLETCHER, FARLEY, SHIPMAN & SALINAS, L.L.P.
9201 North Central Expressway
Suite 600
Dallas, Texas 75231
*Counsel for AnchorTex*

Mr. Greg A. Harwell
Mr. Matthew M. Waterman
SLATES HARWELL, L.L.P.
1700 Pacific Avenue, Suite 3800
Dallas, Texas 75201
*Counsel for Austin Bridge & Road, L.P*

---

EXHIBIT A-1

Mr. Keith C. Cramer
Mr. Christopher S. Norcross
GORDON & REES, L.L.P.
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
*Counsel for Hayward Baker, Inc./Craig Olden*

Mr. George Lankford
Mr. Marc H. Fanning
FANNING HARPER MARTINSON BRANDT & KUTCHIN, P.C.
4849 Greenville Avenue, Suite 1300
Dallas, Texas 75206
*Counsel for Indus Construction, LP*

Mr. John Holman Barr
Ms. L. Darlene Mitchell
BURT BARR & ASSOCIATES, LLP
P.O. Box 223667
Dallas, Texas 75222-3667
*Counsel for Lindamood Demolition, Inc.*

Mr. E. Stratton Horres, Jr.
Mr. Mitchell S. Milby
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKLER, LLP
901 Main Street, Suite 4800
Dallas, Texas 75202
*Counsel for Lloyd D Nabors Demolition LLC*

Mr. Michael A. Miller
Mr. J. Keith Webb
THE MILLER LAW FIRM
3811 Turtle Creek Boulevard, Suite 1950
Dallas, Texas 75219
*Counsel for Mario Sinacola & Sons Excavating, Inc.*

Mr. Jack Connor
MICHAEL V. WINCHESTER & ASSOCIATES
5601 Granite Parkway
Suite 410
Plano, Texas  75024
*Counsel for Oscar Orduno, Inc.*

Mr. Steve Snelson
GERSTLE, MINISSALE & SNELSON, L.L.P.
4849 Greenville Ave., Suite #1500
Dallas, Texas 75206
*Counsel for Renaissance Contractors Partnership and Renaissance Contractors, Inc.*

---

EXHIBIT A-1

Mr. John S. Kenefick
Mr. Jason Jung
MACDONALD DEVIN, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
*Counsel for Texas Shafts, Inc.*

Mr. William J. Clay
Mr. Todd J. Liles
THE WILLIS LAW GROUP, PLLC
10440 North Central Expressway, Suite 520
Dallas, Texas 75231
*Counsel for Weir Brothers Contracting, LLC*

Mr. James D. Bertsch
Mr. Tim Smith
TOUCHSTONE, BERNAYS, JOHNSTON,
  BEALL, SMITH & STOLLENWERCK, LLP
4040 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2196
*Counsel for Wright Construction Co, Inc.*

Andrew R. Stubblefield

EXHIBIT A-1

# Exhibits E.1 TO E.12

# The Subcontract Agreements

Agreement # 1 (RFP #50)
LBJ Segment: #1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of JULY 11, 2011 (Effective Date), between Trinity Infrastructure Group, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and **ARCHER WESTERN CONSTRUCTION, LLC**(Subcontractor), a Limited Liability Company (state type of company), with principal offices at 929 W. Adams, Chicago, Illinois, 60607.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE**, in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (13) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

 (1) "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically

4



EXHIBIT
E.1
Blumberg No. 5208

TRINITY 033368   CONFIDENTIAL

EXHIBIT A-1

incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, in accordance with Exhibit A1, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may take actions as described in Article 9.2.

(1)
## ARTICLE 4. INDEMNITY

4.1 <u>INDEMNIFICATION.</u> In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 <u>GENERAL INDEMNITY.</u>

(A) **SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.**

(B) **SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.**

(C) **SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:**
(1) **PARTIAL NEGLIGENCE;**
(2) **CONCURRENT NEGLIGENCE;**
(3) **STRICT LIABILITY; OR**
(4) **ANY OTHER THEORY OF LIABILITY.**

(D) **THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.**

5




# EXHIBIT A-1

**(E)** ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

**(F)** If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages, loss, cost and expenses for which it is comparatively responsible.

**(G)** Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

**(H)** Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

**(I)** Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

**(J)** If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

**(K)** Subcontractor's duties under Article 4, will survive termination of this Agreement.

**(L)** This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor,

or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

### 4.3 INTELLECTUAL PROPERTY INDEMNITY.

**(A)** Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

**(B)** If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

**(C)** Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

    (1)  secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

    (2)  replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

### 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

**(A)** If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

    (1)  to accept them "as is,"
    (2)  that this use is at the sole risk of Subcontractor, and
    (3)  to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

**(B)** THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.

### 4.5 INDEMNITY FOR SAFETY VIOLATIONS.





6

TRINITY 033370    CONFIDENTIAL

# EXHIBIT A-1

Agreement # 1(RFP #50)
LBJ Segment: #1

SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

## ARTICLE 5. INSURANCE

5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with

5.2 REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)    COVERAGE PROVISIONS
LIMITS
(in addition to 5.1 above)

endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C)    Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D)    Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E)    Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

AGREEMENTS AGREEMENTS
AGREEMENTS

UNDER   IN EXCESS OF   IN EXCESS



7

TRINITY 033371    CONFIDENTIAL

# EXHIBIT A-1

Agreement # 1(RFP #50)
LBJ Segment: #1

(B) WORKERS' COMPENSATION (WC)

Statutory        Statutory        Statutory·

    (1) Coverage must include USL&H, Jones Act,
Outer Continental Shelf Land Act, Maritime
& Federal Employers Liability Act coverage
& Defense Base Act, if applicable.

    (2) Coverage must include all Partners,
Proprietors, and Executive Officers.

    (3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

    (1) Each Accident                    $
500,000 $1,000,000                $1,000,000

    (2) Disease – Policy Limit           $
500,000 $1,000,000                $1,000,000

    (3) Disease – Each Employee          $
500,000 $1,000,000                $1,000,000

    (4) Coverage must include all Partners,
Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

    (1) General Aggregate
$1,000,000              $2,000,000
$2,000,000

    (2) Products/Comp-Op Aggregate
$1,000,000              $2,000,000
$2,000,000

    (3) Personal/Advertising Injury
$500,000                $1,000,000
$1,000,000

    (4) Each Occurrence
$500,000                $1,000,000
$1,000,000

    (5) Fire Damage (any 1 fire)          $50,000
$50,000                 $50,000

    (6) Medical Expense (any 1 person)    $5,000
$5,000                  $5,000

    (7) Policy must be endorsed to provide that
aggregate limits apply on a per project basis.

    (8) Coverage must include:

        (a) Broad form property damage,
product/completed operations
(minimum 3 years past completion of
project), independent contractor's
liability, blanket contractual liability
covering Subcontractor's indemnity
obligations under the Indemnity Article
herein, coverage for hazards commonly
referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

    (1) Bodily injury (per person)         $
250,000 $ 250,000              $ 250,000

    (2) Bodily injury (per accident)       $
500,000 $ 500,000              $ 500,000

    (3) Property Damage                    $
250,000 $ 250,000              $ 250,000
or

    (4) Combined Single Limit
$1,000,000              $1,000,000
$1,000,000

    (5) Coverage shall include all owned, non-
owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

    (1) In excess of WC, CGL, & AL above
N/A        $1,000,000
$4,000,000

(G) SUBCONTRACTOR'S EQUIPMENT

    (1) Trinity must be named as a loss payee under
this policy if the equipment is owned by,
leased by or borrowed from Trinity.

    (2) Covering all tools and construction
equipment owned, leased, or borrowed by
Subcontractor, Second-Tier-Subcontractors
and their respective employees.

    (3) Full replacement value of tools and
equipment.

**ARTICLE 6. AGREEMENT DOCUMENTS**

(A) The Agreement Documents identified below comprise
the entire Agreement between Trinity and Subcontractor.
All oral agreements and representations have been
reduced to writing and are included in the Agreement
Documents. Subcontractor represents that Subcontractor
has read and understands this entire Agreement.
Subcontractor also represents that no verbal statement,
promise or condition not specifically set forth in this
Agreement is being relied upon by Subcontractor.  It is
acknowledged that Trinity is relying on these
representations and would not enter into this Agreement
without this understanding.

(B) The following are the Agreement Documents: this
Agreement, Specifications, Drawings, Agreed Exceptions
(as indicated in Exhibit A), Change Orders, documents
and data furnished by Subcontractor after the Effective
Date that are approved and accepted in writing by
Trinity's representative, CDA, as it relates to the
Subcontractor's Scope of work, and EEO Compliance
Certificate, if applicable. All Agreement Documents,
whether or not presently in existence, are incorporated
herein by reference and are binding on the Parties as if
fully set forth at length.

(C) Should anything necessary for a clear understanding of
the Work be omitted from the Agreement Documents,
or should the requirements appear to be in conflict, the
Subcontractor shall secure written instructions from
Trinity before furnishing the Work affected thereby. It is
understood and agreed that the Work shall be performed
according to the true and highest intent of the
Agreement Documents.

(D) Any conflict within the Agreement Documents shall be
resolved by reference to the Agreement Document with
the highest precedence in the following order:



8

TRINITY 033372    CONFIDENTIAL

# EXHIBIT A-1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of MAY 19, 2011 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 200, Dallas, Texas 75240 (Trinity), and Austin Bridge and Road (Subcontractor), a Construction, with principal offices at 6330 Commerce Drive, Suite 150 Irving, TX 75063.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

NOW, THEREFORE, in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will

Agreement # _____
LBJ Segment _____

provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Services done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (12) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

(1) "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically

4



EXHIBIT
E.2

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER AND TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE PARTIAL OR CONCURRENT, BUT NOT SOLE,NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT



EXHIBIT A-1

LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S _PARTIAL NEGLIGENCE;_

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work, only to the extent such item is not specified in the Agreement Documents.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

   (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

   (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction

6



EXHIBIT A-1

equipment, scaffolding, or other appliances, Subcontractor agrees:

    (1)  to accept them "as is",
    (2)  that this use is at the sole risk of Subcontractor, and
    (3)  to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B)  **THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

**4.5  INDEMNITY FOR SAFETY VIOLATIONS. SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.**

4.6  (RESERVED)

4.7  (RESERVED)

**ARTICLE 5. INSURANCE**

5.1 GENERAL INSURANCE REQUIREMENTS.

(A)  Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by the Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term

of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B)  Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C)  Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D)  Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and

7



EXHIBIT A-1

Agreement # _____
LDJ Segment _____

theinsurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

REST OF THE PAGE INTENTIONALLY LEFT BLANK

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

5.2    REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A) COVERAGE PROVISIONS                    LIMITS
     (in addition to 5.1 above)

|  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|

(B) WORKERS' COMPENSATION (WC)    Statutory    Statutory    Statutory

    (1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers
        Liability Act coverage & Defense Base Act, if applicable.
    (2) Coverage must include all Partners, Proprietors, and Executive Officers.
    (3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

    (4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

    (7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
    (8) Coverage must include:
        (a) Broad form property damage, product/completed operations (minimum 3 years past completion of project),
            independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations
            under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1) Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2) Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
|      or | | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

    (5) Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G) SUBCONTRACTOR'S EQUIPMENT

    (1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from
        Trinity.
    (2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-
        Subcontractors and their respective employees.
    (3) Full replacement value of tools and equipment.



EXHIBIT A-1

Agreement # 7.3.29.6_000001
LBJ Segment 2 & 3

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of June 16, 2012 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Civil Works, Inc., a corporation , with principal offices at.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Trinity agrees to furnish all permits and materials. Subcontractor agrees to furnish all labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "lump-sum contract" pursuant to Rule 3.291(a)(8) of the Texas Administrative Code and an "exempt contract" pursuant to Rule 3.291(a)(5) of the Texas Administrative Code. For Texas sales and use tax purposes, the Agreement is governed by Texas Sales and Use Tax Statue §151.311 and Rule 3.291(c) or (d) of the Texas Administrative Code. Therefore, this Agreement is a unit price, lump-sum contract.

(B) The unit price lump-sum Agreement amount is for new construction (a nontaxable service) and is validated as an exempt contract upon Subcontractor's receipt of Trinity's Texas Exemption Certificate to Subcontractor

4


EXHIBIT
E.3
EXHIBIT A-1

Agreement # 7.3.29.6_000001
LBJ Segment 2 & 3

issued pursuant to Texas Administrative Code Rule 3.291(c)(1) and Rule 3.287.

(C) Subcontractor will in turn issue its own Texas Exemption Certificates to validate subcontracts as exempt contracts to Subcontractor's lower tiers who will issue their own Texas Resale Certificate to Second-Tier-Subcontractors.

(D) Subcontractor will issue its own Texas Exemption Certificates and Second-Tier-Subcontractors will issue their own Texas Exemption Certificates in lieu of tax to vendors for all purchases of:

   (1) Tangible personal property qualifying as direct materials permanently incorporated into realty pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(A);
   (2) Tangible personal property qualifying as consumable items that are necessary and essential to the contract and are completely consumed at the Site pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(B) and §151.311(b) and (d); or
   (3) Taxable services pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(C)(i) and (c)(4)(C)(ii).

(E) Subcontractor and Second-Tier-Subcontractors are liable for Texas sales/use tax due on consumable supplies not meeting (D)(2) above, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services not meeting (D)(2) above and all other taxable purchases not otherwise exempt that were used for the performance and completion of this Agreement's Scope of Work. The liability for this tax rests with the Subcontractor and Second-Tier-Subcontractors, respectively. The liability for tax owed on nonexempt items by Subcontractor for Second-Tier-Subcontractors does no become Trinity's responsibility.

(F) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

   (1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the

Work in strict compliance with the terms of this Agreement;
   (2) request in writing that Subcontractor speed up the Work;
   (3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;
   (4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
   (1) SOLE NEGLIGENCE;
   (2) PARTIAL NEGLIGENCE;
   (3) CONCURRENT NEGLIGENCE;
   (4) STRICT LIABILITY; OR
   (5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-



EXHIBIT A-1

Agreement # 7.3.29.6_000001
J.BJ Segment 2 & 3

SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages,

compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

### 4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

   (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

   (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

### 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

   (1) to accept them "as is,"
   (2) that this use is at the sole risk of Subcontractor, and
   (3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B) THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.

6

 

EXHIBIT A-1

Agreement # 7.3.29.6_000001
LBJ Segment 2 & 3

### 4.5  INDEMNITY FOR SAFETY VIOLATIONS.

SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

### ARTICLE 5. INSURANCE

#### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C) Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.




EXHIBIT A-1

Agreement # 7.3.29.6_000001
J.BJ Segment 2 & 3

5.2     <u>REQUIRED COVERAGE.</u> Insurance policies must contain at a minimum the following coverages and limits:

(A)    COVERAGE PROVISIONS        <u>LIMITS</u>
      (in addition to 5.1 above)

|  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|
| (B) WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory | Statutory |

      (1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
      (2) Coverage must include all Partners, Proprietors, and Executive Officers.
      (3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

|  |  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|---|
| (1) | Each Accident | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (2) | Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (3) | Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |

      (4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

|  |  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|---|
| (1) | General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (2) | Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (3) | Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (4) | Each Occurrence | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (5) | Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 | $50,000 |
| (6) | Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 | $5,000 |

      (7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
      (8) Coverage must include:
         (a) Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

|  |  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|---|
| (1) | Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| (2) | Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 | $500,000 |
| (3) | Property Damage | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| | or | | | | |
| (4) | Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |

      (5) Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

|  |  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|---|
| (1) | In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 | $10,000,000 |

(G) SUBCONTRACTOR'S EQUIPMENT

      (1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
      (2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-Subcontractors and their respective employees.
      (3) Full replacement value of tools and equipment.




8

**EXHIBIT A-1**

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of 07 17, 20 11 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Craig Olden Inc. (Subcontractor), a company incorporated in the State of Texas, with principal offices at 661 East Shahan Prairie Road, Little Elm, Texas 75068.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

NOW, THEREFORE, in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work. The parties agree that Subcontractor shall only provide permits to the extent such permits are required by TxDOT.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity upon acceptance of Subcontractor's Work.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF DISCOVERABLE PRE-EXISTING HAZARDOUS MATERIALS AND ITS RELEASES OF HAZARDOUS MATERIALS SUBCONTRACTOR BRINGS TO THE SITE.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the unit prices stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (13) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

4



TRINITY 032022    CONFIDENTIAL

EXHIBIT A-1



Agreement # 6PB_7.3.19.6_000001
LBJ Segment 1, 2 & 3

(1)  "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This separated price does not include any charges for Direct Materials; and

(2)  "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B)  Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C)  This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D)  Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A)  Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B)  If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1)  defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in strict compliance with the terms of this Agreement;

(2)  request in writing that Subcontractor speed up the Work;

(3)  assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4)  Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1  INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2  GENERAL INDEMNITY.

(A)  **SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE SUBCONTRACTOR'S WORK.**

(B)  **SUBCONTRACTOR MUST DEFEND THE**

5



Agreement # 6PE_7.3.19.6_000001
LBJ Segment 1, 2 & 3

INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
  (1) SOLE NEGLIGENCE;
  (2) PARTIAL NEGLIGENCE;
  (3) CONCURRENT NEGLIGENCE;
  (4) STRICT LIABILITY; OR
  (5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is determined either judicially or, if applicable, through binding ADR that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the defense costs and damages for which it is comparatively responsible. However, if prior to a judicial determination, Bluebonnet and the Subcontractor agree to an allocation of proportionate responsibility in settlement of a particular claim, that settlement agreement can be enforced.

(G)

(H) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(I) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by

Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(J) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(K) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(L) Subcontractor's duties under Article 4 will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:
  (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability; or
  (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at

6



Agreement # 6PE_7.3.19.6_000001
LBJ Segment 1, 2 & 3

Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

### 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

    (1) to accept them "as is,"

    (2) that this use is at the sole risk of Subcontractor, and

    (3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B) **THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

### 4.5 INDEMNITY FOR SAFETY VIOLATIONS.

SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

### ARTICLE 5. INSURANCE

### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods),

occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only; and do not limit Subcontractor's liability or obligations.

(C) Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been

7



# EXHIBIT A-1

Agreement # 6PB_7.3.19.6_000001
LBJ Segment 1, 2 & 3

given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

5.2   REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A) COVERAGE PROVISIONS (in addition to 5.1 above)   **LIMITS**

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|
| (B) WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory |

(1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
(2) Coverage must include all Partners, Proprietors, and Executive Officers.
(3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

(4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

(7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
(8) Coverage must include:
   (a) Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1) Bodily Injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2) Bodily Injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
| | or | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

(5) Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G) SUBCONTRACTOR'S EQUIPMENT

8



TRINITY 032026   CONFIDENTIAL
EXHIBIT A-1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of __4/25__, 201_2_ (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), _L L C_ and __Ewwells & C__ (Subcontractor), a _Limited Liability C_ (state type of company), with principal offices at _1221 S. Lamar St_ _Dallas Tx 75215_

### RECITALS

(A)  Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B)  Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A)  Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B)  Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C)  Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D)  Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E)  Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F)  IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A)  Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B)  This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (13) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

(1)  "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically

Agreement # _____.
LBJ Segment _____

4



EXHIBIT
E.5

EXHIBIT A-1

incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges

that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
    (1) SOLE NEGLIGENCE;
    (2) PARTIAL NEGLIGENCE;
    (3) CONCURRENT NEGLIGENCE;
    (4) STRICT LIABILITY; OR
    (5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

    (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

    (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction

6



EXHIBIT A-1

equipment, scaffolding, or other appliances, Subcontractor agrees:

(1) to accept them "as is,"
(2) that this use is at the sole risk of Subcontractor, and
(3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

**(B) THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

### 4.5   INDEMNITY FOR SAFETY VIOLATIONS.

**SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.**

### ARTICLE 5. INSURANCE

#### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be

Agreement # _____
LDI Segment _____

primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C) Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to

7



EXHIBIT A-1

furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

5.2   REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)   COVERAGE PROVISIONS
(in addition to 5.1 above)

LIMITS

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|
| (B)   WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory |

(1)  Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
(2)  Coverage must include all Partners, Proprietors, and Executive Officers.
(3)  Coverage must include All States coverage.

(C)  EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1)  Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2)  Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3)  Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

(4)  Coverage must include all Partners, Proprietors, and Executive Officers.

(D)  COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1)  General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2)  Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3)  Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4)  Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5)  Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6)  Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

(7)  Policy must be endorsed to provide that aggregate limits apply on a per project basis.
(8)  Coverage must include:
    (a)  Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E)  BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1)  Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2)  Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3)  Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
| or | | | |
| (4)  Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

(5)  Coverage shall include all owned, non-owned and hired vehicles.

(F)  EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1)  In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G)  SUBCONTRACTOR'S EQUIPMENT

(1)  Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
(2)  Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-Subcontractors and their respective employees.
(3)  Full replacement value of tools and equipment.

8

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of December 17, 2010 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 200, Dallas, Texas 75240 (Trinity), and Indus Construction L.P. (Contractor), a Texas Limited Partnership, with principal offices at 6060 Brookglen Dr. Suite A. Houston, TX. 77017.

### RECITALS

(A)  Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B)  Trinity and Contractor wish to enter into an agreement in which Contractor will furnish certain Work in connection with the Project.

NOW, THEREFORE, in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

## ARTICLE 1. SCOPE OF WORK

(A)  Contractor agrees to furnish all permits, materials, labor, construction equipment (except Hoisting) , tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Contractor must also carry out all obligations, duties, and responsibilities imposed on Contractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Contractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Contractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Contractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B)  Contractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement, if any. As a condition of final acceptance, Contractor shall deliver an electronic copy of all these documents to Trinity, if any. All Work prepared under this Agreement is the property of Trinity.

(C)  Contractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D)  Contractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Contractor will provide copies of the

information contained in these files to Trinity upon request.

(E)  Contractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Contractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Contractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Contractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Contractor whatsoever for any Services done after date of termination. Any representative authorized by Developer may audit any and all records of Contractor for the sole purpose of determining whether there has been compliance with this Section.

(F)  IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY CONTRACTOR ON OR NEAR THE PROJECT, THE CONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY THE TRINITY. THE CONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

## ARTICLE 2. AGREEMENT PRICE

(A)  This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (12) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

(1)  "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Contractor or its Subcontractors to perform the Work but which are not physically incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Contractor and its Subcontractors. This separated price does not include any charges for the

B.A.



EXHIBIT "A-1"

Agreement # _____
LBJ Segment _____

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Contractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Contractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Contractor and Contractor's lower tiers will issue their own Texas Resale Certificate to Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Contractor's Change Order(s), if any, and billings to Trinity will clearly separate Contractor's pricing for all labor charges defined in Paragraph (A) above from Contractor's pricing for Direct Materials. If Contractor's billing includes a charge for Contractor's Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Contractor is responsible for the payment of Texas sales and use tax on all Contractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Contractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Contractor to its lower tier Subcontractors.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Contractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Contractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Contractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, the Trinity, at its option and in its sole discretion and without any

prejudice to its other rights and remedies concerning delays and non performance of the Contractor, may:

(1) defer all payments payable under this Agreement until the Contractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to the Trinity's reasonable satisfaction that Contractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that the Contractor speed up the Work;

(3) assign the execution of all or part of the Work to another Subcontractor, execute the Work by its own means or both at the Contractor's cost and expense and on its behalf;

(4) Notify the Contractor that the Agreement will be terminated unless Contractors cures all breaches of the Agreement and demonstrates to the Trinity's reasonable satisfaction that the Contractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Contractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) CONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) CONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) CONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
(1) SOLE NEGLIGENCE;

5



EXHIBIT A-1

    (2)  PARTIAL NEGLIGENCE;
    (3)  CONCURRENT NEGLIGENCE;
    (4)  STRICT LIABILITY; OR
    (5)  ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE CONTRACTOR, ITS SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE CONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Contractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity will reimburse Contractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Contractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Contractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Contractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Contractor or Contractor's Subcontractors or suppliers that is in any way related to this Agreement.

(I) Contractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Contractor, its Subcontractors, or both, in the performance of the Work.

(J) If Contractor's duty to defend an Indemnified Party under Section 4 is triggered, then Contractor's selection of counsel is subject to approval by both Contractor and Trinity.

(K) CONTRACTOR'S DUTIES UNDER SECTION 4 WILL SURVIVE THE COMPLETION OR TERMINATION OF THIS AGREEMENT.

(L) If after Contractor has both defended any such claim and such claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity shall reimburse Contractor for Trinity's proportionate damages, costs (including court costs and costs of defense) and expenses for which it is comparatively responsible.

(M) This indemnification obligation shall not be limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Contractor, or any Subcontractor. In any and all Claims against an Indemnified Party by any employee of Contractor, any Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Contractor, or any such Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Contractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Contractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Contractor will promptly either:

    (1)  secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

    (2)  replace the Materials, combination or process, or modify the same to become non-infringing, all at Contractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Contractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

### 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A)   If Contractor, by rental, loan or otherwise, makes use of any of Trinity's tools, construction equipment, scaffolding, or other appliances, Contractor agrees:

    (1)   to accept them "as is",
    (2)   that this use is at the sole risk of Contractor, and
    (3)   to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B)   **THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

### 4.5   INDEMNITY FOR SAFETY VIOLATIONS.

**CONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY CONTRACTOR OR ITS SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF CONTRACTOR OR ANY OF ITS SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR CONTRACTOR'S AND/OR ITS SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.**

### 4.6   (RESERVED)

### 4.7   (RESERVED)

## ARTICLE 5. INSURANCE

### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A)   Contractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by the Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Contractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years

following immediately upon the expiration of the policy. Contractor must require each Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Contractor. All of Contractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Contractor must pay all deductible amounts associated with the required insurance. Contractor must also timely pay the premiums for all insurance required under this Agreement.

(B)   Prior to commencement of the Work, Contractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Contractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Contractor will also furnish Trinity similar evidence of Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Contractor does not release or diminish in any manner the liability or obligations of Contractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Contractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Contractor pursuant to this Agreement are minimum limits only and do not limit Contractor's liability or obligations.

(C)   Each Contractor and Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Contractor and Subcontractor policy must provide a minimum of 30 days written Notice by the insurer to Trinity prior to the cancellation, non-renewal, or material change of any insurance referred to herein. Contractor's insurance must provide coverage whether Contractor's liability arises out of the operations of Contractor or any Subcontractor in connection with the Work.

(D)   Unless otherwise agreed in writing by Trinity, all of Contractor's and Subcontractor's insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

7



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

(E) Failure of Contractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Contractor's or any Subcontractor's insurance as required is a material breach of this Agreement. If Contractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Contractor to suspend performance of the Work at the Site until Contractor demonstrates compliance.

{REST OF THE PAGE INTENTIONALLY LEFT BLANK}

8

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

5.2    REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)    COVERAGE PROVISIONS
(in addition to 5.1 above)

LIMITS

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|
| (B)    WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory |

(1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
(2) Coverage must include all Partners, Proprietors, and Executive Officers.
(3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1)    Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2)    Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3)    Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

(4)    Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1)    General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2)    Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3)    Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4)    Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5)    Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6)    Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

(7)    Policy must be endorsed to provide that aggregate limits apply on a per project basis.
(8)    Coverage must include:
    (a)    Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Contractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1)    Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2)    Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3)    Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
|     or | | | |
| (4)    Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

(5)    Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1)    In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G) CONTRACTOR'S EQUIPMENT

(1)    Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
(2)    Covering all tools and construction equipment owned, leased, or borrowed by Contractor, Subcontractors and their respective employees.
(3)    Full replacement value of tools and equipment.

9



EXHIBIT A-1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of _____, 2012 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Lindamood Demolition, Inc. (Subcontractor), a Texas corporation (state type of company), with principal offices at 2020 South Nursery Road, Irving, Texas 75060.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the

performance of this Agreement. Subcontractor will provide copies of the information obtained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A3, subject to applicable Change Order. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "lump-sum contract" pursuant to Rule 3.291(a)(8) of the Texas Administrative Code and an "exempt contract" pursuant to Rule 3.291(a)(5) of the Texas Administrative Code. For Texas sales and use tax purposes, the Agreement is governed by Texas Sales and Use Tax Statue ' 151.311 and Rule 3.291(c) or (d) of the Texas Administrative Code. Therefore, this Agreement is a unit price, lump-sum contract.

(B) The unit price lump-sum Agreement amount is for new construction (a nontaxable service) and is validated as an exempt contract upon Subcontractor's receipt of

4



EXHIBIT
E.7
EXHIBIT A-1



Trinity's Texas Exemption Certificate is not a contractor issued pursuant to Texas Administrative Code Rule 3.291(d)(1) and Rule 3.287.

(C) Subcontractor will in turn issue its own Texas Exemption Certificates to validate subcontracts as exempt contracts to Subcontractor's lower tiers who will issue their own Texas Resale Certificate to Second-Tier-Subcontractors.

(D) Subcontractor will issue its own Texas Exemption Certificates and Second-Tier-Subcontractors will issue their own Texas Exemption Certificates in lieu of tax to vendors for all purchases of:

   (1) Tangible personal property qualifying as direct materials permanently incorporated into realty pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(A);

   (2) Tangible personal property qualifying as consumable items that are necessary and essential to the contract and are completely consumed at the Site pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(B) and § 151.311(b) and (d); or

   (3) Taxable services pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(C)(i) and (c)(4)(C)(ii).

(E) Subcontractor and Second-Tier-Subcontractors are liable for Texas sales/use tax due on consumable supplies not meeting (D)(2) above, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services not meeting (D)(2) above and all other taxable purchases not otherwise exempt that were used for the performance and completion of this Agreement's Scope of Work. The liability for this tax rests with the Subcontractor and Second-Tier-Subcontractors, respectively. The liability for tax owed on nonexempt items by Subcontractor for Second-Tier-Subcontractors does not become Trinity's responsibility.

(F) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

   (1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable

satisfaction that Subcontractor will complete the Work in strict compliance with the terms of the Agreement;

   (2) request in writing that Subcontractor speed up the Work;

   (3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

   (4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:

   (1) SOLE NEGLIGENCE;
   (2) PARTIAL NEGLIGENCE;
   (3) CONCURRENT NEGLIGENCE;
   (4) STRICT LIABILITY; OR
   (5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-



EXHIBIT A-1

SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity and the Indemnified Parties, Trinity and the Indemnified Parties will reimburse Subcontractor for Trinity's and the Indemnified Parties' proportionate share of the damages for which they are comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way

by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any Claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

(1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

(2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

(1) to accept them "as is,"

(2) that this use is at the sole risk of Subcontractor, and

(3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B) THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.

EXHIBIT A-1

## 4.5  INDEMNITY FOR SAFETY VIOLATIONS.

SUBCONTRACTOR MUST DEFEND, INDEMNIFY
AND HOLD HARMLESS EACH INDEMNIFIED
PARTY FROM AND AGAINST ANY AND ALL
CLAIMS ARISING OUT OF OR RELATING TO ANY
FAILURE BY SUBCONTRACTOR OR ITS SECOND-
TIER-SUBCONTRACTORS TO COMPLY WITH THE
SAFETY REQUIREMENTS OF THIS AGREEMENT
AND ALL APPLICABLE SAFETY LAWS. CLAIMS
SUBJECT TO THIS SECTION 4.5 INCLUDE,
WITHOUT LIMITATION, CLAIMS BASED ON ANY
THEORY OF LIABILITY, INCLUDING BUT NOT
LIMITED TO NEGLIGENCE, ARISING OUT OF
BODILY INJURY OR DEATH OF EMPLOYEES OF
SUBCONTRACTOR OR ANY OF ITS SECOND-
TIER-SUBCONTRACTORS AS WELL AS FINES
ASSESSED AGAINST AN INDEMNIFIED PARTY BY
A GOVERNMENTAL AUTHORITY FOR
SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-
SUBCONTRACTORS' FAILURE TO COMPLY WITH
THE SAFETY REQUIREMENTS OF THIS
AGREEMENT, ANY APPLICABLE SAFETY LAWS
OR BOTH.

ARTICLE 5. INSURANCE

### 5.1  GENERAL INSURANCE REQUIREMENTS.

(A)   Subcontractor must provide and maintain, during the
term of this Agreement (including all warranty periods),
occurrence-based insurance with coverages, unless
otherwise agreed to by Trinity, and limits of liability not
less than those shown in this Article. Any claims made
based policies must have a retroactive date no later than
the first date that Subcontractor begins any portion of
the Work. This coverage must include an Extended
Reporting Period extending for a minimum of 3 years
following immediately upon the expiration of the policy.
Subcontractor must require each Second-Tier-
Subcontractor to provide and maintain, during the term
of their respective agreements (including all warranty
periods), the insurance coverages specified as follows,
with any limits of liability determined appropriate by the
Subcontractor. All of Subcontractor's insurance must be
primary to any insurance maintained by Trinity or
Developer. Limits may be arranged through any
combination of underlying and excess or umbrella
policies. Subcontractor must pay all deductible amounts
associated with the required insurance. Subcontractor
must also timely pay the premiums for all insurance
required under this Agreement.

(B)   Prior to commencement of the Work, Subcontractor
must furnish Trinity either insurance certificate(s) on the
form attached as Attachment A (or equivalent form
satisfactory to Trinity) executed by an authorized
representative of Subcontractor's insurer or, if required

by Trinity, certified copies of insurance policies or
certified copies of insurance summaries, with
endorsements, evidencing the applicable policies,
coverages, and limits. Upon Trinity's request,
Subcontractor will also furnish Trinity similar evidence
of Second-Tier-Subcontractors' policies, coverages, and
limits. Trinity's receipt of or failure to object to any
insurance certificates does not release or diminish in any
manner the liability or obligations of Subcontractor, or
constitute a waiver of any of the insurance requirements
under this Agreement. Replacement certificates of
insurance evidencing continuation of Subcontractor's
coverage must be furnished to Trinity at least 30 days
prior to the expiration of the current policies. The limits
of liability shown for each type of insurance coverage to
be provided by the Subcontractor pursuant to this
Agreement are minimum limits only and do not limit
Subcontractor's liability or obligations.

(C)   Each Subcontractor and Second-Tier-Subcontractor
policy must be endorsed to provide a waiver of each
insurer's rights of subrogation against each Indemnified
Party. Each of these policies, other than workers'
compensation, must name each Indemnified Party as
additional insureds, using ISO Additional Insured
Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND
CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10
01 or an endorsement providing equivalent coverage to
the Indemnified Parties, for liability arising out of the
Work, and must include a cross-liability and severability
of interests clause. No policy may contain any limitation
on the scope of protection afforded any of the additional
insureds. Each Subcontractor and Second-Tier-
Subcontractor policy shall be endorsed to state that
coverage cannot be cancelled or non-renewed except
after 30 days prior written notice, or 10 days in the case
of cancellation for non-payment of premium, has been
given to Trinity. Subcontractor's insurance must provide
coverage whether Subcontractor's liability arises out of
the operations of Subcontractor or any Second-Tier-
Subcontractor in connection with the Work.

(D)   Unless otherwise agreed in writing by Trinity, all of
Subcontractor's and Second-Tier-Subcontractors'
insurance must be written with insurers licensed in the
jurisdiction where the Work is to be performed, and the
insurers must maintain a current A.M. Best rating of at
least "A –."

(E)   Failure of Subcontractor to comply with the
requirements of this Article, including the failure to
furnish and maintain evidence of Subcontractor's or any
Second-Tier-Subcontractor's insurance as required is a
material breach of this Agreement. If Subcontractor fails
to comply with requirements of this Article, then in
addition to its other remedies, Trinity may direct
Subcontractor to suspend performance of the Work at
the Site until Subcontractor demonstrates compliance.

7



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of ~~June 22~~ , 2012, (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Mario Sinacola & Sons Excavating, Inc. _____ (Subcontractor), a Michigan Corporation _____ (state type of company), with principal offices at 10950 Research Road, Frisco, Texas 75033 _____ .

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the

performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "lump-sum contract" pursuant to Rule 3.291(a)(8) of the Texas Administrative Code and an "exempt contract" pursuant to Rule 3.291(a)(5) of the Texas Administrative Code. For Texas sales and use tax purposes, the Agreement is governed by Texas Sales and Use Tax Statue ¹151.311 and Rule 3.291(c) or (d) of the Texas Administrative Code. Therefore, this Agreement is a unit price, lump-sum contract.

(E) The unit price lump-sum Agreement amount is for new construction (a nontaxable service) and is validated as an exempt contract upon Subcontractor's receipt of Trinity's Texas Exemption Certificate to Subcontractor



-4

TRINITY 033119   CONFIDENTIAL

**EXHIBIT
E.8**

Blumberg No. 5208

## EXHIBIT A-1

issued pursuant to Texas Administrative Code Rule 3.291(c)(1) and Rule 3.287.

(C) Subcontractor will in turn issue its own Texas Exemption Certificates to validate subcontracts as exempt contracts to Subcontractor's lower tiers who will issue their own Texas Resale Certificate to Second-Tier-Subcontractors.

(D) Subcontractor will issue its own Texas Exemption Certificates and Second-Tier-Subcontractors will issue their own Texas Exemption Certificates in lieu of tax to vendors for all purchases of:

(1) Tangible personal property qualifying as direct materials permanently incorporated into realty pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(A);

(2) Tangible personal property qualifying as consumable items that are necessary and essential to the contract and are completely consumed at the Site pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(B) and ' 151.311(b) and (d); or

(3) Taxable services pursuant to Texas Administrative Code Rule 3.291(a)(5) and (c)(4)(C)(i) and (c)(4)(C)(ii).

(E) Subcontractor and Second-Tier-Subcontractors are liable for Texas sales/use tax due on consumable supplies not meeting (D)(2) above, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services not meeting (D)(2) above and all other taxable purchases not otherwise exempt that were used for the performance and completion of this Agreement's Scope of Work. The liability for this tax rests with the Subcontractor and Second-Tier-Subcontractors, respectively. The liability for tax owed on nonexempt items by Subcontractor for Second-Tier-Subcontractors does no become Trinity's responsibility.

(F) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the

Agreement # _____
LDJ Segment _____

Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrate to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:
(1) SOLE NEGLIGENCE;
(2) PARTIAL NEGLIGENCE;
(3) CONCURRENT NEGLIGENCE;
(4) STRICT LIABILITY; OR
(5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-

5

**EXHIBIT A-1**

SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages including reasonable attorney's fees and court costs for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages,

Agreement # _____
LBJ Segment _____

compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

### 4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

   (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

   (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

### 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

   (1) to accept them "as is,"
   (2) that this use is at the sole risk of Subcontractor, and
   (3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B) THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.

6

TRINITY 033121     CONFIDENTIAL

# EXHIBIT A-1

Agreement # _____
LBJ Segment _____

### 4.5 INDEMNITY FOR SAFETY VIOLATIONS.

SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

### ARTICLE 5. INSURANCE

### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C) Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.



7

# EXHIBIT A-1

Agreement # _____
1.3J Segment _____

5.2    <u>REQUIRED COVERAGE.</u> Insurance policies must contain at a minimum the following coverages and limits:

(A)   COVERAGE PROVISIONS                          LIMITS
      (in addition to 5.1 above)

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|
| (B) WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory | Statutory |

    (1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers
        Liability Act coverage & Defense Base Act, if applicable.
    (2) Coverage must include all Partners, Proprietors, and Executive Officers.
    (3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

| | | | | |
|---|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |

    (4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

| | | | | |
|---|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 | $5,000 |

    (7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
    (8) Coverage must include:
       (a)  Broad form property damage, product/completed operations (minimum 3 years past completion of project),
         independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations
         under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | | |
|---|---|---|---|---|
| (1) Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| (2) Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 | $500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| or | | | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |

    (5) Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

| | | | | |
|---|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 | $10,000,000 |

(G) SUBCONTRACTOR'S EQUIPMENT

    (1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from
        Trinity.
    (2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-
        Subcontractors and their respective employees.
    (3) Full replacement value of tools and equipment.

8



TRINITY 033123    CONFIDENTIAL

EXHIBIT A-1

Agreement # 7.18.12.6_000008
LBJ Segment: 3

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of July 23, 2012 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Renaissance Contractors Partnership (Subcontractor), a Texas partnership, with principal offices at 3575 Lone Star Circle Suite 418, Fort Worth TX 76177.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the

performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Work done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY SUBCONTRACTOR ON OR NEAR THE PROJECT, THE SUBCONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY TRINITY. THE SUBCONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) Trinity will pay Subcontractor for the Work, and Subcontractor will accept as full compensation, the amount stated in Exhibit A2. Payments will be made in the manner provided in the Agreement Documents.

(B) This Agreement is intended to be treated as a "lump-sum contract" pursuant to Rule 3.291(a)(8) of the Texas Administrative Code and an "exempt contract" pursuant to Rule 3.291(a)(5) of the Texas Administrative Code. For Texas sales and use tax purposes, the Agreement is governed by Texas Sales and Use Statue §151.311 and Rule 3.291(c) or (d) of the Texas Administrative Code. Therefore, this Agreement is a unit price, lump-sum contract.

(B) The unit price lump-sum Agreement amount is for new construction (a nontaxable service) and is validated as an exempt contract upon Subcontractor's receipt of Trinity's Texas Exemption Certificate to Subcontractor

4





EXHIBIT
E.9

EXHIBIT A-1

issued pursuant to Texas Administrative Code Rule 3.291(e)(1) and Rule 3.287.

(C) Subcontractor will in turn issue its own Texas Exemption Certificates to validate subcontracts as exempt contracts to Subcontractor's lower tiers who will issue their own Texas Resale Certificate to Second-Tier-Subcontractors.

(D) Subcontractor will issue its own Texas Exemption Certificates and Second-Tier-Subcontractors will issue their own Texas Exemption Certificates in lieu of tax to vendors for all purchases of:

(1) Tangible personal property qualifying as direct materials permanently incorporated into realty pursuant to Texas Administrative Code Rule 3.291(a)(5) and (e)(4)(A);

(2) Tangible personal property qualifying as consumable items that are necessary and essential to the contract and are completely consumed at the Site pursuant to Texas Administrative Code Rule 3.291(a)(5) and (e)(4)(B) and §151.311(b) and (d); or

(3) Taxable services pursuant to Texas Administrative Code Rule 3.291(a)(5) and (e)(4)(C)(i) and (e)(4)(C)(ii).

(E) Subcontractor and Second-Tier-Subcontractors are liable for Texas sales/use tax due on consumable supplies not meeting (D)(2) above, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services not meeting (D)(2) above and all other taxable purchases not otherwise exempt that were used for the performance and completion of this Agreement's Scope of Work. The liability for this tax rests with the Subcontractor and Second-Tier-Subcontractors, respectively. The liability for tax owed on nonexempt items by Subcontractor for Second-Tier-Subcontractors does no become Trinity's responsibility.

(F) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the

Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Subcontractor cures all breaches of the Agreement and demonstrates to Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:

(1) SOLE NEGLIGENCE;

(2) PARTIAL NEGLIGENCE;

(3) CONCURRENT NEGLIGENCE;

(4) STRICT LIABILITY; OR

(5) ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-

5





EXHIBIT A-1

Agreement # 7.18.12.6_000008
LBJ Segment: 3

SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of Trinity, Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages,

compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

   (1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

   (2) replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

   (1) to accept them "as is,"
   (2) that this use is at the sole risk of Subcontractor, and
   (3) to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B) THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.



6



EXHIBIT A-1

Agreement # 7.18.12.6_000008
LBJ Segment: 3

## 4.5 INDEMNITY FOR SAFETY VIOLATIONS.

SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

## ARTICLE 5. INSURANCE

### 5.1 GENERAL INSURANCE REQUIREMENTS.

(A) Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B) Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or

certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C) Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.





EXHIBIT A-1

Agreement # 7.18.12.6_000008
LBJ Segment 3

5.2    REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)    COVERAGE PROVISIONS              **LIMITS**
(in addition to 5.1 above)

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM | AGREEMENTS IN EXCESS OF $5MM |
|---|---|---|---|---|
| (B) WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory | Statutory |

(1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
(2) Coverage must include all Partners, Proprietors, and Executive Officers.
(3) Coverage must include All States coverage.

(C)    EMPLOYER'S LIABILITY (EL)

| | UNDER $150,000 | EXCESS OF $150,000 | EXCESS OF $1MM | EXCESS OF $5MM |
|---|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 | $1,000,000 |

(4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D)    COMMERCIAL GENERAL LIABILITY (CGL)

| | | | | |
|---|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 | $5,000 |

(7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
(8) Coverage must include:
(a) Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E)    BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | | |
|---|---|---|---|---|
| (1) Bodily Injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| (2) Bodily Injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 | $500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 | $250,000 |
| or | | | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |

(5) Coverage shall include all owned, non-owned and hired vehicles.

(F)    EXCESS (UMBRELLA) LIABILITY

| | | | | |
|---|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 | $10,000,000 |

(G)    SUBCONTRACTOR'S EQUIPMENT

(1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
(2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-Subcontractors and their respective employees.
(3) Full replacement value of tools and equipment.



EXHIBIT A-1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of ___ 2011 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and Stomper Demolition Co., Inc. (Subcontractor), a (Corporation), with principal offices at 3525 Liston Lane, Euless, TX 76040

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of JH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

NOW, THEREFORE, in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the

Agreement # _____
LBJ Segment _____

performance of this Agreement. Subcontractor will provide copies of the information contained in these files to Trinity upon request.

(E) Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Services done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY CONTRACTOR ON OR NEAR THE PROJECT, THE CONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY THE TRINITY. THE CONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (12) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

(1) "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This

4



EXHIBIT
E-10



EXHIBIT A-1

separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward

satisfactorily completing the Work, the Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to the Trinity's reasonable satisfaction that Subcontractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Contractors cures all breaches of the Agreement and demonstrates to the Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY

5

EXHIBIT A-1

INDEMNIFIED PARTY'S:

    (1)  PARTIAL NEGLIGENCE; or
    (2)  CONCURRENT NEGLIGENCE.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

    (1)  secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

    (2)  replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:

    (1)  to accept them "as is",
    (2)  that this use is at the sole risk of Subcontractor, and
    (3)  to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

(B)  THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON THE PARTIAL NEGLIGENCE OF AN INDEMNIFIED PARTY.

4.5  INDEMNITY FOR SAFETY VIOLATIONS. SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.

4.6  (RESERVED)

4.7  (RESERVED)

ARTICLE 5. INSURANCE

5.1  GENERAL INSURANCE REQUIREMENTS.

(A)  Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by the Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B)  Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form

satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C)  Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy must provide a minimum of 30 days written Notice by the insurer to Trinity prior to the cancellation, non-renewal, or material change of any insurance referred to herein. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D)  Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E)  Failure of Subcontractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

EXHIBIT A-1

5.2    REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)   COVERAGE PROVISIONS                                    LIMITS
       (in addition to 5.1 above)

|  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|
| (B)   WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory |

(1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
(2) Coverage must include all Partners, Proprietors, and Executive Officers.
(3) Coverage must include All States coverage.

(C)   EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1) | Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2) | Disease -- Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3) | Disease -- Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

(4)   Coverage must include all Partners, Proprietors, and Executive Officers.

(D)   COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1) | General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2) | Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3) | Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4) | Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5) | Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6) | Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

(7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
(8) Coverage must include:
   (a)   Broad form property damage, product/completed operations, independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E)   BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1) | Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2) | Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3) | Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
| | or | | | |
| (4) | Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

(5)   Coverage shall include all owned, non-owned and hired vehicles.

(F)   EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1) | In excess of WC, CGL, & AL above | N/A | $1,000,000 | $2,000,000 |

(G)   SUBCONTRACTOR'S EQUIPMENT

(1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
(2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-Subcontractors and their respective employees.
(3) Full replacement value of tools and equipment.

8

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of     January 31, 2011 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 200, Dallas, Texas 75240 (Trinity), and Texas Shafts Group, Inc. (Contractor), with principal offices at Forth Worth.

### RECITALS

(A) Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B) Trinity and Contractor wish to enter into an agreement in which Contractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A) Contractor agrees to furnish all materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Contractor must also carry out all obligations, duties, and responsibilities imposed on Contractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Contractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Contractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Contractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B) Contractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Contractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C) Contractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D) Contractor must maintain files containing all deliverable documentation including calculations, assumptions,

interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Contractor will provide copies of the information contained in these files to Trinity upon request.

(E) Contractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Contractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Contractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Contractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Contractor whatsoever for any Services done after date of termination. Any representative authorized by Developer may audit any and all records of Contractor for the sole purpose of determining whether there has been compliance with this Section.

(F) IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY CONTRACTOR ON OR NEAR THE PROJECT, THE CONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY THE TRINITY. THE CONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A) This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (12) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

  (1) "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Contractor or its Subcontractors to perform the

4



EXHIBIT
E.11

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

Work but which are not physically incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Contractor and its Subcontractors. This separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Contractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Contractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Contractor and Contractor's lower tiers will issue their own Texas Resale Certificate to Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Contractor's Change Order(s), if any, and billings to Trinity will clearly separate Contractor's pricing for all labor charges defined in Paragraph (A) above from Contractor's pricing for Direct Materials. If Contractor's billing includes a charge for Contractor's Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Contractor is responsible for the payment of Texas sales and use tax on all Contractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Contractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Contractor to its lower tier Subcontractors.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

**ARTICLE 3. SCHEDULE**

(A) Contractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Contractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Contractor fails to timely perform or complete the Work or fails to make reasonable progress toward satisfactorily completing the Work, the Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Contractor, may:

(1) defer all payments payable under this Agreement until the Contractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to the Trinity's reasonable satisfaction that Contractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that the Contractor speed up the Work;

(3) assign the execution of all or part of the Work to another Subcontractor, execute the Work by its own means or both at the Contractor's cost and expense and on its behalf;

(4) Notify the Contractor that the Agreement will be terminated unless Contractors cures all breaches of the Agreement and demonstrates to the Trinity's reasonable satisfaction that the Contractor will complete the Work in a satisfactory manner and in precise due time.

**ARTICLE 4. INDEMNITY**

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Contractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

**(A) CONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.**

**(B) CONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS**

5

EXHIBIT A-1

CAUSED BY THE PARTIAL OR CONCURRENT NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES.

(C) CONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:

(1) PARTIAL NEGLIGENCE;
(2) CONCURRENT NEGLIGENCE.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE CONTRACTOR, ITS SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE CONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Contractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity will reimburse Contractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Contractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Contractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Contractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Contractor or Contractor's Subcontractors or suppliers that is in any way related to this Agreement.

(I) Contractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs

arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Contractor, its Subcontractors, or both, in the performance of the Work.

(J) If Contractor's duty to defend an Indemnified Party under Section 4 is triggered, then Contractor's selection of counsel is subject to approval by Trinity.

(K) CONTRACTOR'S DUTIES UNDER SECTION 4 WILL SURVIVE THE COMPLETION OR TERMINATION OF THIS AGREEMENT.

(L) If after Contractor has both defended any such claim and such claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity shall reimburse Contractor for Trinity's proportionate damages, costs (including court costs and costs of defense) and expenses for which it is comparatively responsible.

(M) This indemnification obligation shall not be limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Contractor, or any Subcontractor. In any and all Claims against an Indemnified Party by any employee of Contractor, any Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Contractor, or any such Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Contractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Contractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Contractor will promptly either:

(1) secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or

(2) replace the Materials, combination or process, or modify the same to become non-infringing, all at

6

EXHIBIT A-1 

Contractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Contractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

## 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A)   If Contractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Contractor agrees:

    (1)   to accept them "as is",
    (2)   that this use is at the sole risk of Contractor, and
    (3)   to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

(B)   **THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

**4.5   INDEMNITY FOR SAFETY VIOLATIONS. CONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY CONTRACTOR OR ITS SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF CONTRACTOR OR ANY OF ITS SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR CONTRACTOR'S AND/OR ITS SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.**

4.6   (RESERVED)

4.7   (RESERVED)

## ARTICLE 5. INSURANCE

## 5.1 GENERAL INSURANCE REQUIREMENTS.

(A)   Contractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by the Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Contractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Contractor must require each Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the Contractor. All of Contractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Contractor must pay all deductible amounts associated with the required insurance. Contractor must also timely pay the premiums for all insurance required under this Agreement.

(B)   Prior to commencement of the Work, Contractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Contractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Contractor will also furnish Trinity similar evidence of Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Contractor does not release or diminish in any manner the liability or obligations of Contractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Contractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Contractor pursuant to this Agreement are minimum limits only and do not limit Contractor's liability or obligations.

(C)   Each Contractor and Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Contractor and Subcontractor policy must provide a minimum of 30 days written Notice by the insurer to Trinity prior to the

EXHIBIT A-1

Agreement # _____
LBJ Segment _____

cancellation, non-renewal, or material change of any insurance referred to herein. Contractor's insurance must provide coverage whether Contractor's liability arises out of the operations of Contractor or any Subcontractor in connection with the Work.

(D) Unless otherwise agreed in writing by Trinity, all of Contractor's and Subcontractor's insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E) Failure of Contractor to comply with the requirements of this Article, including the failure to furnish and maintain evidence of Contractor's or any Subcontractor's insurance as required is a material breach of this Agreement. If Contractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Contractor to suspend performance of the Work at the Site until Contractor demonstrates compliance.

{REST OF THE PAGE INTENTIONALLY LEFT BLANK}

8



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

5.2   REQUIRED COVERAGE. Insurance policies must contain at a minimum the following coverages and limits:

(A)   COVERAGE PROVISIONS                      LIMITS
      (in addition to 5.1 above)

|  | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|

(B)   WORKERS' COMPENSATION (WC)    Statutory        Statutory        Statutory

    (1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
    (2) Coverage must include all Partners, Proprietors, and Executive Officers.
    (3) Coverage must include All States coverage.

(C)   EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

    (4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D)   COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

    (7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
    (8) Coverage must include:
        (a) Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Contractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E)   BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1) Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2) Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
|        or | | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

    (5) Coverage shall include all owned, non-owned and hired vehicles.

(F)   EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G)   CONTRACTOR'S EQUIPMENT

    (1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
    (2) Covering all tools and construction equipment owned, leased, or borrowed by Contractor, Subcontractors and their respective employees.
    (3) Full replacement value of tools and equipment.

9



EXHIBIT A-1

## SUBCONTRACT AGREEMENT

This is an Agreement dated as of *5/2*, 2011 (Effective Date), between Trinity Infrastructure, LLC, a Texas limited liability company with principal offices at 5520 I-635 East, Suite 150, Dallas, Texas 75240 (Trinity), and *Weir Bros, Inc.* (Subcontractor), a *Texas* (state type of company), with principal offices at *P.O. Box 541793 Dallas, Tex 75354*

### RECITALS

(A)  Trinity has entered into a contract with LBJ Infrastructure Group, LLC (Developer), for the construction of IH 635 Managed Lanes Project in Dallas County, Texas (Project or Site).

(B)  Trinity and Subcontractor wish to enter into an agreement in which Subcontractor will furnish certain Work in connection with the Project.

**NOW, THEREFORE,** in consideration of the mutual agreements set forth in the Agreement Documents, the Parties agree as follows:

### AGREEMENT

### ARTICLE 1. SCOPE OF WORK

(A)  Subcontractor agrees to furnish all permits, materials, labor, construction equipment, tools, supplies, and services necessary to properly complete the Work described in Exhibit A. Subcontractor must also carry out all obligations, duties, and responsibilities imposed on Subcontractor by the Agreement Documents. Details which are not indicated by the Specifications and Drawings must be provided by the Subcontractor at no extra cost, if those details are necessary to complete the general intent of the Agreement or Agreement Documents. Subcontractor will not be relieved of any obligations or responsibilities related to the Work except by Trinity's written consent. Subcontractor agrees to participate in meetings between Developer and Trinity concerning matters pertaining to this Agreement or its Work.

(B)  Subcontractor must furnish to Trinity during and upon completion of the Work one legible copy of all Work, e.g. calculations, diagrams, field or other notes, technical data, designs, written procedures, prepared under the terms of this Agreement. As a condition of final acceptance, Subcontractor shall deliver an electronic copy of all these documents to Trinity. All Work prepared under this Agreement is the property of Trinity.

(C)  Subcontractor agrees that its Scope of Work, as defined in Exhibit A, is exclusive to Trinity for this Project and will not separately solicit or accept any assignment from Developer related to the Project during the term of the Agreement without Trinity's written approval.

(D)  Subcontractor must maintain files containing all deliverable documentation including calculations, assumptions, interpretations of regulations, sources of information, and other raw data required for the performance of this Agreement. Subcontractor will

Agreement # _____
LBJ Segment _____

provide copies of the information contained in these files to Trinity upon request.

(E)  Subcontractor is not permitted to communicate with Developer, or federal, state, or local agencies, relative to Work under this Agreement without prior written consent by the Trinity. No principal, partner, director, employee or agent of Subcontractor may give or receive any commission, fee, rebate, gift or entertainment of significant cost or value in connection with the Work, or enter into any business arrangement with any director, employee or agent of Trinity or any affiliate, other than as a representative of Trinity or its affiliate, without prior written Notice to Trinity. Subcontractor must promptly Notify Trinity of any violation of this Section and any consideration received as a result of a violation must be paid over or credited to Developer. Additionally, if any violation of this Section occurring prior to the date of this Agreement resulted directly or indirectly in Trinity's consent to enter into this Agreement with Subcontractor, Trinity may, at Trinity's sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to Subcontractor whatsoever for any Services done after date of termination. Any representative authorized by Developer may audit any and all records of Subcontractor for the sole purpose of determining whether there has been compliance with this Section.

(F)  IF PRE-EXISTING HAZARDOUS MATERIALS ARE ENCOUNTERED BY CONTRACTOR ON OR NEAR THE PROJECT, THE CONTRACTOR WILL TAKE ALL NECESSARY MEASURES AND PRECAUTIONS NOT TO DISTURB AND TO AVOID THOSE SUBSTANCES IN FULL COMPLIANCE WITH THE CDA AND WILL NOTIFY THE TRINITY IMMEDIATELY. HAZARDOUS MATERIAL REMEDIATION WILL BE PERFORMED BY A THIRD-PARTY SELECTED BY THE TRINITY. THE CONTRACTOR IS ALWAYS RESPONSIBLE FOR ITS OWN RELEASES OF HAZARDOUS MATERIALS.

### ARTICLE 2. AGREEMENT PRICE

(A)  This Agreement is intended to be treated as a "separated contract" for Texas sales and use tax purposes pursuant to Rule 3.291 (a) (12) of the Texas Administrative Code. Therefore, the Agreement Price must be separated as follows:

(1)  "X" Dollars is the unit price separated Agreement amount for all labor, including labor installation and/or fabrication, services, "end user" consumables and other charges, including Texas sales and use tax on those, supplies, tools and construction equipment consumed or used by Subcontractor or its Second-Tier-Subcontractors to perform the Work but which are not physically incorporated into the Project and including sales and use tax on third party rental charges for construction equipment used by Subcontractor and its Second-Tier-Subcontractors. This

4



EXHIBIT
E.12
EXHIBIT A-1

Agreement # _____
LBJ Segment _____

separated price does not include any charges for Direct Materials; and

(2) "X" Dollars, including Texas sales and use taxes, is the unit price separated Agreement amount for all Direct Materials which will constitute the "agreed contract price of materials incorporated into the realty," as defined in Rule 3.291 (a) (1) of the Texas Administrative Code, provided that in no event shall such separated sum contract amount for Direct Materials be less than Subcontractor's actual cost of the Direct Materials. This separated price does not include any labor, installation, fabrication or service labor charges. The Texas sales and use tax rate for Direct Materials will be based on where the Materials are incorporated into the Project. Subcontractor's detailed monthly invoice will breakout and clearly identify the Texas sales and use tax component included in this Paragraph (2) for all Direct Materials.

(B) Subcontractor and Subcontractor's lower tiers will issue their own Texas Resale Certificate to Second-Tier-Subcontractors for all purchases of permanently installed Direct Materials and will purchase these Materials tax free for resale. In addition to the separated Agreement, all of Subcontractor's Change Order(s), if any, and billings to Trinity will clearly separate Subcontractor's pricing for all labor charges defined in Paragraph (A) above from Subcontractor's pricing for Direct Materials. If Subcontractor's billing includes a charge for Second-Tier-Subcontractor(s), these charges will also show separation for skills and labor charges from charges for Direct Materials. Subcontractor is responsible for the payment of Texas sales and use tax on all Subcontractor's end user purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases. Subcontractor will submit a notarized monthly Texas sales and use tax report to Trinity detailing the amount of Texas sales and use tax it has paid on purchased consumable supplies, third party rentals and leases, equipment parts/accessories, tools/accessories, taxable services and all other taxable purchases that were used for the performance and completion of this Agreement's Scope of Work.

(C) This Article 2 will be incorporated into all subcontracts issued by Subcontractor in lower tier subcontracts.

(D) Payments will be made in the manner provided in the Agreement Documents. This Agreement may be modified by an approved Change Order to reflect changes to the Scope of Work.

## ARTICLE 3. SCHEDULE

(A) Subcontractor represents that it can and will perform and complete the Work in accordance with the Schedule of the Work in Exhibit A1. Subcontractor acknowledges that the timely performance of the Work is essential to the timely completion of the Project.

(B) If Subcontractor fails to timely perform or complete the Work or fails to make reasonable progress toward

satisfactorily completing the Work, the Trinity, at its option and in its sole discretion and without any prejudice to its other rights and remedies concerning delays and non performance of the Subcontractor, may:

(1) defer all payments payable under this Agreement until Subcontractor is in compliance with all performance and delivery requirements related to the Work and demonstrates to the Trinity's reasonable satisfaction that Subcontractor will complete the Work in strict compliance with the terms of this Agreement;

(2) request in writing that Subcontractor speed up the Work;

(3) assign the execution of all or part of the Work to another subcontractor, execute the Work by its own means or both at Subcontractor's cost and expense and on its behalf;

(4) Notify Subcontractor that the Agreement will be terminated unless Contractors cures all breaches of the Agreement and demonstrates to the Trinity's reasonable satisfaction that Subcontractor will complete the Work in a satisfactory manner and in precise due time.

## ARTICLE 4. INDEMNITY

4.1 INDEMNIFICATION. In consideration of $10.00 and other good and valuable consideration, the amount of which is included in the Agreement Price, Subcontractor agrees to the following indemnification obligations to the fullest extent permitted by Laws.

4.2 GENERAL INDEMNITY.

(A) SUBCONTRACTOR AGREES TO DEFEND AND INDEMNIFY TRINITY, DEVELOPER, TXDOT AND THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "INDEMNIFIED PARTIES") AGAINST ALL LIABILITY, COSTS, CLAIMS (INCLUDING BUT NOT LIMITED TO THOSE BASED IN NEGLIGENCE), INJURIES AND DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS OF DEFENSE, ARISING OUT OF OR IN ANY WAY RELATED TO THE WORK.

(B) SUBCONTRACTOR MUST DEFEND THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS CAUSED BY THE PARTIAL OR CONCURRENT, BUT NOT SOLE, NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, THEIR STRICT LIABILITY OR ANY OTHER THEORY OF LIABILITY.

(C) SUBCONTRACTOR MUST INDEMNIFY THE INDEMNIFIED PARTIES UNDER THIS



EXHIBIT A-1

AGREEMENT REGARDLESS OF WHETHER THE INJURY OR DAMAGE SUSTAINED IS ALLEGED TO RESULT FROM ANY INDEMNIFIED PARTY'S:

    (1)  PARTIAL NEGLIGENCE;
    (2)  CONCURRENT NEGLIGENCE;
    (3)  STRICT LIABILITY; OR
    (4)  ANY OTHER THEORY OF LIABILITY.

(D) THESE INDEMNITY OBLIGATIONS APPLY TO ANY CLAIM ARISING OUT OF DAMAGE TO PROPERTY OR INJURY OR DEATH TO ANY PERSON, INCLUDING ANY OF THE INDEMNIFIED PARTIES, THE SUBCONTRACTOR, ITS SECOND-TIER-SUBCONTRACTORS AND MATERIAL SUPPLIERS, AND ANY THIRD PARTIES.

(E) ANY REMEDY PROVIDED TO THE SUBCONTRACTOR'S EMPLOYEES UNDER ANY APPLICABLE WORKERS' COMPENSATION ACT MAY NOT CIRCUMVENT THE OBLIGATIONS DESCRIBED IN THIS SECTION.

(F) If, after Subcontractor has both defended a claim and the claim has been disposed of, it is judicially determined that the injury, death or damage was caused by the proportionate responsibility of the Trinity, the Trinity will reimburse Subcontractor for Trinity's proportionate share of the damages for which it is comparatively responsible.

(G) Any failure of Subcontractor to obtain the required insurance as described in Section 5 will not relieve its indemnity obligations, and such obligations will extend to the full amount of any damages, loss or liability described herein. Subcontractor's indemnity obligations are not limited to the amount of insurance obtained or required.

(H) Subcontractor will not create, use or dispose of any hazardous waste, chemicals or substances in an unlawful or hazardous manner and is solely responsible for the lawful, proper and safe handling, storage, and removal of all hazardous waste, chemicals and substances which are introduced to or removed from the Work site by Subcontractor's operations. Hazardous waste, chemicals or substances, means any materials or substances that are prohibited or which use is in any manner or storage of hazardous waste, chemicals or substances by Subcontractor or Second-Tier-Subcontractors or suppliers that is in any way related to this Agreement.

(I) Subcontractor must defend and indemnify Trinity and Developer and their individual officers and agents from any and all claims, royalties, damages, and costs arising out of any infringement or alleged infringement of any patents or for the misuse of any patented article by Subcontractor, Second-Tier-Subcontractors, or both, in the performance of the Work.

(J) If Subcontractor's duty to defend an Indemnified Party under Article 4 is triggered, then Subcontractor's selection of counsel is subject to approval by Trinity.

(K) Subcontractor's duties under Article 4, will survive termination of this Agreement.

(L) This indemnification obligation is not limited in any way by any limitation on the amount or type of insurance coverage, if any, provided by Developer, Trinity, Subcontractor, or any other entity. In any and all Claims against an Indemnified Party by any employee of Subcontractor, any Second-Tier-Subcontractor, any person, or organization, directly or indirectly, employed by any of them to perform or furnish any of the Work, or anyone for whose acts any of them may be liable, this indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Subcontractor, or any such Second-Tier-Subcontractor, or other person or organization under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## 4.3 INTELLECTUAL PROPERTY INDEMNITY.

(A) Subcontractor must defend, indemnify, and hold harmless each Indemnified Party from and against any and all Claims arising out of any claim of infringement or improper use of any patent, trade secret, proprietary right, copyright or other intellectual property right in connection with the Work.

(B) If any Claim materially impairs performance of the Work, then Subcontractor, at its sole expense, will timely procure the right to continue its performance of the Work in accordance with the approved schedule.

(C) Further, if an Indemnified Party should be enjoined from the use of any Materials, combination or process covered by this Agreement, then Subcontractor will promptly either:

    (1)  secure termination of the injunction and procure for the affected Indemnified Party the right to use the Materials, combination or process, without obligation or liability, or
    (2)  replace the Materials, combination or process, or modify the same to become non-infringing, all at Subcontractor's sole expense, but subject to all the requirements of the Agreement. Notwithstanding the foregoing, Subcontractor has no obligation or liability under this patent indemnity provision with respect to Work manufactured in accordance with designs, processes, or methods specifically required by Trinity.

## 4.4 INDEMNITY FOR BORROWED CONSTRUCTION EQUIPMENT.

(A) If Subcontractor, by rental, loan or otherwise, makes use of any of Trinity's or Developer's tools, construction equipment, scaffolding, or other appliances, Subcontractor agrees:



EXHIBIT A-1

(1)  to accept them "as is",
(2)  that this use is at the sole risk of Subcontractor, and
(3)  to defend, indemnify and hold Indemnified Party harmless from and against all Claims of every nature arising out of its condition or use.

**(B)  THIS INDEMNITY APPLIES AND INCLUDES CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, EVEN IF THE MATTER WITH RESPECT TO WHICH INDEMNITY IS SOUGHT IS ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR FAULT OF AN INDEMNIFIED PARTY.**

**4.5  INDEMNITY FOR SAFETY VIOLATIONS. SUBCONTRACTOR MUST DEFEND, INDEMNIFY AND HOLD HARMLESS EACH INDEMNIFIED PARTY FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO ANY FAILURE BY SUBCONTRACTOR OR ITS SECOND-TIER-SUBCONTRACTORS TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT AND ALL APPLICABLE SAFETY LAWS. CLAIMS SUBJECT TO THIS SECTION 4.5 INCLUDE, WITHOUT LIMITATION, CLAIMS BASED ON ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO NEGLIGENCE, ARISING OUT OF BODILY INJURY OR DEATH OF EMPLOYEES OF SUBCONTRACTOR OR ANY OF ITS SECOND-TIER-SUBCONTRACTORS AS WELL AS FINES ASSESSED AGAINST AN INDEMNIFIED PARTY BY A GOVERNMENTAL AUTHORITY FOR SUBCONTRACTOR'S AND/OR ITS SECOND-TIER-SUBCONTRACTORS' FAILURE TO COMPLY WITH THE SAFETY REQUIREMENTS OF THIS AGREEMENT, ANY APPLICABLE SAFETY LAWS OR BOTH.**

4.6  (RESERVED)

4.7  (RESERVED)

**ARTICLE 5. INSURANCE**

5.1  GENERAL INSURANCE REQUIREMENTS.

(A)  Subcontractor must provide and maintain, during the term of this Agreement (including all warranty periods), occurrence-based insurance with coverages, unless otherwise agreed to by the Trinity, and limits of liability not less than those shown in this Article. Any claims made based policies must have a retroactive date no later than the first date that Subcontractor begins any portion of the Work. This coverage must include an Extended Reporting Period extending for a minimum of 3 years following immediately upon the expiration of the policy. Subcontractor must require each Second-Tier-Subcontractor to provide and maintain, during the term of their respective agreements (including all warranty periods), the insurance coverages specified as follows, with any limits of liability determined appropriate by the

Agreement # _____
LBJ Segment _____

Subcontractor. All of Subcontractor's insurance must be primary to any insurance maintained by Trinity or Developer. Limits may be arranged through any combination of underlying and excess or umbrella policies. Subcontractor must pay all deductible amounts associated with the required insurance. Subcontractor must also timely pay the premiums for all insurance required under this Agreement.

(B)  Prior to commencement of the Work, Subcontractor must furnish Trinity either insurance certificate(s) on the form attached as Attachment A (or equivalent form satisfactory to Trinity) executed by an authorized representative of Subcontractor's insurer or, if required by Trinity, certified copies of insurance policies or certified copies of insurance summaries, with endorsements, evidencing the applicable policies, coverages, and limits. Upon Trinity's request, Subcontractor will also furnish Trinity similar evidence of Second-Tier-Subcontractors' policies, coverages, and limits. Trinity's receipt of or failure to object to any insurance certificates or policies submitted by Subcontractor does not release or diminish in any manner the liability or obligations of Subcontractor, or constitute a waiver of any of the insurance requirements under this Agreement. Replacement certificates of insurance evidencing continuation of Subcontractor's coverage must be furnished to Trinity at least 30 days prior to the expiration of the current policies. The limits of liability shown for each type of insurance coverage to be provided by the Subcontractor pursuant to this Agreement are minimum limits only and do not limit Subcontractor's liability or obligations.

(C)  Each Subcontractor and Second-Tier-Subcontractor policy must be endorsed to provide a waiver of each insurer's rights of subrogation against each Indemnified Party. Each of these policies, other than workers' compensation, must name each Indemnified Party as additional insureds, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 10 01 AND CG 20 37 10 01 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the Indemnified Parties, for liability arising out of the Work, and must include a cross-liability and severability of interests clause. No policy may contain any limitation on the scope of protection afforded any of the additional insureds. Each Subcontractor and Second-Tier-Subcontractor policy must provide a minimum of 30 days written Notice by the insurer to Trinity prior to the cancellation, non-renewal, or material change of any insurance referred to herein. Subcontractor's insurance must provide coverage whether Subcontractor's liability arises out of the operations of Subcontractor or any Second-Tier-Subcontractor in connection with the Work.

(D)  Unless otherwise agreed in writing by Trinity, all of Subcontractor's and Second-Tier-Subcontractors' insurance must be written with insurers licensed in the jurisdiction where the Work is to be performed, and the insurers must maintain a current A.M. Best rating of at least "A -."

(E)  Failure of Subcontractor to comply with the requirements of this Article, including the failure to

7



EXHIBIT A-1

Agreement # _____
LBJ Segment _____

furnish and maintain evidence of Subcontractor's or any Second-Tier-Subcontractor's insurance as required is a material breach of this Agreement. If Subcontractor fails to comply with requirements of this Article, then in addition to its other remedies, Trinity may direct Subcontractor to suspend performance of the Work at the Site until Subcontractor demonstrates compliance.

5.2    <u>REQUIRED COVERAGE.</u> Insurance policies must contain at a minimum the following coverages and limits:

(A)    COVERAGE PROVISIONS            <u>LIMITS</u>
       (in addition to 5.1 above)

| | AGREEMENTS UNDER $150,000 | AGREEMENTS IN EXCESS OF $150,000 | AGREEMENTS IN EXCESS OF $1MM |
|---|---|---|---|
| (B) WORKERS' COMPENSATION (WC) | Statutory | Statutory | Statutory |

    (1) Coverage must include USL&H, Jones Act, Outer Continental Shelf Land Act, Maritime & Federal Employers Liability Act coverage & Defense Base Act, if applicable.
    (2) Coverage must include all Partners, Proprietors, and Executive Officers.
    (3) Coverage must include All States coverage.

(C) EMPLOYER'S LIABILITY (EL)

| | | | |
|---|---|---|---|
| (1) Each Accident | $ 500,000 | $1,000,000 | $1,000,000 |
| (2) Disease – Policy Limit | $ 500,000 | $1,000,000 | $1,000,000 |
| (3) Disease – Each Employee | $ 500,000 | $1,000,000 | $1,000,000 |

    (4) Coverage must include all Partners, Proprietors, and Executive Officers.

(D) COMMERCIAL GENERAL LIABILITY (CGL)

| | | | |
|---|---|---|---|
| (1) General Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (2) Products/Comp-Op Aggregate | $1,000,000 | $2,000,000 | $2,000,000 |
| (3) Personal/Advertising Injury | $500,000 | $1,000,000 | $1,000,000 |
| (4) Each Occurrence | $500,000 | $1,000,000 | $1,000,000 |
| (5) Fire Damage (any 1 fire) | $50,000 | $50,000 | $50,000 |
| (6) Medical Expense (any 1 person) | $5,000 | $5,000 | $5,000 |

    (7) Policy must be endorsed to provide that aggregate limits apply on a per project basis.
    (8) Coverage must include:
        (a) Broad form property damage, product/completed operations (minimum 3 years past completion of project), independent contractor's liability, blanket contractual liability covering Subcontractor's indemnity obligations under the Indemnity Article herein, coverage for hazards commonly referred to as XCU.

(E) BUSINESS AUTOMOBILE LIABILITY (AL)

| | | | |
|---|---|---|---|
| (1) Bodily injury (per person) | $ 250,000 | $ 250,000 | $ 250,000 |
| (2) Bodily injury (per accident) | $ 500,000 | $ 500,000 | $ 500,000 |
| (3) Property Damage | $ 250,000 | $ 250,000 | $ 250,000 |
|       or | | | |
| (4) Combined Single Limit | $1,000,000 | $1,000,000 | $1,000,000 |

    (5) Coverage shall include all owned, non-owned and hired vehicles.

(F) EXCESS (UMBRELLA) LIABILITY

| | | | |
|---|---|---|---|
| (1) In excess of WC, CGL, & AL above | N/A | $1,000,000 | $4,000,000 |

(G) SUBCONTRACTOR'S EQUIPMENT

    (1) Trinity must be named as a loss payee under this policy if the equipment is owned by, leased by or borrowed from Trinity.
    (2) Covering all tools and construction equipment owned, leased, or borrowed by Subcontractor, Second-Tier-Subcontractors and their respective employees.
    (3) Full replacement value of tools and equipment.



EXHIBIT A-1

# EXHIBITS F.1 TO F.12

## Certificates of Insurance

EXHIBIT A-1

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
05/14/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc. Chicago IL Office 200 East Randolph Chicago IL 60601 USA | PHONE (A/C, No, Ext): (866) 283-7122 | | FAX (A/C, No): (847) 953-5390 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Arch Insurance Company | | 11150 |
| Archer Western Contractors, LLC 2121 Avenue J Suite 103 Arlington TX 76006 USA | INSURER B: Allied World National Assurance Company | | 10690 |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

COVERAGES          CERTIFICATE NUMBER: 570040917772          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.          Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | 41PKG8901907 | 06/01/2013 | 06/01/2014 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $25,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | AUTOMOBILE LIABILITY | | | 41PKG8901907 AOS | 06/01/2013 | 06/01/2014 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| A | X ANY AUTO | | | 41CA08902007 MA ONLY | 06/01/2013 | 06/01/2014 | BODILY INJURY (Per person) | |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | HIRED AUTOS NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | |
| B | UMBRELLA LIAB X OCCUR | | | 03056149 | 06/01/2013 | 06/01/2014 | EACH OCCURRENCE | $10,000,000 |
| | X EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $10,000,000 |
| | DED RETENTION | | | | | | | |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | 41WCI8901707 | 06/01/2013 | 06/01/2014 | X WC STATU-TORY LIMITS OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) N N/A | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE-EA EMPLOYEE | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-POLICY LIMIT | $1,000,000 |
| A | Misc Liab Cvg | | | 41GPP8902100 Excess General Liability | 06/01/2013 | 06/01/2014 | Each Occurrence Aggregate | $1,000,000 $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RE: Subcontract - LBJ (RFP 50) I-35 NB; Designated Project: LBJ Express - 635 Managed Lanes; AWC Job 211102.   See attached.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC Attn: Hillary Green 5520 Lyndon B. Johnson Freeway Suite 200 Dallas TX 75240 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Aon Risk Services Central Inc. |

©1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

Holder Identifier : ABDHLMNO

Certificate No : 570040917772



EXHIBIT
F-1

EXHIBIT A-1

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/02/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| CONTRACTOR'S GENERAL AGENCY, INC<br>3535 TRAVIS STREET - SUITE 300<br>DALLAS, TEXAS 75204-1466<br>(214) 559-4887  (800) 964-4242 | PHONE (A/C, No, Ext): / FAX (A/C, No): |
| | E-MAIL ADDRESS: |
| | INSURER(S) AFFORDING COVERAGE / NAIC # |
| | INSURER A: BRITISH AMERICAN INSURANCE COMPANY |

| INSURED | INSURER B: |
|---|---|
| AUSTIN BRIDGE & ROAD, LP<br>AUSTIN ASPHALT, LP<br>6330 COMMERCE DRIVE, SUITE 150<br>IRVING, TEXAS 75063<br>(214) 596-7300 (OFFICE) | INSURER C: |
| | INSURER D: |
| | INSURER E: |
| | INSURER F: |

## COVERAGES    CERTIFICATE NUMBER: 1207    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | CGL 0104211 | 10/01/10 | 10/01/11 | EACH OCCURRENCE | $ 2,000,000 |
| | X  COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE  X  OCCUR | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 2,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 4,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 4,000,000 |
| | POLICY X  PRO-JECT  X  LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | CAL 0104211 | 10/01/10 | 10/01/11 | COMBINED SINGLE LIMIT (Ea accident) | $ 2,000,000 |
| | X  ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | X  ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X  HIRED AUTOS  X  NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB   OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY        Y / N | | | | | | WC STATU-TORY LIMITS / OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?   N/A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Austin Bridge & Road, LP Job # 610013 - RFP 26 Temporary Barrier Placing - Dallas, Texas

It is a condition of the Business Auto, General Liability, and Excess Liability Policy that LBJ Infrastructure Group, LLC, Texas Department of Transportation, Trinity Infrastructure, LLC, their subsidiaries and Affiliates and their respective officers, directors, partners, agents and employees are hereby added as additional insureds as required by the written agreement arising from the construction of the LBJ Express Project. It is a condition of the Workers Compensation, Business Auto, General Liability, and Excess Liability Policy that a waiver of subrogation has been issued in favor of LBJ Infrastructure Group, LLC, Texas Department of Transportation, Trinity Infrastructure, LLC, and their subsidiaries and Affiliates, and their respective officers, directors, partners, agents and employees as required by written agreement. It is a condition of the General Liability that the policy is primary and non-contributory as respects any other insurance in force. It is a condition of the General Liability that the policy contains a severability of interests of insureds provision. Each policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity Infrastructure, LLC.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TRINITY INFRASTRUCTURE, LLC<br>HILLARY RORTVEDT<br>5520 LYNDON B. JOHNSON FREEWAY, SUITE 200<br>DALLAS, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD



EXHIBIT
F.2

EXHIBIT A-1

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/02/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME | | |
|---|---|---|---|
| WILLIS OF TEXAS, INC. (972) 365-9800 / (800) 445-0115 <br> 15305 NORTH DALLAS PARKWAY, SUITE 1100 <br> ADDISON, TX 75001 | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: ACE AMERICAN INSURANCE COMPANY | | |
| INSURED AUSTIN BRIDGE & ROAD, LP <br> AUSTIN ASPHALT, LP <br> 6330 COMMERCE DRIVE, SUITE 150 <br> IRVING, TEXAS 75063 <br> (214) 596-7300 (OFFICE) | INSURER B: INDEMNITY INS. CO. OF NORTH AMERICA | | |
| | INSURER C: AMERICAN GUARANTEE & LIABILITY INS. CO. | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES   CERTIFICATE NUMBER: 1208   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE   OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | POLICY   PRO-JECT   LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS   NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | UMBRELLA LIAB   X OCCUR | | | AUC9139681-04 | 10/01/10 | 10/01/11 | EACH OCCURRENCE | $ 1,000,000 |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | DED   RETENTION $ | | | | | | | |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N | | | C46454108 | 10/01/10 | 10/01/11 | X WC STATU-TORY LIMITS   OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Austin Bridge & Road, LP Job # 810013 - RFP 26 Temporary Barrier Placing - Dallas, Texas

It is a condition of the Business Auto, General Liability, and Excess Liability Policy that LBJ Infrastructure Group, LLC, Texas Department of Transportation, Trinity Infrastructure, LLC, their subsidiaries and Affiliates and their respective officers, directors, partners, agents and employees are hereby added as additional insureds as required by the written agreement arising from the construction of the LBJ Express Project. It is a condition of the Workers Compensation, Business Auto, General Liability, and Excess Liability Policy that a waiver of subrogation has been issued in favor of LBJ Infrastructure Group, LLC, Texas Department of Transportation, Trinity Infrastructure, LLC, and their subsidiaries and Affiliates, and their respective officers, directors, partners, agents and employees as required by written agreement. It is a condition of the General Liability that the policy is primary and non-contributory as respects any other insurance in force. It is a condition of the General Liability that the policy contains a severability of interests of insureds provision. Each policy shall be endorsed to state that coverage cannot be cancelled or non-renewed except after 30 days prior written notice, or 10 days in the case of cancellation for non-payment of premium, has been given to Trinity Infrastructure, LLC.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TRINITY INFRASTRUCTURE, LLC <br> HILLARY RORTVEDT <br> 5520 LYNDON B. JOHNSON FREEWAY, SUITE 200 <br> DALLAS, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/08)   The ACORD name and logo are registered marks of ACORD



EXHIBIT A-1

ACORD® **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY) 10/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gregg Walther |
|---|---|
| Independent Insurance Group 3010 LBJ Freeway Ste. 920 Dallas TX 75234-7004 | PHONE (A/C, No, Ext):972-231-8277    FAX (A/C, No):972-231-8291 |
| | E-MAIL ADDRESS:lindas@indinsgrp.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A :SERVICE LLOYDS GRP | 723 |
| INSURED                    CIVIL-1 | INSURER B :Starr Surplus Line Insurance Compan | 13604 |
| Civil Works, Inc. 12200 Ford Rd #484 Dallas TX 75243 | INSURER C :United Fire & Casualty Company | 13021 |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

**COVERAGES         CERTIFICATE NUMBER: 988963328         REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| B | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY  CLAIMS-MADE X OCCUR | Y | Y | SLPG-GL01996-00 | 3/22/2013 | 3/22/2014 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | Pollution | $250,000 |
| C | **AUTOMOBILE LIABILITY** X ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS | Y | Y | 12307866 | 3/30/2013 | 3/30/2014 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB OCCUR EXCESS LIAB CLAIMS-MADE DED RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  Y (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | Y | SRZE28142-13 | 6/5/2013 | 6/5/2014 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

The checked ADDL INSR and SUBR WVD boxes refer to the following specific endorsements with copies attached:

Blanket Additional Insured Ongoing Operations with Primary and Non-Contributory CG2010 10/01
Blanket Additional Insured Completed Operations CG2037 10/01
Blanket Waiver of Subrogation CG2404 10/93
Business Auto Ultra Endorsement (Blanket Additional Insured & Waiver of Subrogation) CA7109 01/06
See Attached...

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC Attn: Legal Department 5520 LBJ Freeway #150 Dallas TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE  *Allen Spanker* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)      The ACORD name and logo are registered marks of ACORD



EXHIBIT
F.3-1



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
05/30/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| MARSH USA INC.<br>1717 Arch Street<br>Philadelphia, PA 19103-2797<br>Attn: Philadelphia.Certs@Marsh.com Fax: 212-948-0360 | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| J10905-ALL-GAWUP-13-14    CRAIG    650006    GAWU    Y    YES | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : XL Insurance America, Inc. | | 24554 |
| INSURED | INSURER B : Zurich American Insurance Company | | 16535 |
| CRAIG OLDEN, INC.<br>PO BOX 5000<br>LITTLE ELM, TX 75068 | INSURER C : American Guarantee & Liability Ins Co | | 26247 |
| | INSURER D : N/A | | N/A |
| | INSURER E : American Zurich Insurance Company | | 40142 |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: CLE-003702589-12 | REVISION NUMBER: 23 |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>  CLAIMS-MADE  X  OCCUR<br>X CONTRACTUAL LIAB. & XCU<br><br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY  X PRO-JECT  LOC | | | US00029022LI13A | 06/01/2013 | 06/01/2014 | EACH OCCURRENCE<br>DAMAGE TO RENTED PREMISES (Ea occurrence)<br>MED EXP (Any one person)<br>PERSONAL & ADV INJURY<br>GENERAL AGGREGATE<br>PRODUCTS - COMP/OP AGG | $ 2,000,000<br>$ 100,000<br>$ 10,000<br>$ 2,000,000<br>$ 2,000,000<br>$ 2,000,000<br>$ |
| B<br>C | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>  ALL OWNED AUTOS  SCHEDULED AUTOS<br>X HIRED AUTOS  X NON-OWNED AUTOS | | | BAP3481708-09 ($2M)<br>SXS 9486250-02 ($3M Excess) | 06/01/2013<br>06/01/2013 | 06/01/2014<br>06/01/2014 | COMBINED SINGLE LIMIT (Ea accident)<br>BODILY INJURY (Per person)<br>BODILY INJURY (Per accident)<br>PROPERTY DAMAGE (Per accident) | $ 5,000,000<br>$<br>$<br>$<br>$ |
| A | **UMBRELLA LIAB**  X  OCCUR<br>X EXCESS LIAB  CLAIMS-MADE<br>  DED  RETENTION $ | | | US00029023LI13A | 06/01/2013 | 06/01/2014 | EACH OCCURRENCE<br>AGGREGATE | $ 4,000,000<br>$ 4,000,000<br>$ |
| E<br>B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | WC3481706-11 (AOS)<br>WC3481793-11 (WI) | 06/01/2013<br>06/01/2013 | 06/01/2014<br>06/01/2014 | X WC STATU-TORY LIMITS  OTH-ER<br>E.L. EACH ACCIDENT<br>E.L. DISEASE - EA EMPLOYEE<br>E.L. DISEASE - POLICY LIMIT | <br>$ 1,000,000<br>$ 1,000,000<br>$ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**
RE: 650006 - 40305 IH 635 MLP - RFP 49; JOB LOCATION: DALLAS COUNTY, TEXAS; LBJ EXPRESS- 635 MANAGED LANES.

(SEE ADDITIONAL PAGES)

EXHIBIT
F.4
Bloomberg No. 6239

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TRINITY INFRASTRUCTURE, LLC<br>5520 I-635 EAST, SUITE 150<br>DALLAS, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>of Marsh USA Inc.<br>Manashi Mukherjee    *Manashi Mukherjee* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)           The ACORD name and logo are registered marks of ACORD

EXHIBIT A-1

ACORD

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
4/25/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Amanda Villanueva | | |
|---|---|---|---|
| Higginbotham & Associates Inc. 12720 Hillcrest Road, Suite 450 Dallas TX 75230 | PHONE (A/C, No, Ext):800-728-2374 | | FAX (A/C, No):817-347-6981 |
| | E-MAIL ADDRESS:avillanueva@higginbotham.net | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED EW Wells Group, LLC 3100 Main Street #45 Dallas TX 75226 | INSURER A :Maxum Indemnity Company | | 26743 |
| | INSURER B :Great American Insurance Co | | 16691 |
| | INSURER C :Hallmark County Mutual | | |
| | INSURER D :Texas Mutual Insurance Company | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES            CERTIFICATE NUMBER: 1771070463                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | X | | GLP601085303 | 9/30/2011 | 9/30/2012 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | X 5,000 | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | | $ |
| C | AUTOMOBILE LIABILITY | X | | TXA51013200 | 11/16/2011 | 11/16/2012 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | UMBRELLA LIAB X OCCUR | X | | UMB601224903 | 9/30/2011 | 9/30/2012 | EACH OCCURRENCE | $4,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $4,000,000 |
| | DED X RETENTION$ 10,000 | | | | | | | $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | TSF0001232457 | 1/8/2012 | 1/8/2013 | X WC STATU-TORY LIMITS OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| B | Commercial Property Spec. Causes incl theft Inland Marine | | | MP897385802 | 9/30/2011 | 9/30/2012 | Bus.Personal Prop Deductible Leased/Rented Eqpt | $100,000 $1,000 $300,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
The General Liability and Automobile Liability policy includes a blanket automatic additional insured endorsement that provides additional insured status and General Liability, Automobile Liability and Workers' Compensation policy includes a blanket waiver of subrogation endorsement to the certificate holder only when there is a written contract between the named insured and the certificate holder that requires such status.

The General Liability and Automobile Liability policies include a blanket notice of cancellation to certificate holders endorsement, providing for
See Attached...

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC 5520 I-635 East, Suite 150 Dallas TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)            The ACORD name and logo are registered marks of ACORD

EXHIBIT
F-5
A-1

# ACORD CERTIFICATE OF LIABILITY INSURANCE

OP ID: GS

DATE (MM/DD/YYYY)
12/15/10

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | 713-647-9899 | CONTACT NAME: | | |
|---|---|---|---|---|
| GSM Insurors - Houston P&C<br>10497 Town &Country Way Ste132<br>Houston, TX 77024<br>GSM Insurors-Commercial-Chubon | | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| | | PRODUCER CUSTOMER ID #: INDUS-2 | | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| INSURED | Indus Construction LP<br>6060 Brookglen Drive #A<br>Houston, TX 77017 | INSURER A: Texas Mutual Insurance Co | 22945 |
| | | INSURER B: Valley Forge Ins Co | 20508 |
| | | INSURER C: Navigators Ins Svcs of TX Inc | 42307 |
| | | INSURER D: | |
| | | INSURER E: | |
| | | INSURER F: | |

## COVERAGES      CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| B | GENERAL LIABILITY | X | | 4019260112 | 01/28/10 | 01/28/11 | EACH OCCURRENCE | $ 1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $ 15,000 |
| | X Contractual | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | X XCU | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | Emp Ben. | $ 1,000,000 |
| B | AUTOMOBILE LIABILITY | | | 4012960126 | 01/28/10 | 01/28/11 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X HIRED AUTOS | | | | | | | |
| | X NON-OWNED AUTOS | | | | | | | |
| C | X UMBRELLA LIAB X OCCUR | | | HO09EXC126050NC | 01/28/10 | 01/28/11 | EACH OCCURRENCE | $ 10,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 10,000,000 |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under<br>DESCRIPTION OF OPERATIONS below | | N/A | TSF0001141020 | 01/28/10 | 01/28/11 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RE: *4210 IH-635 LBJ. Trinity Infrastructure LLC is named as additional insured as respects to general liability policy as required by written contract.

| CERTIFICATE HOLDER | TRININF | CANCELLATION |
|---|---|---|
| Trinity Infrastructure LLC<br>5520 Lyndon B.Johnson Fwry<br>Dallas, TX 75240 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Gregory M Chubon |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)      The ACORD name and logo are registered marks of ACORD



EXHIBIT A-6

Prob#: GPE.7.12.13.6-000012

# CERTIFICATE OF LIABILITY INSURANCE

ACORD®

DATE (MM/DD/YYYY)
12/31/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Tonya Johnson |
|---|---|
| MCGRIFF, SEIBELS & WILLIAMS, INC<br>P.O. Box 10265<br>Birmingham, AL 35202 | PHONE (A/C, No, Ext): 800-476-2211    FAX (A/C, No): |
| | E-MAIL ADDRESS: tjohnson@mcgriff.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Great Midwest Insurance Company | 18694 |
| INSURED<br>Lindamood Demolition, Inc.<br>Lindamood Heavy Hauling Inc.<br>2020 South Nursery Road<br>Irving, TX 75060 | INSURER B : Imperium Insurance Co | |
| | INSURER C : Oklahoma Speciality Insurance Co | |
| | INSURER D : Texas Mutual Insurance Company | 22945 |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER: UB9NWX3J    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| C | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS-MADE [X] OCCUR | | | OFMP01000016-00 | 12/31/2012 | 03/01/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY**<br>[X] ANY AUTO<br>[ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS<br>[X] HIRED AUTOS [ ] NON-OWNED AUTOS | | | CA00026403-01 | 12/31/2012 | 03/01/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Trailer Interchange Liab | $ 50,000 |
| B | **UMBRELLA LIAB** [X] OCCUR<br>[X] EXCESS LIAB [ ] CLAIMS-MADE<br>[ ] DED [X] RETENTION $10,000 | | | OFMP01000017-00 | 12/31/2012 | 03/01/2014 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | | $ |
| D | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [ ] N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | Q003130216 | 12/31/2012 | 12/31/2013 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express-635 Managed Lanes.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC<br>Attn: Hillary Green<br>5520 Lyndon B. Johnson Freeway, Suite 200<br>Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD



EXHIBIT
F.7

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 09/04/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | Phone: 248-642-5900 | CONTACT NAME: | | |
|---|---|---|---|---|
| Emerson-Prew, Inc. 30600 Telegraph, Suite 3110 Birmingham, MI 48025 Edward Brodzik | Fax: 248-642-2310 | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED Mario Sinacola & Sons Excavating, Inc. 10950 Research Road Frisco, TX 75033 | INSURER A : Travelers Prop. Cas. Co of Am. | 25674 |
| | INSURER B : Charter Oak Fire Insurance Co. | 25615 |
| | INSURER C : C.V. Starr Indemnity & | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

**COVERAGES**     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE X OCCUR X Agg. per project | X | X | CO131J7789 | 09/05/2013 | 09/05/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY X PRO-JECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY** X ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS | X | X | 810290D7484 | 09/05/2013 | 09/05/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 2,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB X OCCUR X EXCESS LIAB ☐ CLAIMS-MADE DED X RETENTION $ 10,000 | X | X | 1000020341 | 09/05/2013 | 09/05/2014 | EACH OCCURRENCE | $ 10,000,000 |
| | | | | | | | AGGREGATE | $ 10,000,000 |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Proj: LBJ Express-635 Managed Lanes
(see attached)

EXHIBIT **F.8**
Bloomberg Ex. 8238

| CERTIFICATE HOLDER TRINI-6 | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC Legal Department 5520 Lyndon B. Johnson Freeway Suite 200 Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Arthur W. Emerson* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)     The ACORD name and logo are registered marks of ACORD

EXHIBIT A-1

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
7/30/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Barbra Griffin, CRIS, ACSR | | |
|---|---|---|---|
| Mullis Newby Hurst LP | PHONE (A/C, No, Ext): (972) 201-0115 | | FAX (A/C, No): (972) 201-0123 |
| 5057 Keller Springs Rd, #400 | E-MAIL ADDRESS: bgriffin@mnhins.com | | |
| Liberty Plaza II | | | |
| Addison          TX  75001 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Amerisure Mutual Insurance Co. | | 23396 |
| Renaissance Contractors, Inc. | INSURER B: Amerisure Insurance Company | | 19488 |
| 3575 Lone Star Circle, Suite 418 | INSURER C: Texas Mutual Insurance Co. | | 22945 |
| | INSURER D: | | |
| Fort Worth       TX  76177 | INSURER E: | | |
| | INSURER F: | | |

COVERAGES        CERTIFICATE NUMBER:14.15 Standard w/$2M Umbrella   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** <br> X COMMERCIAL GENERAL LIABILITY <br> CLAIMS-MADE X OCCUR <br><br><br> GEN'L AGGREGATE LIMIT APPLIES PER: <br> POLICY X PROJECT LOC | | | CPP2083565 | 7/31/2014 | 7/31/2015 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY** <br> X ANY AUTO <br> ALL OWNED AUTOS / SCHEDULED AUTOS <br> X HIRED AUTOS / X NON-OWNED AUTOS | | | CA2083564 | 7/31/2014 | 7/31/2015 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR <br> EXCESS LIAB CLAIMS-MADE <br> DED RETENTION $ | | | CU2093498 | 7/31/2014 | 7/31/2015 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | | $ |
| C | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N <br> ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A <br> (Mandatory in NH) <br> If yes, describe under DESCRIPTION OF OPERATIONS below | | | TSF0001240671 | 7/31/2014 | 7/31/2015 | X WC STATU-TORY LIMITS / OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express-635 Managed Lanes
Certificate holder includes: LBJ Infrastructure Group, LLC, Texas Department of Transportation, Trinity Infrastructure, LLC, their subsidiaries and addiliates and their respective officers, directors, partners, agents and employees

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC <br> Hillary Green <br> 5520 Lyndon B. Johnson Freeway <br> Suite 200 <br> Dallas, TX  75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. <br><br> AUTHORIZED REPRESENTATIVE <br><br> Sam Mullis/BARBRA |

ACORD 25 (2010/05)                    © 1988-2010 ACORD CORPORATION. All rights reserved.
INS025 (201005) 01              The ACORD name and logo are registered marks of ACORD

EXHIBIT
F.9

**ACORD®** **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
2/9/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Larry Sue Dunn | | |
|---|---|---|---|
| Higginbotham Insurance | PHONE (A/C, No, Ext):800-247-0712 | | FAX (A/C, No):817-347-6981 |
| 500 W. 13th Street | E-MAIL ADDRESS:ldunn@higginbotham.net | | |
| Fort Worth TX 76102 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A :Maxum Indemnity Company | | 26743 |
| INSURED          STOMP | INSURER B : | | |
| Stomper Demolition Company, Inc. | INSURER C : | | |
| 3525 Liston Lane | INSURER D : | | |
| Euless TX 76040 | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**     **CERTIFICATE NUMBER:** 1823663231     **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | GLP601827801 | 2/8/2012 | 2/8/2013 | EACH OCCURRENCE | $1,000,000 |
| | X   COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| |    CLAIMS-MADE   X   OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY   PRO-JECT   LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| |    ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| |    ALL OWNED AUTOS    SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| |    HIRED AUTOS    NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X   **UMBRELLA LIAB**   X   OCCUR | | | EXC601827901 | 2/8/2012 | 2/8/2013 | EACH OCCURRENCE | $2,000,000 |
| |    EXCESS LIAB    CLAIMS-MADE | | | | | | AGGREGATE | $2,000,000 |
| | DED   RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**    Y / N | | | | | | WC STATU-TORY LIMITS   OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | N / A | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
The General Liability policy includes a blanket automatic additional insured endorsement that provides additional insured status and a blanket waiver of subrogation endorsement to the certificate holder only when there is a written contract between the named insured and the certificate holder that requires such status.

04-05-13 P03:32 IN

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC 5520 LBJ Freeway, Ste 150 Dallas TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

EXHIBIT
1

Client#: 684809                                                    TEXASSHA

**ACORD™**  **CERTIFICATE OF LIABILITY INSURANCE**     DATE (MM/DD/YYYY)
3/25/2011

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Debbie Neace | |
|---|---|---|
| USI Midwest | PHONE (A/C, No, Ext): 513 852-6417 | FAX (A/C, No): 610-537-4857 |
| 312 Elm Street, 24th Floor | E-MAIL ADDRESS: debbie.neace@usi.biz | |
| Cincinnati, OH 45202 | PRODUCER CUSTOMER ID #: | |
| Ref. No.: 6PE_7.20.6.6_000007 | | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: Travelers Lloyds Insurance Comp | 41262 |
| Texas Shafts, Inc. | INSURER B: Travelers Indemnity Company of | 25682 |
| P.O. Box 79218 | INSURER C: Travelers Property Casualty Co | 25674 |
| Fort Worth, TX 76179 | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

**COVERAGES**        CERTIFICATE NUMBER:                  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | DTCO3894N397TLC10 | 05/15/2010 | 05/15/2011 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | | $ |
| C | AUTOMOBILE LIABILITY | | | DT8103894N397TIL10 | 05/15/2010 | 05/15/2011 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X HIRED AUTOS | | | | | | | $ |
| | X NON-OWNED AUTOS | | | | | | | $ |
| | x $50,000 | | | Hired Phy Damage | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | | | DTSMCUP3894N397TCT | 05/15/2010 | 05/15/2011 | EACH OCCURRENCE | $5,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $5,000,000 |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Leased Equipment | | | QT6606707M139TLC10 | 05/15/2010 | 05/15/2011 | $500,000/$7,500 Ded | |
| A | Builders Risk | | | QT6606707M139TLC | 05/15/2010 | 05/15/2011 | $250,000/$1,000 Ded | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express - 635 Managed Lanes. LBJ Infrastructure Group, LLC; Texas Department of
Transporation; Trinity Infrastruce, LLC, their subsidiaries and affiliates and their respective officers,
(See Attached Descriptions)

EXHIBIT
**F.11**

| CERTIFICATE HOLDER | CANCELLATION    10 Days for Non-Payment |
|---|---|
| Trinity Infrastructure, LLC 5520 Lyndon B. Johnson Freeway #200 Attn - Hillary Rortvedt Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE _Thomas W Chssow_ |

©1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)    1 of 2    The ACORD name and logo are registered marks of ACORD
#S5487407/M4667113

DJNAC
EXHIBIT A-1

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
4/07/2011

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Beth Malone | |
|---|---|---|
| USI Midwest Cincinnati<br>312 Elm Street,24th Floor<br>Cincinnati, OH 45202<br>513 852-6300 | PHONE (A/C, No, Ext): 513-852-6404 | FAX (A/C, No): 610-537-4375 |
| | E-MAIL ADDRESS: beth.malone@usi.biz | |
| | PRODUCER CUSTOMER ID #: | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED<br>Texas Shafts Group Inc.<br>12071 Hamilton Avenue<br>Cincinnati, OH 45231<br><br>Ref. No.: 6PE_7.20.6.6_000008 | INSURER A: Travelers Property Casualty Co | 25674 |
| | INSURER B: Charter Oak Fire Insurance Comp | 25615 |
| | INSURER C: Travelers Indemnity Company of | 25682 |
| | INSURER D: American Guarantee & Liability | 26247 |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR<br><br><br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>POLICY X PRO-JECT LOC | | | VTC2JCO7165B92A | 12/31/2010 | 12/31/2011 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | OH Stop Gap | $1,000,000 |
| A | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS | | | VTJCAP7165B931 | 12/31/2010 | 12/31/2011 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DEDUCTIBLE<br>X RETENTION $ 10,000 | | | VTSMJCUP7166B165 | 12/31/2010 | 12/31/2011 | EACH OCCURRENCE | $10,000,000 |
| | | | | | | | AGGREGATE | $10,000,000 |
| | | | | | | | | $ |
| B<br>C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | VTROUB7165B79<br>VTC2HUB4974B79<br>Excluding: ND, OH,<br>WA & WY | 12/31/2010 | 12/31/2011 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| D | Excess Liability | | | AEC485738100 | 12/31/2010 | 12/31/2011 | $5,000,000 Limit | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express-635 Managed Lanes / LBJ Infrastructure Group, LLC; Texas Department of Transporation; Trinity Infrastructure, LLC, their subsidiaries and affiliates and their respective
(See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC<br>Hillary Rortvedt<br>5520 Lyndon B. Johnson Freeway,<br>Suite 200<br>Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Thomas W Chisum* |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)   1 of 2   The ACORD name and logo are registered marks of ACORD
#S5548087/M5167956

EXHIBIT A-1

Client#: 660085                                              GOETTHOL

**ACORD**     **CERTIFICATE OF LIABILITY INSURANCE**          DATE (MM/DD/YYYY)
                                                              12/28/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Beth Malone | | |
|---|---|---|---|
| USI Midwest Cincinnati | PHONE (A/C, No, Ext): 513-852-6404 | | FAX (A/C, No): 610-537-4375 |
| 312 Elm Street,24th Floor | E-MAIL ADDRESS: beth.malone@usi.biz | | |
| Cincinnati, OH 45202 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| 513 852-6300 | | | |
| | INSURER A : Travelers Property Casualty Co | | 25674 |
| INSURED | INSURER B : Charter Oak Fire Insurance Comp | | 25615 |
| Texas Shafts Group, Inc. | INSURER C : American Guarantee & Liability | | 26247 |
| 12071 Hamilton Avenue | INSURER D : | | |
| Cincinnati, OH 45231 | INSURER E : | | |
| | INSURER F : | | |

COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | VTC2JCO7165B92A | 12/31/2012 | 12/31/2013 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | OH Stop Gap | $1,000,000 |
| A | **AUTOMOBILE LIABILITY** | | | VTJCAP7165B931 | 12/31/2012 | 12/31/2013 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X **UMBRELLA LIAB** X OCCUR | | | VTSMJCUP7166B165 | 12/31/2012 | 12/31/2013 | EACH OCCURRENCE | $10,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $10,000,000 |
| | DED X RETENTION $10,000 | | | | | | | $ |
| B A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | VTROUB7165B979 VTC2JUB4974B79 | 12/31/2012 12/31/2012 | 12/31/2013 12/31/2013 | X WC STATU-TORY LIMITS OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | Excluding: ND, OH, WA & WY | | | E.L. EACH ACCIDENT | $1,000,000 |
| | If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| C | **Excess** **Liability** | | | AEC485738102 | 12/31/2012 | 12/31/2013 | $5,000,000 Limit | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
The insurance policies indicated above, excluding the Excess Liability policy, have been endorsed to provide thirty (30) days cancellation notice to the certificate holder - except for non-payment cancellation or when cancellation is requested by the insured. Ten (10) days cancellation is provided for non-payment of premium.

(See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC Attn: Hillary Green 5520 Lyndon B. Johnson Freeway #200 Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Thomas W Olsson* |

ACORD 25 (2010/05)     1 of 2     The ACORD name and logo are registered marks of ACORD
#S9161057/M9160942                                    © 1988-2010 ACORD CORPORATION. All rights reserved.

BZMZP   EXHIBIT A-1

6PE_7.20.6.6_000057

Client#: 684809                                    TEXASSHA

**ACORD**™  **CERTIFICATE OF LIABILITY INSURANCE**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 5/15/2013 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Debbie Neace | | |
|---|---|---|---|
| USI Midwest Cincinnati | PHONE (A/C, No, Ext): 513 852-6417 | | FAX (A/C, No): 610-537-4857 |
| 312 Elm Street, 24th Floor | E-MAIL ADDRESS: debbie.neace@usi.biz | | |
| Cincinnati, OH 45202 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Travelers Lloyds Insurance Comp | | 41262 |
| INSURED | INSURER B : Travelers Indemnity Company of | | 25682 |
| Texas Shafts, Inc. | INSURER C : Travelers Property Casualty Co | | 25674 |
| P.O. Box 79218 | INSURER D : | | |
| Fort Worth, TX 76179 | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**        CERTIFICATE NUMBER:              REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | DTCO3894N397 | 05/15/2013 | 05/15/2014 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | | |
| C | AUTOMOBILE LIABILITY | | | DT8103894N397 | 05/15/2013 | 05/15/2014 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | X ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS  X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB  X OCCUR | | | DTSMCUP3894N397 | 05/15/2013 | 05/15/2014 | EACH OCCURRENCE | $5,000,000 |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $5,000,000 |
| | DED X RETENTION $10000 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N | | | | | | WC STATU-TORY LIMITS   OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?   N/A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Leased Equipment | | | QT6606707M139 | 05/15/2013 | 05/15/2014 | $1,000,000/$7,500 Ded. | |
| | Installation | | | QT6606707M139 | 05/15/2013 | 05/15/2014 | $250,000/$1,000 Ded. | |
| C | Hired Phys Damage | | | DT8103894N397 | 05/15/2013 | 05/15/2014 | $50,000/$1,000 Ded. | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express-635 Managed Lanes / LBJ Infrastructure Group, LLC; Texas Department of Transportation;
Trinity Infrastructure, LLC,; Dallas Area Rapid Transit(DART) and their subsidiaries and affiliates and
their respective officers, directors, partners, agents and employees are included as additional insureds
under the General Liability, Automobile Liability & Umbrella Liability policies with coverage on a primary
and non contributory basis when required by written contract. A Waiver of Subrogation in favor of the
(See Attached Descriptions)

05-29-2013 A11:29

PW

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC  5520 Lyndon B. Johnson Freeway #200  Attn - Hillary Rortvedt  Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE   *Thomas W Chilton* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    1 of 2    The ACORD name and logo are registered marks of ACORD
#S9740761/M9740354

BYPZP                                    EXHIBIT A-1

Client#: 684809                                    TEXASSHA

**ACORD**™        **CERTIFICATE OF LIABILITY INSURANCE**        DATE (MM/DD/YYYY)
5/14/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Debbie Neace | | |
|---|---|---|---|
| USI Midwest Cincinnati<br>312 Elm Street,24th Floor<br>Cincinnati, OH 45202 | PHONE (A/C, No, Ext): 513 852-6417 | | FAX (A/C, No): 610-537-4857 |
| | E-MAIL ADDRESS: debbie.neace@usi.biz | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Travelers Indemnity Company | | 25658 |
| INSURED<br>Texas Shafts, inc.<br>P.O. Box 79218<br>Fort Worth, TX 76179 | INSURER B : Travelers Indemnity Company of | | 25682 |
| | INSURER C : Travelers Lloyds Insurance Comp | | 41262 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE  X OCCUR | | | DTCO3894N397 | 05/15/2014 | 05/15/2015 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY  X PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS<br>X HIRED AUTOS  X NON-OWNED AUTOS | | | DT8103894N397 | 05/15/2014 | 05/15/2015 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB  X OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE<br>☐ DED  X RETENTION $10000 | | | DTSMCUP3894N397 | 05/15/2014 | 05/15/2015 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | | AGGREGATE | $5,000,000 |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | WC STATU-TORY LIMITS | OTHER |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | Leased Equipment | | | QT6606707M139 | 05/15/2014 | 05/15/2015 | $2,000,000/$7,500 Ded | |
| C | Installation | | | QT6606707M139 | 05/15/2014 | 05/15/2015 | $250,000/$1,000 Ded | |
| B | Hired Phys Damage | | | DT8103894N397 | 05/15/2014 | 05/15/2015 | $50,000/$1,000 Ded | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: LBJ Express-635 Managed Lanes / LBJ Infrastructure Group, LLC; Texas Department of Transportation; Trinity Infrastructure, LLC,; Dallas Area Rapid Transit(DART) and their subsidiaries and affiliates and their respective officers, directors, partners, agents and employees are included as additional insureds under the General Liability, Automobile Liability & Umbrella Liability policies with coverage on a primary and non contributory basis when required by written contract. A Waiver of Subrogation in favor of the (See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC<br>5520 Lyndon B. Johnson Freeway #200<br>Attn - Hillary Rortvedt<br>Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Thomas W. Oldham* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)   1 of 2          The ACORD name and logo are registered marks of ACORD
#S12485196/M12484207

RRBZP
EXHIBIT A-1



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 9/30/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Sandy Fugitt | | |
|---|---|---|---|
| Mullis Newby Hurst LP<br>5057 Keller Springs Road, Suite 400<br>Liberty Plaza II<br>Addison, TX 75001 | PHONE (A/C, No, Ext): (972) 201-0127 | | FAX (A/C, No): (972) 201-0123 |
| | E-MAIL ADDRESS: sfugitt@mnhins.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A Old Republic General Ins Corp | | 24139 |
| INSURED | INSURER B Great American Insurance Co | | 16691 |
| Weir Bros., Inc.<br>P. O. Box 541793<br>Dallas, TX 75354-1793 | INSURER C | | |
| | INSURER D | | |
| | INSURER E | | |
| | INSURER F | | |

## COVERAGES CERTIFICATE NUMBER:2013-2014 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE X OCCUR | | | A6CG49181306 | 10/1/2013 | 10/1/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY X PRO-JECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>X ALL OWNED AUTOS ☐ SCHEDULED AUTOS<br>X HIRED AUTOS X NON-OWNED AUTOS | | | A6CA49181306 | 10/1/2013 | 10/1/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR<br>☐ EXCESS LIAB ☐ CLAIMS-MADE | | | TUU3577615 | 10/1/2013 | 10/1/2014 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | A6CW49181306 | 10/1/2013 | 10/1/2014 | X WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Project: Job # 13-026; L B J Express - 635 Managed Lanes
CERTIFICATE HOLDER as - LBJ Infrastructure Group, LLC; Texas Department of Transportation; Trinity Infrastructure, LLC and their subsidiaries and affiliates and their respective officers, directors, partners, agents and employees

Policies except Workers' Compensation include blanket Additional Insured endorsement providing Additional Insured status to Certificate Holder for Ongoing Operations, as I S O CG2010 (04/2013) attached, and

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Trinity Infrastructure, LLC<br>5520 L B J Freeway<br>Suite 200<br>Dallas, TX 75240 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>Scott Stagner/SANDYF |

ACORD 25 (2010/05) © 1988-2010 ACORD CORPORATION. All rights reserved.
INS025 (201005).01 The ACORD name and logo are registered marks of ACORD



EXHIBIT

F.12